UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANNA JAQUES HOSPITAL )
25 Highland Avenue )
Newburyport, MA 01950, )
 )
BAYSTATE MEDICAL CENTER, INC. )
759 Chestnut Street )
Springfield, MA 01199, )
 )      Civil Action No. _____
BERKSHIRE MEDICAL CENTER )
725 North Street )
Pittsfield, MA 01201, )
 )
BETH ISRAEL DEACONESS HOSPITAL-NEEDHAM )
CAMPUS )
148 Chestnut Street )
Needham, MA 01760, )
 )
BETH ISRAEL DEACONESS MEDICAL CENTER )
330 Brookline Avenue )
Boston, MA 02215, )
 )
BOSTON MEDICAL CENTER CORPORATION )
1 Boston Medical Center Place )
Boston, MA 02118, )
 )
THE BRIGHAM AND WOMEN'S HOSPITAL, INC. )
75 Francis Street )
Boston, MA 02115, )
 )
BROCKTON HOSPITAL, INC. )
680 Centre Street )
Brockton, MA 02302, )
 )
CAMBRIDGE PUBLIC HEALTH COMMISSION d/b/a )
CAMBRIDGE HEALTH ALLIANCE )
1493 Cambridge Street )
Cambridge, MA 02139, )
 )
CARITAS CARNEY HOSPITAL, INC. )
2100 Dorchester Avenue )
Dorchester, MA 02124-5666, )
 )

CARITAS GOOD SAMARITAN MEDICAL CENTER,    )
INC.    )
235 North Pearl Street    )
Brockton, MA  02301,    )
    )
CARITAS NORWOOD HOSPITAL, INC.    )
800 Washington Street    )
Norwood, MA  02062-3487,    )
    )
CARITAS ST. ELIZABETH'S MEDICAL CENTER OF    )
BOSTON, INC.    )
736 Cambridge Street    )
Boston, MA  02135-2997,    )
    )
CLINTON HOSPITAL    )
201 Highland Street    )
Clinton, MA  01510,    )
    )
COOLEY DICKINSON HOSPITAL, INC.    )
30 Locust Street    )
Northampton, MA  01061,    )
    )
EMERSON HOSPITAL, INC.    )
133 Old Road to Nine Acre Corner    )
Concord, MA  01742,    )
    )
ESSENT HEALTHCARE — AYER, INC. d/b/a    )
NASHOBA VALLEY MEDICAL CENTER    )
200 Groton Road    )
Ayer, MA  01432,    )
    )
ESSENT HEALTHCARE OF MASSACHUSETTS, INC.    )
d/b/a MERRIMACK VALLEY HOSPITAL    )
140 Lincoln Avenue    )
Haverhill, MA  01830,    )
    )
FAULKNER HOSPITAL, INC.    )
1153 Centre Street    )
Boston, MA  02130-3492,    )
    )
FRANKLIN MEDICAL CENTER    )
164 High Street    )
Greenfield, MA 01301,    )
    )
    )
    )

THE GENERAL HOSPITAL CORPORATION d/b/a    )
MASSACHUSETTS GENERAL HOSPITAL    )
55 Fruit Street    )
Boston, MA  02114,    )
    )
HALLMARK HEALTH SYSTEM, INC.    )
100 Hospital Road    )
Malden, MA  02148,    )
    )
HARRINGTON MEMORIAL HOSPITAL    )
100 South Street    )
Southbridge, MA  01550-8002,    )
    )
HEYWOOD HOSPITAL    )
242 Green Street    )
Gardner, MA  01440,    )
    )
HOLY FAMILY HOSPITAL, INC.    )
70 East Street    )
Methuen, MA  01844-4597,    )
    )
HOLYOKE HOSPITAL INC. d/b/a HOLYOKE    )
MEDICAL CENTER    )
575 Beech Street    )
Holyoke, MA  01040,    )
    )
HUBBARD REGIONAL HOSPITAL    )
340 Thompson Road    )
Webster, MA  01570,    )
    )
JORDAN HOSPITAL, INC.    )
275 Sandwich Street    )
Plymouth, MA  02360,    )
    )
LAHEY CLINIC HOSPITAL, INC.    )
41 Mall Road    )
Burlington, MA  01805,    )
    )
LAWRENCE GENERAL HOSPITAL    )
One General Street    )
P.O. Box 189    )
Lawrence, MA  01842,    )
    )
LOWELL GENERAL HOSPITAL    )
295 Varnum Avenue    )
Lowell, MA  01854,    )

MARLBOROUGH HOSPITAL )
157 Union Street )
Marlborough, MA 01752, )
)
MARY LANE HOSPITAL CORPORATION )
85 South Street )
Ware, MA 01082, )
)
MASSACHUSETTS EYE AND EAR INFIRMARY )
243 Charles Street )
Boston, MA 02114, )
)
THE MERCY HOSPITAL, INC. )
271 Carew Street )
P.O. Box 9012 )
Springfield, MA 01102, )
)
MILFORD REGIONAL MEDICAL CENTER, INC. )
14 Prospect Street )
Milford, MA 01757, )
)
MILTON HOSPITAL, INC. )
92 Highland Street )
Milton, MA 02186, )
)
MORTON HOSPITAL AND MEDICAL CENTER, INC. )
88 Washington Street )
Taunton, MA 02780, )
)
MOUNT AUBURN HOSPITAL )
330 Mount Auburn Street )
Cambridge, MA 02138, )
)
NEW ENGLAND BAPTIST HOSPITAL )
125 Parker Hill Avenue )
Boston, MA 02120, )
)
NEW ENGLAND MEDICAL CENTER HOSPITALS, )
INC. d/b/a TUFTS-NEW ENGLAND MEDICAL )
CENTER )
750 Washington Street )
Boston, MA 02111, )
)
NEWTON-WELLESLEY HOSPITAL )
2014 Washington Street )
Newton, MA 02462, )

THE TRUSTEES OF NOBLE HOSPITAL, INC.    )
115 W. Silver Street    )
P.O. Box 1634    )
Westfield, MA  01086,    )
    )
NORTH ADAMS REGIONAL HOSPITAL, INC.    )
71 Hospital Avenue    )
North Adams, MA  01247,    )
    )
NORTH SHORE MEDICAL CENTER, INC.    )
81 Highland Avenue    )
Salem, MA  01970-2714,    )
    )
NORTHEAST HOSPITAL CORPORATION d/b/a    )
BEVERLY HOSPITAL    )
85 Herrick Street    )
Beverly, MA  01915,    )
    )
QUINCY MEDICAL CENTER    )
114 Whitwell Street    )
Quincy, MA  02169,    )
    )
SAINTS MEMORIAL MEDICAL CENTER, INC.    )
One Hospital Drive    )
Lowell, MA  01852,    )
    )
SOUTH SHORE HOSPITAL, INC.    )
55 Fogg Road    )
South Weymouth, MA  02190-2455,    )
    )
SOUTHCOAST HOSPITALS GROUP, INC.    )
363 Highland Avenue    )
Fall River, MA  02720,    )
    )
ST. ANNE'S HOSPITAL CORPORATION    )
795 Middle Street    )
FallRiver, MA  02721-1798,    )
    )
STURDY MEMORIAL HOSPITAL    )
211 Park Street    )
P.O. Box 2963    )
Attleboro, MA  02703-0963,    )
    )
UMASS MEMORIAL MEDICAL CENTER, INC.    )
55 Lake Avenue    )
Worcester, MA  01655,    )

VHS ACQUISITION SUBSIDIARY NUMBER 7, INC.           )
d/b/a SAINT VINCENT HOSPITAL                         )
20 Worcester Center Boulevard                        )
Worcester, MA  01608,                                )
                                                     )
VHS ACQUISITION SUBSIDIARY NUMBER 9, INC.           )
d/b/a METROWEST MEDICAL CENTER                       )
P.O. Box 9167                                        )
115 Lincoln Street                                   )
Framingham, MA  01701-9167,                          )
                                                     )
WINCHESTER HOSPITAL                                  )
41 Highland Avenue                                   )
Winchester, MA  01890, and                           )
                                                     )
WING MEMORIAL HOSPITAL & MEDICAL                    )
CENTERS,                                             )
40 Wright Street                                     )
Palmer, MA  01069,                                   )
                                                     )
                Plaintiffs,                          )
                                                     )
        v.                                           )
                                                     )
MICHAEL O. LEAVITT, in his official capacity as     )
SECRETARY OF THE UNITED STATES                       )
DEPARTMENT OF HEALTH AND HUMAN                       )
SERVICES,                                            )
                                                     )
                Defendant.                           )
                                                     )

## COMPLAINT

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief brought by 57 Massachusetts

hospitals (the "Plaintiff Hospitals") against the Secretary of Health and Human Services (the

"Secretary").  The Plaintiff Hospitals challenge the Secretary's exclusion of Nantucket Cottage

Hospital's wage data in calculating the Fiscal Year 2006 Medicare wage index for Massachusetts

hospitals.  As more fully described below, the Secretary's exclusion of Nantucket Cottage

Hospital's wage data violates the provisions of 42 U.S.C. § 1395ww(d)(3)(E) and is arbitrary,

capricious and an abuse of discretion.  The unlawful exclusion of the data has had the effect of

lowering Medicare reimbursement for each of the Plaintiff Hospitals in an aggregate amount

exceeding $197 million dollars.  The Hospitals seek relief from this Court in order to avoid the

severe financial impact of the Secretary's unlawful and arbitrary actions.

## PARTIES

2.      The Plaintiff Hospitals are Anna Jaques Hospital, Baystate Medical Center, Inc.,

Berkshire Medical Center, Beth Israel Deaconess Hospital-Needham Campus, Beth Israel

Deaconess Medical Center, Boston Medical Center Corporation, The Brigham and Women's

Hospital, Inc., Brockton Hospital, Inc., Cambridge Public Health Commission d/b/a Cambridge

Health Alliance, Caritas Carney Hospital, Inc., Caritas Good Samaritan Medical Center, Inc.,

Caritas Norwood Hospital, Inc., Caritas St. Elizabeth's Medical Center of Boston, Inc., Clinton

Hospital, Cooley Dickinson Hospital, Inc., Emerson Hospital, Inc., Essent Healthcare — Ayer,

Inc. d/b/a Nashoba Valley Medical Center, Essent Healthcare of Massachusetts, Inc. d/b/a

Merrimack Valley Hospital, Faulkner Hospital, Inc., Franklin Medical Center, The General

Hospital Corporation d/b/a Massachusetts General Hospital, Hallmark Health System, Inc.,

Harrington Memorial Hospital, Heywood Hospital, Holy Family Hospital, Inc., Holyoke

Hospital Inc. d/b/a Holyoke Medical Center, Hubbard Regional Hospital, Jordan Hospital, Inc.,

Lahey Clinic Hospital, Inc., Lawrence General Hospital, Lowell General Hospital, Marlborough

Hospital, Mary Lane Hospital Corporation, Massachusetts Eye and Ear Infirmary, The Mercy

Hospital, Inc., Milford Regional Medical Center, Inc., Milton Hospital, Inc., Morton Hospital

and Medical Center, Inc., Mount Auburn Hospital, New England Baptist Hospital, New England

Medical Center Hospitals, Inc. d/b/a Tufts-New England Medical Center, Newton-Wellesley

Hospital, The Trustees of Noble Hospital, Inc., North Adams Regional Hospital, Inc., North

Shore Medical Center, Inc., Northeast Hospital Corporation d/b/a Beverly Hospital, Quincy

Medical Center, Saints Memorial Medical Center, Inc., South Shore Hospital, Inc., Southcoast

Hospitals Group, Inc., St. Anne's Hospital Corporation, Sturdy Memorial Hospital, UMass

Memorial Medical Center, Inc., VHS Acquisition Subsidiary Number 7, Inc. d/b/a Saint Vincent

Hospital, VHS Acquisition Subsidiary Number 9, Inc. d/b/a MetroWest Medical Center,

Winchester Hospital, and Wing Memorial Hospital & Medical Centers.

3.    The Plaintiff Hospitals are, for all or most of Fiscal Year 2006, short-term acute

care hospitals located in Massachusetts.  The Plaintiff Hospitals are providers of services as

defined in the Social Security Act, 42 U.S.C. § 1395x(u), and have entered into agreements with

the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395cc.  The

Plaintiff Hospitals receive reimbursement for services rendered to Medicare beneficiaries.

4.    Defendant Michael O. Leavitt is the Secretary of the United States Department of

Health and Human Services ("HHS").  The Plaintiff Hospitals are suing the Secretary in his

official capacity only.

5.    The Centers for Medicare & Medicaid Services ("CMS") is a federal agency

within HHS.  CMS administers the Medicare program.

## JURISDICTION AND VENUE

6.    The Court has subject matter jurisdiction over this case pursuant to 42 U.S.C.

§ 1395oo(f)(1), 5 U.S.C. §§ 701–706 and 28 U.S.C. § 1331.

7.    Venue is proper in the District of Columbia pursuant to 42 U.S.C. § 1395oo(f)(1)

and 28 U.S.C. § 1391(e)(1).

## STATEMENT OF FACTS

*The Inpatient Prospective Payment System*

8.    The Social Security Act ("the Act") establishes a program of health insurance for

the aged and the disabled, commonly known as the Medicare program.  *See* 42 U.S.C. §§ 1395 *et*

seq.; 42 C.F.R. Parts 400–429 and 462–1008.  Section 1886 of the Act, codified at 42 U.S.C.

§ 1395ww, establishes a system of payment for the operating and capital-related costs of acute

care hospital inpatient stays under Medicare Part A (Hospital Insurance).  The system is called

the Inpatient Prospective Payment System (the "PPS").

9.     Hospitals that are reimbursed under the PPS are sometimes referred to as

"subsection (d) hospitals"—a reference to subsection (d) of Section 1886 of the Act, which

defines the hospitals subject to the PPS.  *See* 42 U.S.C. § 1395ww(d)(1)(B).  The Plaintiff

Hospitals are, for all or most of Fiscal Year 2006, subsection (d) hospitals and are reimbursed

under the PPS.

10.     Under the PPS, hospitals are paid on a per patient basis.  The amount of the

payment that a hospital receives for a given patient is calculated by a formula that includes

several different components, including a component designed to reflect the hospital's labor

costs.

*The Wage Index*

11.     Labor costs vary depending on a hospital's geographic location.  In order to

account for these variations, the Act requires the Secretary to adjust the labor component of

reimbursements under the PPS by developing an adjustment factor, known as the wage index,

based on a comparison of labor costs in the hospital's geographic area with average labor costs

nationally.

12.     More specifically, to take into account geographic variations in the costs of labor,

Congress has directed the Secretary as follows:

> The Secretary shall adjust the proportion, (as estimated by the Secretary from
> time to time) of hospitals' costs which are attributable to wages and wage-related
> costs . . . for area differences in hospital wage levels by a factor (established by

the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

42 U.S.C. § 1395ww(d)(3)(E).  The statute then specifically instructs the Secretary on how to update this factor:

> Not later than October 1, 1990, and October 1, 1993 (and at least every 12 months thereafter), the Secretary shall update the factor under the preceding sentence *on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States.*

*Id.* (emphasis added).

13.     Each year, the Secretary engages in notice and comment rulemaking to establish the wage index for the upcoming fiscal year, which begins on October 1.

14.     Because of the time it takes for all hospital wage data to be assembled and reviewed, there is a three-year lag between the collection of wage data and its application to determine the wage index.  For example, CMS used wage data from Fiscal Year 2002 (which ended September 30, 2002) to determine the amount of reimbursement that is being paid in Fiscal Year 2006 (which began October 1, 2005).

15.     For purposes of determining the wage index, the Secretary classifies hospitals into geographic areas based on definitions established by the Office of Management and Budget.  The Secretary classifies some geographic areas as urban and other geographic areas as rural.

16.     A state can have multiple urban areas, each containing one or more hospitals.  However, the Secretary groups all hospitals located in rural areas in a state into a single geographic area for wage index purposes.  The area wage index for a state's single rural geographic area is called the rural wage index.

17.     The statute requires CMS to use the wage data from each subsection (d) hospital to calculate two amounts.  The first amount is the average hourly wage for the geographic area in which the hospital is located.  The second amount is the national average hourly wage.

18.    By comparing the average hourly wage for a geographic area to the national average hourly wage, the Secretary establishes a ratio for use in determining payments under the PPS for hospitals in a particular area. This ratio is the "area wage index."

19.    An area's wage index is intended to reflect the labor costs for hospitals in that area relative to the labor costs for other hospitals in the country. Assuming that the wage index is accurate, an area with labor costs higher than the national average will have an area wage index greater than 1.0 and an area with labor costs lower than the national average will have an area wage index lower than 1.0. Each area's wage index is factored into the calculation of the labor component of a hospital's reimbursement. An area wage index of greater than 1.0 will result in relatively higher Medicare reimbursements for hospitals in that area, and an area wage index of less than 1.0 will result in relatively lower Medicare reimbursements for hospitals located in that area.

*Critical Access Hospitals*

20.    As part of the Balanced Budget Act of 1997, Public Law No. 105-33, Congress established a new type of Medicare provider called the Critical Access Hospital or "CAH." Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4201, codified at 42 U.S.C. § 1395i-4. A CAH is a facility of limited size that provides acute care to patients for relatively short durations of stay. Currently, the statute limits CAHs to 25 beds for acute inpatient care and average lengths of stay of no more than 96 hours. CAHs must also be located in rural areas.

21.    CAHs are not reimbursed under the PPS, but instead are reimbursed on the basis of the facility's "reasonable costs." For many facilities, reasonable cost reimbursement is more favorable than reimbursement under the PPS.

22.    Under the Act, subsection (d) hospitals are permitted to convert to CAH status in order to take advantage of the more favorable reimbursement opportunity for CAHs.  To qualify as a CAH, a facility must satisfy the requirements of CAH status, such as the limitation on number of beds, the limitation on patients' average length of stay, and the requirement that the facility be located in a rural area.

*Wage Data Survey*

23.    Prior to Fiscal Year 2004, the Secretary consistently used wage data from all subsection (d) hospitals to calculate the wage index.  Even though a number of subsection (d) hospitals had converted to CAH status before CMS published the final PPS rates for Fiscal Years 1999–2003, so long as the facility had been a subsection (d) hospital during the corresponding survey year, CMS used the facility's wage data. *See* Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1999 Rates, 63 Fed. Reg. 40,954 (July 31, 1998); Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2000 Rates, 64 Fed. Reg. 41,490 (July 30, 1999); Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2001 Rates, 65 Fed. Reg. 47,054 (Aug. 1, 2000); Changes to the Hospital Inpatient Prospective Payment Systems and Rates and Costs of Graduate Medical Education; Fiscal Year 2002 Rates, Etc., 66 Fed. Reg. 39,828 (Aug. 1, 2001); Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2003 Rates, 67 Fed. Reg. 49,982 (Aug. 1, 2002).

24.    For purposes of calculating the wage index for Fiscal Year 2004, however, the Secretary changed his established practice and began to exclude the wage data of hospitals that were subsection (d) hospitals in the survey year, but that thereafter converted to CAH status. Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 45,346, 45,397–98 (Aug. 1, 2003).

*Calculation of the Fiscal Year 2006 Massachusetts Wage Index*

25.    In Fiscal Year 2002, Nantucket Cottage Hospital in Nantucket, Massachusetts was a subsection (d) hospital in a rural area in Massachusetts.  It operated as a subsection (d) hospital for seven months and generated valid wage data for all of those months.

26.    Effective May 14, 2002 Nantucket Cottage Hospital chose to convert to CAH status to take advantage of the opportunity for reasonable cost reimbursement under Medicare

27.    It is the Secretary's long-standing practice to include in the wage index calculation wage data from facilities that were subsection (d) hospitals for six or more months during the survey year.

28.    In calculating the wage index for Fiscal Year 2006, the Secretary improperly excluded Nantucket Cottage Hospital's wage data from his calculation of the wage index solely because it had converted to CAH status before the wage index was calculated.

*The Statutory Violation*

29.    The Act requires the Secretary to update the wage index based on a survey "of the wages and wage-related costs of subsection (d) hospitals in the United States." 42 U.S.C. § 1395ww(d)(3)(E).  Nantucket Cottage Hospital was a subsection (d) hospital for more than six months during the survey year.  The Secretary's exclusion of Nantucket Cottage Hospital's wage data from the survey in establishing the Fiscal Year 2006 wage index violates the Act.

30.    42 U.S.C. § 1395ww(d)(3)(E) does not grant the Secretary discretion to selectively refuse to use valid data from subsection (d) hospitals furnished in response to the wage survey on which the calculation of the wage index is required to be based.  The Secretary's exclusion of Nantucket Cottage Hospital's data from the wage survey which he used to calculate the Fiscal Year 2006 wage index violates that statute and is *ultra vires*.

*The Impact of the Violation on Plaintiff Hospitals*

31.     As part of the Balanced Budget Act of 1997, Public Law No. 105-33, Congress

established a "rural wage index floor" for the PPS applicable to Fiscal Year 1998 and all

subsequent years.  Section 4410 of Public Law No. 105-33 provides:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C.
> 1395ww (d)(3)(E)) for discharges occurring on or after October 1, 1997, the area
> wage index applicable under such section to any hospital which is not located in a
> rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww
> (d)(2)(D)) may not be less than the area wage index applicable under such section
> to hospitals located in rural areas in the State in which the hospital is located.

The rural wage index floor ensures that no hospital in an urban area is reimbursed for labor-

related costs at a lower rate than that applicable to hospitals in a rural area in the same state.

32.     The Secretary implemented the rural wage index floor on August 29, 1997 to be

effective beginning in Fiscal Year 1998.  *See* Changes to the Hospital Inpatient Prospective

Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966 (Aug. 29, 1997).

33.     Most states have subsection (d) hospitals in rural areas.  CMS uses the wage data

from those hospitals to comply with the statutory mandate that it establish a rural wage index

floor.  One or more states have no subsection (d) hospitals in rural areas.  For Fiscal Year 2005,

CMS decided that it would impute a rural wage index to use as a floor for any such state.

Changes to the Hospital Inpatient Prospective Payment Stems and Fiscal Year 2005 Rates, 69

Fed. Reg. 48,916, 49, 109-11 (Aug. 11, 2004).  CMS set an imputed rural wage index floor for

such "all urban" states by estimating what the rural wage index would have been if the state had

one or more subsection (d) hospitals in a rural area.  *Id.*

34.     CMS continued to use the same methodology for imputing a rural wage index in

Fsical Year 2006.  *See* Changes to the Hospital Inpatient Prospective Payment Stems and Fiscal

Year 2006 Rates, 70 Fed. Reg. 47,278, 47,374 (Aug. 12, 2005).

35.    Nantucket Cottage Hospital is the only hospital in a rural area of Massachusetts that generated wage data as a subsection (d) hospital during the Fiscal 2002 survey year. Accordingly, the Fiscal Year 2006 Massachusetts rural wage index and rural wage floor should have been based on a comparison of Nantucket Cottage Hospital's average hourly wage to the national average hourly wage. Such a comparison would have yielded a rural wage index and rural wage floor for Massachusetts that the Plaintiff Hospitals estimate to be 1.2406.

36.    When the Secretary excluded Nantucket Cottage Hospital's wage data from the Fiscal Year 2002 survey in calculating the Fiscal Year 2006 rural wage index, he compounded the adverse effects of his errant decision to exclude data from subsection (d) hospitals that subsequently converted to CAH status by concluding that Massachusetts had no rural subsection (d) hospitals with wage data that could be used to calculate a rural wage index for Fiscal Year 2006. Accordingly, rather than use the actual rural wage index of 1.2406 as the statutorily required rural floor for Massachusetts, the Secretary imputed a rural wage index and wage index floor for Massachusetts. The imputed rural wage index and wage index floor he established was 1.0715.

37.    Each of the Plaintiff Hospitals is or was located in an urban area of Massachusetts that has a wage index of less than 1.2406. If the Secretary had based his calculation of the wage index on the Fiscal Year 2002 survey of subsection (d) hospitals, including Nantucket Cottage Hospital, as he was statutorily required to do, the rural wage index floor for Massachusetts would have raised the wage index applicable to each of the Plaintiff Hospitals to its statutorily required level, which the Plaintiff Hospitals estimate to be 1.2406.

38.    The Secretary's failure to base the calculation of the Fiscal Year 2006 rural wage index and floor on the Fiscal Year 2002 survey of subsection (d) hospitals, as required by the

statute, has had an estimated negative impact on the wage indexes applicable to the Plaintiff Hospitals ranging from 7.4% to 15.8%, and has resulted in an estimated loss of reimbursement for the Plaintiff Hospitals in excess of $197 million.

*The Arbitrariness of the Secretary's Action*

39.    The Secretary's decision to exclude the data of hospitals that were subsection (d) hospitals during the year of the wage survey on which he based his calculation of the wage index, but that subsequently converted to CAH status, and particularly his decision to exclude the data of Nantucket Cottage Hospital in calculating the Massachusetts rural wage index and floor for Fiscal Year 2006, is arbitrary, capricious and an abuse of discretion.

40.    The wage index is designed to reflect relative labor costs among hospitals at a moment in time. The wage data survey is a snapshot of the labor market in which subsection (d) hospitals participate at that moment in time. A hospital's choice to convert to CAH status after that snapshot is taken has no bearing on the validity of its data during the survey period. Despite a subsequent decision to opt out of the PPS, during the relevant time period these hospitals were subsection (d) hospitals participating in their local labor markets in the same way that other subsection (d) hospitals were participating in their local labor markets at the time of the Fiscal Year 2002 wage survey.

41.    In the case of Massachusetts, the excluded data of Nantucket Cottage Hospital were in all material respects valid indicators of its labor costs as a rural subsection (d) hospital during Fiscal Year 2002. There was no rational basis to exclude Nantucket Cottage Hospital's wage data from the determination of the Massachusetts rural wage index and floor for Fiscal Year 2006.

42.    The Secretary's exclusion of the wage data for Nantucket Cottage Hospital also is inconsistent with the longstanding policy, custom and practice of the Secretary. Every year

many hospitals change from being subsection (d) hospitals to another status (*e.g.*, due to merger, consolidation, bankruptcy, liquidation, dissolution, loss of license, exclusion from the Medicare program, or conversion to a category of non-PPS hospital, such as a long-term care hospital, rehabilitation hospital or CAH).  Prior to Fiscal Year 2004, the Secretary had an established practice of using all available data from subsection (d) hospitals for a given survey year in calculating the wage index, even if the hospital subsequently changed its status and no longer participated in the PPS program.  Indeed, until Fiscal Year 2004, CMS consistently refused requests to exclude from the applicable survey a particular subsection (d) hospital's data or group of hospitals' data when calculating the wage index unless the data were incomplete or patently inaccurate. *See, e.g.*, Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2003 Rates, 67 Fed. Reg. 49,982, 50,023 (Aug. 1, 2002); Changes to the FY1999 Hospital Inpatient Prospective Payment Wage Index and Standardized Amounts Resulting From Approved Requests for Wage Data Revisions, 64 Fed. Reg. 9,378, 9,379–80 (Feb. 25, 1999); Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1995 Rates, 59 Fed. Reg. 45,330, 45,353 (Sept. 1, 1994).

43.     The Secretary changed this practice for Fiscal Years 2004–2006, but only with respect to hospitals that converted to CAH status, by excluding data from hospitals that chose to convert to CAH status after the survey year.  This change in practice violates statutory requirements and is arbitrary, capricious, and an abuse of discretion.

44.     Despite this change in practice, CMS continued to include data from hospitals that were subsection (d) hospitals during the survey year but that subsequently closed or stopped participating in the PPS for reasons other than conversion to CAH status.  Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg.

45,346, 45,397–98 (Aug. 1, 2003). There is no rational basis for distinguishing between the wage data of hospitals that chose to convert to CAH status and the wage data of hospitals that changed their status for reasons other than CAH conversion. In either case, the subsequent change in status has no effect on the appropriateness and integrity of the wage data in the fiscal year during which the Secretary conducted the survey, at which time the facilities were operating as subsection (d) hospitals.

*The Hospitals' Exhaustion of Administrative Remedies*

45.    On February 2, 2006, the Plaintiff Hospitals filed a group appeal with the Provider Reimbursement Review Board (the "PRRB"). The purpose of the group appeal was to obtain a determination that the PRRB lacks authority to determine the legal question of the validity of the final decision of the Secretary establishing the Massachusetts Rural Wage Rate for Fiscal Year 2006. The Plaintiff Hospitals also filed a Request for Expedited Judicial Review with the PRRB.

46.    On February 27, 2006, the PRRB granted the Plaintiff Hospitals' Request for Expedited Judicial Review.

47.    The Plaintiff Hospitals have fully exhausted their administrative remedies and are entitled to judicial review pursuant to 42 U.S.C. § 1395oo(f) and 5 U.S.C. §§ 701–706.

**COUNT I**
(Agency Action Not in Accordance with Law in
Violation of 42 U.S.C. § 1395ww(d)(3)(E); 5 U.S.C. §§ 706(2)(A), 706(2)(C))

48.    Paragraphs 1 to 47 are incorporated by reference as if set forth fully herein.

49.    The Administrative Procedure Act permits judicial review of agency actions, findings and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), 706(2)(C).

50.    The Secretary's failure to use Fiscal Year 2002 wage data from Nantucket Cottage Hospital in determining the Fiscal Year 2006 rural wage index and floor for Massachusetts violates the requirement of 42 U.S.C. § 1395ww(d)(3)(E) that the Secretary adjust Medicare payments to subsection (d) hospitals to reflect geographic variations in hospital labor costs "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States."

51.    The Secretary's determination of the Fiscal Year 2006 imputed rural wage index floor for Massachusetts is not in accordance with law and is in excess of his statutory jurisdiction, authority and limitations. It is therefore *ultra vires* and invalid, and should be set aside. The Plaintiff Hospitals are aggrieved parties, in that the Secretary's unlawful action has caused a loss of reimbursement to the Plaintiff Hospitals in an aggregate amount exceeding $197 million.

## COUNT II
### (Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(A))

52.    Paragraphs 1 to 51 are incorporated by reference as if set forth fully herein.

53.    The Administrative Procedure Act permits judicial review of agency actions, findings and conclusion that are "arbitrary, capricious, and an abuse of discretion." 5 U.S.C. § 706(2)(A).

54.    The Secretary's failure to use Fiscal Year 2002 wage data from Nantucket Cottage Hospital in determining the Fiscal Year 2006 rural wage index and floor for Massachusetts is arbitrary, capricious, and an abuse of discretion.

55.    The Secretary's determination of the Fiscal Year 2006 rural wage index and imputed rural wage floor for Massachusetts violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The Plaintiff Hospitals are aggrieved parties, in that the Secretary's unlawful action

has caused a loss of reimbursement to the Plaintiff Hospitals in an aggregate amount exceeding $197 million.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff Hospitals respectfully request that this Court:

      (a)      Enter judgment for the Plaintiffs and against the Defendant on both counts of this Complaint;

      (b)      Declare that the Secretary's determination of the rural wage index for Massachusetts and rural wage index floor applicable to the Plaintiff Hospitals for Fiscal Year 2006 is contrary to law and invalid;

      (c)      Declare that the Secretary's determination of the rural wage index for Massachusetts and rural wage index floor applicable to the Plaintiff Hospitals for Fiscal Year 2006 is arbitrary, capricious and an abuse of discretion;

      (d)      Order the Defendant to recalculate the rural wage index for Massachusetts and rural wage index floor applicable to the Plaintiff Hospitals based on the Fiscal Year 2002 survey of subsection (d) hospitals, including the wage data from Nantucket Cottage Hospital for Fiscal Year 2002;

      (e)      Order the Defendant to pay the Plaintiff Hospitals Fiscal Year 2006 Medicare reimbursements based on a rural wage index floor that is calculated based on the Fiscal Year 2002 survey of subsection (d) hospitals, including the wage data from Nantucket Cottage Hospital for Fiscal Year 2002;

      (f)      Award the Plaintiffs interest and costs; and

      (g)      Provide such other and further relief as the Court deems proper.

Respectfully Submitted,

ANNA JAQUES HOSPITAL, et al.

By their attorneys,

_____
Ankur J. Goel, D.C. Bar #451594
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C.  20005
(202) 756-8000

*Of Counsel*
Michael L. Blau
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated:  April 27, 2006

BST99 1497882-5.072678.0015