# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNA JAQUES HOSPITAL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| vs. | ) Civil Action No. 1:06-cv-00767-GK |
| | ) |
| | ) |
| MICHAEL O. LEAVITT | ) |
| SECRETARY, DEPARTMENT OF | ) |
| HEALTH AND HUMAN | ) |
| | ) |
| Defendant. | ) |

## C E R T I F I C A T I O N

I, Jacqueline R. Vaughn, Attorney Advisor, Centers for Medicare & Medicaid Services, Department of Health and Human Services, under authority delegated by the Secretary, certify that the documents attached constitute a true and accurate transcript of the official file as furnished by the Provider Reimbursement Review Board (PRRB). These documents are the record of the PRRB's proceedings and decision, granting Expedited Judicial Review of Massachusetts 2006 Rural Wage Index Group's Requests for Hearing under Title XVIII of the Social Security Act, as amended.

Date: August 22, 2006

_____
Jacqueline R. Vaughn

Massachusetts 2006 Rural Wage Index Group

PRRB Case No. 06-0609GE

## COURT TRANSCRIPT INDEX

| | Page No(s). |
|---|---|
| PRRB Notice, dated February 27, 2006, granting Expedited Judicial Review | 1-10 |
| PRRB Notice, dated February 8, 2006, acknowledging Group Hearing Request | 11-12 |
| Correspondence regarding Representation | 13-16 |
| Providers' Letters, dated February 2, 2006, requesting Group Appeal and Group Request for Expedited Judicial Review, with Supporting Documents | 17-297 |

1

DEPARTMENT OF HEALTH AND HUMAN SERVICES
PROVIDER REIMBURSEMENT REVIEW BOARD
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                    FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to:

Case No. 06-0609GE

Certified Mail

McDermott Will & Emery                 FEB 2 7 2006
Michael L. Blau
28 State Street
Boston, MA 02109-1775

RE: Massachusetts 2006 Rural Wage Index Group
    Provider Nos. Various
    FYE 9/30/2006
    Case No. 06-0609GE

Dear Mr. Blau:

This is in response to your request, received on February 3, 2006, that the Provider Reimbursement Review Board (the "Board"), pursuant to 42 U.S.C. § 1395oo(f)(1), determine that it is without authority to decide the legal question of whether the Secretary, in establishing the rural wage rate for Massachusetts for FY 2006 as published in the Federal Register on August 12, 2005, violated Section 1886(d)(3)(E), and abused his discretion in an arbitrary and capricious manner. The above-cited statutory provisions permit a provider that requested and is entitled to a hearing before the Board, under 42 U.S.C. § 1395oo (a), to bypass the Board's hearing procedure and obtain judicial review of an issue involving a question of law or regulation where the Board determines that it is without authority to decide such question.

The Board has reviewed the Provider's submissions pertaining to the request for hearing and expedited judicial review. The documentation shows that the estimated amount in controversy for this group appeal exceeds $50,000. The estimated amount in controversy is subject to recalculation by the intermediary for the actual final amount.

The Board finds that

1. the Board has jurisdiction over the matter for the subject year and, therefore, the Providers are entitled to a hearing before the Board; and

2. based upon the Providers' assertions, there are no findings of fact for resolution before the Board; and

3. the Board is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

Department of Health and Human Services
Provider Reimbursement Review Board
Case No. 06-0609GE
p. 2 of 2

4.    the Board is without authority to decide the legal question of the
       validity of the Secretary's determination of the Massachusetts wage
       index for FY 2006.

Accordingly, the Board finds that this case properly falls within the provisions of 42 U.S.C.
§ 1395oo(f)(1) and hereby grants the Providers' request for expedited judicial review for the
Massachusetts Rural Wage Index issue for the subject year. The Providers have 60 days from the
receipt of this decision to institute the appropriate action for judicial review. Since there is no
other action for the Board to take with regard to this appeal, the case is hereby closed.

Board Members Participating:                           FOR THE BOARD:
Gary B. Blodgett, DDS
Yvette C. Hayes
Elaine Crews Powell
Anjali Mulchandani-West                               Suzanne Cochran, Esq.
Suzanne Cochran, Esq.                                 Chairperson

Enclosures: 42 U.S.C. § 1395oo(f)(1)
             Schedule of Providers

cc: Gene Nickerson, Associated Hospital Service
     Wilson C. Leong, Blue Cross & Blue Shield Association

Schedule of Providers in Group February 1, 2006

Page No. 1 of 8

Date Prepared    2/01/06

Group Name    Massachusetts Rural Wage Index Group Appeal

Representative    Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Case No.

Issue:    Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 22-0160 | South Shore Hospital, 55 Fogg Road, South Weymouth, Norfolk, MA 02190-2455 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,655,854 | This Group Appeal No. | NA | 1H, attached |
| 2 | 22-0019 | Harrington Memorial Hospital, 100 South Street, Southbridge, Worcester, MA 01550-4002 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $768,311 | This Group Appeal No. | NA | 2H, attached |
| 3 | 22-0655 | Northeast Hospital Corporation, 85 Herrick Street, Beverly, Essex, MA 01915 | 09/30/2006 | Associated Hospital System | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,870,360 | This Group Appeal No. | NA | 3H, attached |
| 4 | 22-0002 | Mount Auburn Hospital, 330 Mount Auburn Street, Cambridge, Middlesex, MA 02138 | 09/30/2006 | Associated Hospital Service | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,585,655 | This Group Appeal No. | NA | 4H, attached |
| 5 | 22-0049 | Marlborough Hospital, 157 Union Street, Marlborough, Middlesex, MA 01752 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $718,789 | This Group Appeal No. | NA | 5H, attached |
| 6 | 22-0108 | Milton Hospital, 92 Highland Street, Milton, Norfolk, MA 02186 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,023,664 | This Group Appeal No. | NA | 6H, attached |
| 7 | 22-0090 | Milford Regional Medical Center, 14 Prospect Street, Milford, Worcester, MA 01757 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,147,080 | This Group Appeal No. | NA | 7H, attached |
| 8 | 22-0065 | Noble Hospital, 115 W. Silver Street, P.O. Box 1634, Westfield, Hampden, MA 01086 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,556,348 | This Group Appeal No. | NA | 8H, attached |
| 9 | 22-0063 | Lowell General Hospital, 295 Varnum Avenue, Lowell, Middlesex, MA 01854 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,403,972 | This Group Appeal No. | NA | 9H, attached |

Schedule of Providers in Group February 1, 2006

Page No. 2 of 8

Date Prepared 2/01/06

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Case No.05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Class No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 22-0095 | Heywood Hospital 242 Green Street Gardner, Worcester, MA 01440 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $864,305 | This Group Appeal No. | NA | 10H, attached |
| 11 22-0073 | Morton Hospital and Medical Center 88 Washington Street Taunton, Bristol, MA 02780 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,697,415 | This Group Appeal No. | NA | 11H, attached |
| 12 22-0024 | Holyoke Hospital Inc. (DBA Holyoke Medical Center) 575 Beech Street Holyoke, Hampden, MA 01040 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,515,953 | This Group Appeal No. | NA | 12H, attached |
| 13 22-0029 | Anna Jacques Hospital 25 Highland Avenue Newburyport, Essex, MA 01950 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,652,843 | This Group Appeal No. | NA | 13H, attached |
| 14 22-0077 | Baystate Health System Baystate Medical Center 759 Chestnut Street Springfield, Hampden, MA 01199 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $15,221,324 | This Group Appeal No. | NA | 14H, attached |
| 15 22-0016 | Baystate Health System Franklin Medical Center 164 High Street Greenfield, Franklin, MA 01301 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,664,295 | This Group Appeal No. | NA | 15H, attached |
| 16 22-0050 | Baystate Health System Mary Lane Hospital 85 South Street Ware, Hampshire, MA 01082 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $568,454 | This Group Appeal No. | NA | 16H, attached |
| 17 22-0030 | Wing Memorial Hospital and Medical Centers 40 Wright Street Palmer, Hampden, MA 01069 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,419,948 | This Group Appeal No. | NA | 17H, attached |

BS199 1487090-6 072678 0014

Schedule of Providers in Group February 1, 2006

| Group Name | Massachusetts Rural Wage Index Group Appeal | Page No. 3 of 8 |
| --- | --- | --- |
| Representative | Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109 | Date Prepared 2/01/06 |

Case No. 05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 18 | 22-0163 | UMass Memorial Health Care System UMass Memorial Hospital 55 Lake Avenue Worcester, Worcester, MA 01655 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $13,484,426 | This Group Appeal No. | NA | 18H, attached |
| 19 | 22-0058 | UMass Memorial Health Care System Clinton Hospital 201 Highland Street Clinton, Worcester, MA 01510 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $228,452 | This Group Appeal No. | NA | 19H, attached |
| 20 | 22-0070 | Hallmark Health Systems 150 Hospital Road Malden, Middlesex, MA 02148 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,885,129 | This Group Appeal No. | NA | 20H, attached |
| 21 | 22-0084 | Emerson Hospital 133 Old Road to Nine Acre Corner Concord, Middlesex, MA 01742 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,299,682 | This Group Appeal No. | NA | 21H, attached |
| 22 | 22-0010 | Lawrence General Hospital One General Street P.O. Box 189 Lawrence, Essex, MA 01842 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,611,945 | This Group Appeal No. | NA | 22H, attached |
| 23 | 22-0051 | Northern Berkshire Healthcare North Adams Regional Hospital 71 Hospital Avenue North Adams, Berkshire, MA 01247 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,731,332 | This Group Appeal No. | NA | 23H, attached |
| 24 | 22-0082 | Saints Memorial Medical Center One Hospital Drive Lowell, Middlesex, MA 01852 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,810,175 | This Group Appeal No. | NA | 24H, attached |

Schedule of Providers in Group February 1, 2006

Page No. 4 of 8

Group Name    Massachusetts Rural Wage Index Group Appeal

Representative    Michael L. Blau,
McDermott Will & Emery
28 State Street
Boston, MA 02109

Date Prepared    2/01/06

Case No. 06-0610G    Issue:  Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| | Provider Number | Provider Name | LVE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | 22-0011 | Cambridge Public Health Commission d/b/a Cambridge Health Alliance 1493 Cambridge Street Cambridge, Middlesex, MA 02139 | 06/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,360,200 | This Group Appeal No. | NA | 25H, attached |
| 26 | 22-0098 | Essent Healthcare of Massachusetts, Inc. d/b/a Nashoba Valley Medical Center 200 Groton Road Ayer, Middlesex, MA 01432 | 12/31/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $542,772 | This Group Appeal No. | NA | 26H, attached |
| 27 | 22-0015 | Cooley Dickinson Hospital 30 Locust Street Northampton, Hampshire, MA 01061 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,232,868 | This Group Appeal No. | NA | 27H, attached |
| 28 | 22-0036 | Caritas Christi Caritas St. Elizabeth's Medical Center 736 Cambridge Street Boston, Suffolk, MA 02135-2997 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,826,560 | This Group Appeal No | NA | 28H, attached |
| 29 | 22-0017 | Caritas Christi Caritas Carney Hospital 2100 Dorchester Avenue Dorchester, Suffolk, MA 02124-5666 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,924,435 | This Group Appeal No. | NA | 29H, attached |
| 30 | 22-0126 | Caritas Christi Caritas Norwood Hospital 800 Washington Street Norwood, Norfolk, MA 02062-3487 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,286,638 | This Group Appeal No. | NA | 30H, attached |

BST99 1487090-6.072678.0014

Schedule of Providers in Group February 1, 2006

Page No. 5 of 8

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Date Prepared: 2/01/06

Case No.05-0610G     Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 31  22-0111 | Caritas Christi Good Samaritan Medical Center Brockton, Plymouth, MA | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,990,031 | This Group Appeal No. | NA | 31H, attached |
| 32  22-0080 | Caritas Christi Holy Family Hospital 70 East Street Methuen, Essex, MA 01844-4597 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,861,153 | This Group Appeal No. | NA | 32H, attached |
| 33  22-0020 | Caritas Christi Caritas St. Anne's Hospital 795 Middle Street Fall River, Bristol, MA 02721-1798 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,562,603 | This Group Appeal No. | NA | 33H, attached |
| 34  22-0171 | Lahey Clinic Hospital, Inc 41 Mall Road Burlington, Middlesex, MA 01805 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $7,435,564 | This Group Appeal No. | NA | 34H, attached |
| 35  22-0075 | Massachusetts Eye and Ear Infirmary 243 Charles Street Boston, Suffolk, MA 02114 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $839,175 | This Group Appeal No. | NA | 35H, attached |
| 36  22-0067 | Quincy Medical Center 114 Whitwell Street Quincy, Norfolk, MA 02169 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,384,045 | This Group Appeal No. | NA | 36H, attached |
| 37  22-0116 | Tufts-New England Medical Center 750 Washington Street Boston, Suffolk, MA 02111 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $4,831,930 | This Group Appeal No. | NA | 37H, attached |
| 38  22-0110 | Brigham and Women's Hospital 75 Francis Street Boston, Suffolk, MA 02118 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $10,186,615 | This Group Appeal No. | NA | 38H, attached |

BS199 14E7690-6.072678.0014

Schedule of Providers in Group February 1, 2006

Group Name: Massachusetts Rural Wage Index Group Appeal

Page No. 6 of 8

Representative: Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Date Prepared: 2/01/06

Case No.05-0610G    Issue:  Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | 22-0119 | Faulkner Hospital 1153 Centre Street Boston, Suffolk, MA 02130-3492 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,493,556 | This Group Appeal No. | NA | 39H, attached |
| 40 | 22-0071 | Massachusetts General Hospital 32 Fruit Street Boston, Suffolk, MA 02114-2620 | 03/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $14,870,835 | This Group Appeal No. | NA | 40H, attached |
| 41 | 22-0101 | Newton-Wellesley Hospital 2014 Washington Street Newton, Middlesex, MA 02462 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,118,721 | This Group Appeal No. | NA | 41H, attached |
| 42 | 22-0035 | Northshore Medical Center 81 Highland Avenue Salem, Essex, MA 01970-2714 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $6,629,203 | This Group Appeal No. | NA | 42H, attached |
| 43 | 22-0008 | Sturdy Memorial Hospital 211 Park Street P.O. Box 2963 Attleboro, Bristol, MA 02763-0963 | 9/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,586,364 | This Group Appeal No. | NA | 43H, attached |
| 44 | 22-0060 | Jordan Hospital 275 Sandwich Street Plymouth, Plymouth, MA 02360 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $208,374 | This Group Appeal No. | NA | 44H, attached |
| 45 | 22-0052 | Brockton Hospital 680 Centre Street Brockton, Plymouth, MA 02302 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,045,312 | This Group Appeal No. | NA | 45H, attached |
| 46 | 22-0174 | Essent Healthcare of Massachusetts, Inc. d/b/a Merrimack Valley Hospital 140 Lincoln Avenue Haverhill, Essex, MA 01830 | 9/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,113,218 | This Group Appeal No. | NA | 46H, attached |

## Schedule of Providers in Group Appeal

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael L. Blau,
McDermott Will & Emery
28 State Street
Boston, MA 02109

Page No. 7 of 8

Date Prepared: 2/01/06

Case No. 05-0610G   Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| | Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | 22-0074 | Southcoast Hospitals Group Charlton Memorial Hospital 363 Highland Avenue, Fall River, Plymouth, MA 02720 | 09/30/2006 (Fully merged corporation with one Medicare cost report) | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $13,437,864 | This Group Appeal No. | NA | 47H, attached (three letters) |
| | 22-007491 | St. Luke's Hospital 101 Page Street New Bedford, Plymouth, MA 02729 | | | | | | | | | | |
| | 22-007402 | Tobey Hospital 43 High Street Wareham, Plymouth, MA 02571 | | | | | | | | | | |
| 48 | 22-0105 | Winchester Hospital 41 Highland Avenue Winchester, Middlesex, MA 01890 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,597,862 | This Group Appeal No. | NA | 48H, attached |
| 49 | 22-0031 | Boston Medical Center Boston Medical Center Place Boston, Suffolk, MA 02118 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $7,319,969 | This Group Appeal No. | NA | 49H, attached |
| 50 | 22-0175 | MetroWest Medical Center Framingham Union Hospital 115 Lincoln Street P.O. Box 9167 Framingham, Middlesex, MA 01701-9167 | 01/31/2007 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,888,548 | This Group Appeal No. | NA | 50H, attached |
| | | Leonard Morse Hospital 67 Union Street Natick, Middlesex, MA 01760-6098 | | | | | | | | | | |

## Schedule of Providers in Group February 1, 2006

| Group Name | Massachusetts Rural Wage Index (Group Appeal) | Page No. 8 of 8 |
|---|---|---|
| Representative | Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109 | Date Prepared: 2/01/06 |

Case No. 05-0610G     Issuer: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| | Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 22-0176 | Saint Vincent Hospital and Medical Center, 20 Worcester Center Blvd, Worcester, MA | 01/31/2007 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | | $3,522,131 | This Group Appeal No. | NA | 51H, attached |
| 52 | 22-0066 | Mercy Hospital, 271 Carew Street, P.O. Box 9012, Springfield, Hampden, MA 01102 | 12/31/2006 | Mutual of Omaha | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $5,248,206 | This Group Appeal No. | NA | 52H, attached |
| 53 | 22-0025 | Harvard Regional Hospital, 340 Thompson Road, Webster, Worcester, MA 01570 | 09/30/2006 | Associated Hospital Service | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $395,126 | This Group Appeal No. | NA | 53H, attached |
| 54 | 22-0046 | Berkshire Medical Center, 725 North Street, Pittsfield, Berkshire, MA | 09/30/2006 | Mutual of Omaha | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,778,117 | This Group Appeal No. | NA | 54H, attached |
| 55 | 22-0088 | New England Baptist Hospital, 125 Parker Hill Avenue, Boston, Suffolk, MA 02120 | 09/30/2006 | Associated Hospital Service | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,603,603 | This Group Appeal No. | NA | 55H, attached |
| 56 | 22-0086 | Beth Israel Deaconess Medical Center, 330 Brookline Avenue, Boston, Suffolk, MA 02215 | 09/30/2006 | Associated Hospital Service | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $10,006,903 | This Group Appeal No. | NA | 56H, attached |
| 57 | 22-0083 | Beth Israel Deaconess Needham, 148 Chestnut Street, Needham, Norfolk, MA 01760 | 09/30/2006 | Associated Hospital Service | 8/1/2005 Federal Register | 02/02/06 | 174 | N.A. | $524,805 | This Group Appeal No. | NA | 57H, attached |

BS1991 14B0V9D-6.072678.0914



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                    FAX: 410-786-5298

Suzanne Cochran, Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

## CERTIFIED MAIL

McDermott, Will & Emery
Michael L. Blau                    FEB - 8 2006
28 State Street
Boston, MA 02109 1775

RE: Group Acknowledgement and Critical Due Dates
    Case Number: 06-0609G
    Group Name: Massachusetts 06 Rural Wage Index Group
    Appealed Year – FYE: 12/31/2006
    Group Representative Name: MCDermott, Will & Emery

The Provider Reimbursement Review Board ("Board") has received your request for a hearing. You
will need to obtain a copy of the Board's instructions which are located on the Board's web site at
http://www.cms.hhs.gov/providers/prrb/prrb.asp. If internet access is not available to you, you may
call the Board at (410) 786-2671 and request that a copy be mailed to you.

You must reference the case number and provider information on all correspondence with the Board.
If any of the above information is incorrect, you must inform the Board, in writing, within 30 days of
this letter.

## DUE DATES

**1st of March 2007**
The Group Representative is to mail a letter to the Board stating that group is complete and identifying
the lead intermediary.

**1st of May 2007**
The Group Representative must file a preliminary position paper with the lead intermediary (with a letter
to the Board certifying that the preliminary due date has been met and a copy of the first page only of the
preliminary position paper.) The Group Representative must also complete and submit the Schedule of
Providers with associated jurisdictional documentation to the lead intermediary.

**1st of July 2007**
The lead intermediary must file a preliminary position paper with the Group Representative (with a letter
to the Board certifying that the preliminary due date has been met and a copy of the first page only of the
preliminary position paper.) The lead intermediary must also forward the Schedule of Providers, the
associated jurisdictional documents and comments regarding jurisdiction to Board.

**1st of September 2007**
Final position papers due to the Board from both Parties.

Certified Article Number

7160 3901 9849 1071 1335

SENDERS RECORD

Certified Article Number

7160 3901 9849 1071 1342

SENDERS RECORD

11

## DISMISSALS

The group representative is responsible for pursuing the group appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file all required documentation, including position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If the group representative misses any of its due dates, the Board will dismiss the group appeal. The Board will not send a due date reminder. If the Intermediary fails to meet its deadlines, the Board will contact the Centers for Medicare and Medicaid Services (CMS) about contract compliance and will schedule a hearing date.

## TENTATIVE HEARING DATE

**January 2008:** Tentative month and year of hearing.

The Board will send the parties a Notice of Board Hearing to notify you of the specific time, date and location of the hearing. The Notice of Hearing will be issued at least 30 days prior to the actual hearing date.

## OPTIONS

You may make a written request, at any time, that:
    your month of hearing be rescheduled to an earlier month;
    your case be heard based on the submitted record;
    your case be conducted by video or teleconference;
    your case be resolved through alternative dispute resolution/mediation;
    your case be reviewed in a pre-hearing conference with a Board member.

The group representative must continue to follow the due dates set forth in this letter until the Board acknowledges such request.

Steven R. Kirsh, Director
Division of Jurisdiction & Case Management

cc:    Associated Hospital Services
       Gene Nickerson
       Audit and Reimbursement
       110 Free Street
       Mail Stop 2F010
       Portland, ME 04101

       Wilson C. Leong
       BC & BS Association
       225 North Michigan Avenue
       Chicago, IL 60601-7680



# HARRINGTON MEMORIAL HOSPITAL

### 100 SOUTH STREET
### SOUTHBRIDGE, MA 01550-8002

66 040930,

RECEIVED

~~January 30, 2006~~

FEB - 2 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

Suzanne Cochran, Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

Re:    Harrington Memorial Hospital (Medicare Provider No. 22-0019), Southbridge, MA.
       Hospital FYE:  9/30/2006
       Provider Reimbursement Review Board Group Appeal Hearing Request for FY '06

Dear Chairperson Cochran:

Please be advised that the law firm of McDermott Will & Emery LLP, 28 State Street,
Boston, Massachusetts 02109, has been engaged and appointed to represent Harrington
Memorial Hospital in its appeal to the Provider Reimbursement Review Board of the validity of
the FY 2006 wage index regulations in connection with the Massachusetts Wage Index Group
Appeal.

Please direct all correspondence regarding this appeal to the attention of Michael L. Blau,
McDermott Will & Emery LLP, at the address above.

Thank you for your attention to this matter.

Sincerely,

Richard M. Mangion
President & CEO

13

TEL: (508) 765-9771
TTY: (508) 765-3195
FAX: (508) 765-3147

BST99 1487165-1.072673.0014

# Berkshire
# Medical Center
### BERKSHIRE HEALTH SYSTEMS

66 - 06 - 9 6

725 North Street
Pittsfield, MA 01201
(413) 447-2000

RECEIVED

January 17, 2006

JAN 2 3 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

Suzanne Cochran, Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

Re:   Berkshire Medical Center (Medicare Provider No. 22-0046), Pittsfield, MA.
      Hospital FYE:  9/30/2006
      Provider Reimbursement Review Board Group Appeal Hearing Request for FY '06

Dear Chairperson Cochran:

Please be advised that the law firm of McDermott Will & Emery LLP, 28 State Street,
Boston, Massachusetts 02109, has been engaged and appointed to represent Berkshire Medical
Center in its appeal to the Provider Reimbursement Review Board of the validity of the FY 2006
wage index regulations in connection with the Massachusetts Wage Index Group Appeal.

Please direct all correspondence regarding this appeal to the attention of Michael L. Blau,
McDermott Will & Emery LLP, at the address above.

Thank you for your attention to this matter.

Sincerely,

Darlene Rodowicz
Chief Financial Officer

14

A Major Affiliated Teaching Hospital of the University of Massachusetts Medical School

To: Participating Hospital CEO/CFO

This is a supplement to our engagement letter of November 23, 2004 with the 62 Massachusetts hospitals currently participating in the challenge to CMS' calculation of the Massachusetts rural wage index for FY'05 ("Participating Hospitals"). The purpose of this supplement is to confirm the engagement of McDermott, Will & Emery LLP to bring a similar PRRB appeal (and litigation, if necessary) on your behalf (and on behalf of the other Participating Hospitals) to challenge CMS' calculation of the rural wage index and floor for FY'06. This supplement also specifies the financial terms for that new engagement and updates the financial terms for our continuing representation of Participating Hospitals in the pending wage index litigation through to a decision on our pending motion for summary judgment.

Our financial arrangement for both the current litigation and the new FY'06 challenge is based on our standard hourly rates for engagements of this nature. The applicable billing rates of individuals who may work on these matters range from $100 to $150 per hour for non-attorney professionals, and $200-$630 per hour for attorneys. The new engagement will involve a group appeal to the Provider Reimbursement Appeal Board by February 8, 2006 to obtain an expedited determination of no jurisdiction to determine the validity of the FY'06 rate regulation establishing the rural wage index and floor for Massachusetts. This will be followed by an action in the United States District Court for the D.C District challenging the validity of that FY'06 rate regulation. We will pursue this FY'06 appeal and litigation only so long as our FY'05 challenge remains viable in the estimation of the Participating Hospitals. In this regard, if we are successful on our pending motion for summary judgment in the FY'05 litigation, it is expected that we would proceed and obtain the same result in the FY'06 proceedings (absent a reversal of the FY'05 judgment on appeal). If we are unsuccessful on our motion for summary judgment, then the Participating Hospitals will need to decide whether (1) to appeal the decision of the District Court in the FY'05 case and (2) whether to continue to pursue the FY'06 case.

To commence the FY'06 proceedings and to carry the FY'05 and FY'06 cases through to that point of decision, we estimate the cost will be approximately $80,000-120,000 in attorneys fees in 2006. This includes approximately $25,000-35,000 for preparing the FY'06 PRRB filings; approximately $30,000-40,000 to prepare the initial court filings for the FY'06 lawsuit; and $20,000-45,000 in connection with the hearing and disposition of the pending cross-motions for summary judgment. (With respect to these summary judgment hearing costs, please note that, under the current engagement letter, Participating Hospitals are responsible for these FY'05 proceeding costs, but no 2006 payment schedule is specified). If either the government or the Participating Hospitals decide(s) to appeal the District Court's decision on the pending motion for summary judgment, we will, at that time, develop a further supplement to this engagement to address the additional required legal services. We have previously estimated that the cost of such an appeal would be an additional $100-200,000 (plus court costs).

To fund these 2006 services, Participating Hospitals will be assessed an aggregate retainer of $100,000. Your Hospital's allocable portion of that retainer will be due and payable within 10 days after execution of this supplemental engagement letter, which should be executed on or before January 23, 2006. (Any delinquency in payment for legal services in connection with the FY'05 proceedings will also be due and payable at that time). On June 1, 2006, and quarterly thereafter, there will be reconciliation of estimated legal fees and costs to actuals.

15

Beginning June 1, 2006, Participating Hospitals will be assessed on a quarterly basis their pro rata share of the balance of the variance in legal fees and costs, if any. Funding for any appeal will be handled separately if and as necessary.

Our fees and costs for this engagement will be allocated to Participating Hospitals based on each Participating Hospital's projected participation in any award from Medicare payments arising from the FY'06 proceeding, as determined by the Massachusetts Hospital Association ("MHA"). MHA will continue to play a support role for the FY'05 and FY'06 proceedings. It will provide technical consulting, financial analysis, expert assistance, and facilitation.

The Steering Committee for the Participating Hospitals has received, and will continue to be issued, monthly statements for our legal services showing the full detail of services rendered and costs incurred. Payments are due in accordance with the above schedule and we reserve the right to impose a 1% per month late fee on overdue balances.

Otherwise, the terms and conditions of this engagement are the same as the terms and conditions specified in our original November 23, 2004 engagement letter, including the enclosure to that letter.

To indicate your assent with the terms of our legal representation, please sign the enclosed copy of this letter and forward it to my attention by mail, fax (617-535-3800) or pdf (mblau@mwe.com).

We thank your for the opportunity to serve you.

Sincerely,

Michael L. Blau

Acknowledged and Agreed:

By (Signature): _____

Name (Print): _Darlene Rodowicz_

Title: _Chief Financial Officer_

Hospital: _Berkshire Medical Center_

16

16.06096
MS 2|7|06

# McDermott
# Will & Emery

Boston Brussels Chicago Dusseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Michael L. Blau
Attorney at Law
mblau@mwe.com
617.535.4010

February 2, 2006

**VIA FEDERAL EXPRESS NO. 7907 9999 0200**

**PRRB Case No. _____ (to be assigned)**

Suzanne Cochran, Esq., Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

RECEIVED

FEB 0 3 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

Re:     Group Appeal of the Secretary's Determination of the Massachusetts Rural Wage
        Index for Fiscal Year 2006, and Request for Expedited Judicial Review

Dear Chairperson Cochran:

By this filing, each of the Massachusetts Hospitals listed on the enclosed Schedule of Providers
in Group (the "Hospitals") are requesting a Group Appeal, individually, and as a group, to the
Provider Reimbursement Review Board (the "Board" or "PRRB"). The sole purpose of this
Group Appeal is to obtain a determination that the PRRB lacks authority to determine the legal
question of the validity of the final decision of the Secretary of the U.S. Department of Health
and Human Services (the "Secretary"), establishing the Massachusetts Rural Wage Rate for
Fiscal Year ("FY") 2006 (the "Secretary's Decision"), as published in the *Federal Register* on
August 12, 2005, Volume 70, Number 155, pages 47278 et seq. (the "FY 2006 Regulation").

McDermott Will & Emery LLP has been appointed as the Group representative for all of the
Hospitals participating in this Group Appeal. (See Tab H and its sub-tabs.) The Hospitals have
filed this Group Appeal in a timely manner (i.e., within 180 days of publication of the
Secretary's Decision) and have met the jurisdictional requirement that the amount in dispute
exceeds $50,000. The amount in dispute exceeds $197 million.

The grounds on which the Hospitals challenge the validity of the Secretary's Decision are
specified in the Initial Hearing Request set forth at Tab B. Since we do not believe that the
PRRB has authority to decide the Hospitals' challenge to the legal question of the validity of
Secretary's Decision, which involves the validity of the FY 2006 Massachusetts rural wage rate
published as a regulation in the FY 2006 Regulation, we have also included with our hearing
request a Request for Expedited Judicial Review. The Request for Expedited Judicial Review is

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston, Massachusetts  02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com
BST99 1499016-1 022678.0014

_4_

17

Suzanne Cochran, Chairperson
February 2, 2006
Page 2

separately identified as such in the reference line of the last letter enclosed herewith, in accordance with the Board's Instructions on Expedited Judicial Review.

This Group Appeal filing, and Request for Expedited Judicial Review, consists of the following documents:

1. The enclosed <u>Schedule of Providers in Group</u> lists each of the fifty-seven (57) Massachusetts hospitals that are participating in this Appeal, and shows their Medicare Provider numbers, Intermediaries, and fiscal year. The <u>Schedule of Providers in Group</u> also summarizes, in table format, all other required information to be submitted in connection with this Group Appeal.

2. **Tab A** corresponds to Column A of the <u>Schedule of Providers in Group</u>, and is the documentation of the "Date of Final Determination". The "Date of Final Determination" for all of the Hospitals is August 12, 2005, the date of publication of the FY 2006 Regulation. Accordingly, Tab A contains the *Federal Register*, Vol. 70, No. 155, August 12, 2005, "Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2006 Rates", pages 47372 - 47387, and 47603 – 47604, reflecting the Secretary's final determination of the FY 2006 rural wage rate for Massachusetts. (In view of the considerable length of the August 12, 2005 Federal Register, covering pages 47278 through 47707, we are only including under Tab A the pages enumerated in the preceding sentence to establish the date of the Secretary's determination of the FY 2006 rural wage rate for Massachusetts, for purposes of showing the timeliness of this Group Appeal.)

3. **Tab B** corresponds to Column B of the <u>Schedule of Providers in Group</u>, and documents that the "Date of Hearing Request" is February 2, 2006 for all of the Hospitals. In this regard, Tab B contains the Initial Hearing Request for each of the Hospitals filed on this date (February 2, 2006) initiating this Group Appeal.

4. **Tab E** corresponds to Column E of the <u>Schedule of Providers in Group</u>, and provides documentation of the "Approximate Amount". The documents attached to Tab E show the calculation of the "Approximate Amount" - - that is, the amount of Medicare underpayment to each Hospital as a result of the Secretary's invalid determination of the Massachusetts rural wage rate for FY 2006.

5. **Tab H** corresponds to Column H of the <u>Schedule of Providers in Group</u>. Tab H includes the signed, original copy of the PRRB appeal authorization letter of each of the fifty-seven (57) Hospitals, on hospital letterhead, by which the Hospitals engage and appoint McDermott Will & Emery LLP to represent each Hospital in their individual appeal and this Group Appeal.

6. **Request for Expedited Judicial Review.** This is a request by the Hospitals participating in this Group Appeal for a determination, within the next thirty (30) days, that the

Suzanne Cochran, Chairperson
February 2, 2006
Page 3

Board lacks authority to determine the validity of the FY 2005 Regulation by which the Secretary established the FY 2006 rural wage rate for Massachusetts, so that the Hospitals can thereafter expeditiously file suit in United States District Court to obtain a court ruling on the legal question of the validity of that regulation.

      7. The last document enclosed is a copy of the Board's Decision in PRRB Case No. 05-0610GE (February 16, 2005), *Massachusetts 2005 Rural Wage Index Group*. This *Massachusetts 2006 Rural Wage Index Group Appeal* of the validity of the Secretary's determination of the Massachusetts Rural Wage Index for Fiscal Year 2006 is filed on the same underlying legal basis as the Group Appeal of the FY 2005 Regulation. The Hospitals' case as to the FY 2005 Regulation is currently pending in United States District Court for the District of Columbia, Civil Action No. 1:05cv00625 (GK).

***

Please be advised that, with this Group Appeal filing, the Group for this Massachusetts rural wage rate appeal is complete. Associated Hospital Service and the BlueCross BlueShield Association (the "Intermediary") is the Intermediary for the majority of Hospitals participating in this Group Appeal. Mutual of Omaha is the Intermediary for the other Hospitals participating in this Group Appeal.

We respectfully request prompt acknowledgment by the Board of its receipt and docketing of this Group Appeal hearing request. We also respectfully request approval, within thirty (30) days of this filing, of our enclosed request for Expedited Judicial Review.

We hereby certify under penalties of perjury that we mailed a copy of this complete filing to Wilson Leong, and to Bernard Talbert, at the BlueCross BlueShield Association, to Vincent Guarino, at Associated Hospital Service, the Intermediary for the majority of the Hospitals in this Group Appeal, and to Terry Gouger, Supervisor of Cost Report Appeals, Mutual of Omaha Insurance Company, the Intermediary for other Hospitals participating in this Group Appeal.

Thank you in advance for the Board's attention to this matter. If you have any questions regarding this Group Appeal, or our Request for Expedited Judicial Review, please let me know.

Very truly yours,

Michael L. Blau

PRL/jd

Enclosures

19

Suzanne Cochran, Chairperson
February 2, 2006
Page 4


cc:     Anuj Goel, Esq.
        Massachusetts Hospital Association
        Five New England Executive Park
        Burlington, MA 01803-5010

        Vincent Guarino
        Associated Hospital Service
        50 Salem Street
        Lynnfield, MA 01940-2694

        Wilson Leong
        BlueCross BlueShield Association
        225 North Michigan Avenue
        Chicago, Illinois 60601-7680

        Bernard Talbert, Esq.
        BlueCross and BlueShield Association
        225 North Michigan Avenue
        Chicago, IL 60601-7680


        Terry Gouger, Supervisor of Cost Report Appeals
        Audit and Reimbursement Department
        Mutual of Omaha Insurance Company
        P.O. Box 1604
        Omaha, NB 68101

20

BST99 1499016-1 072678.0014

## Schedule of Providers in Group February 1, 2006

Group Name

Representative  Massachusetts Rural Wage Index Group Appeal

Michael I. Blau,
McDermott Will & Emery
28 State Street
Boston, MA 02109

Page No. 1 of 8

Date Prepared    2/01/06

Case No.

Issue:  Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 22-8100 | South Shore Hospital, 55 Fogg Road, South Weymouth, Norfolk, MA 02190-2455 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,655,854 | This Group Appeal No. | NA | 1H, attached |
| 2 | 22-0019 | Harrington Memorial Hospital, 100 South Street, Southbridge, Worcester, MA 01550-0002 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $768,311 | This Group Appeal No. | NA | 2H, attached |
| 3 | 22-0035 | Northeast Hospital Corporation, 85 Herrick Street, Beverly, Essex, MA 01915 | 09/30/2006 | Associated Hospital System | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,870,360 | This Group Appeal No. | NA | 3H, attached |
| 4 | 22-0002 | Mount Auburn Hospital, 330 Mount Auburn Street, Cambridge, Middlesex, MA 02138 | 09/30/2006 | Associated Hospital Service | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,585,655 | This Group Appeal No. | NA | 4H, attached |
| 5 | 22-0049 | Marlborough Hospital, 157 Union Street, Marlborough, Middlesex, MA 01752 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $718,789 | This Group Appeal No. | NA | 5H, attached |
| 6 | 22-0188 | Milton Hospital, 92 Highland Street, Milton, Norfolk, MA 01186 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,023,664 | This Group Appeal No. | NA | 6H, attached |
| 7 | 22-0090 | Milford Regional Medical Center, 14 Prospect Street, Milford, Worcester, MA 01757 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,147,080 | This Group Appeal No. | NA | 7H, attached |
| 8 | 22-0065 | Noble Hospital, 115 W Silver Street, P.O. Box 1634, Westfield, Hampden, MA 01086 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,556,348 | This Group Appeal No. | NA | 8H, attached |
| 9 | 22-0063 | Lowell General Hospital, 295 Varnum Avenue, Lowell, Middlesex, MA 01854 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,463,972 | This Group Appeal No. | NA | 9H, attached |

## Schedule of Providers in Group February 1, 2006

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael I. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Page No. 2 of 8

Date Prepared: 2/01/06

Case No. 05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 22-0095 | Heywood Hospital 242 Green Street Gardner, Worcester, MA 01440 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $864,305 | This Group Appeal No. | NA | 10H, attached |
| 11 | 22-0073 | Morton Hospital and Medical Center 88 Washington Street Taunton, Bristol, MA 02780 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,697,415 | This Group Appeal No. | NA | 11H, attached |
| 12 | 22-0024 | Holyoke Hospital Inc. (DBA Holyoke Medical Center) 575 Beech Street Holyoke, Hampden, MA 01040 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,515,953 | This Group Appeal No. | NA | 12H, attached |
| 13 | 22-0029 | Anna Jacques Hospital 25 Highland Avenue Newburyport, Essex, MA 01950 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,652,843 | This Group Appeal No. | NA | 13H, attached |
| 14 | 22-0077 | Baystate Health System Baystate Medical Center 759 Chestnut Street Springfield, Hampden, MA 01199 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $15,221,324 | This Group Appeal No. | NA | 14H, attached |
| 15 | 22-0016 | Baystate Health System Franklin Medical Center 164 High Street Greenfield, Franklin, MA 01301 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,664,295 | This Group Appeal No. | NA | 15H, attached |
| 16 | 22-0050 | Baystate Health System Mary Lane Hospital 85 South Street Ware, Hampshire, MA 01082 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $568,454 | This Group Appeal No. | NA | 16H, attached |
| 17 | 22-0030 | Wing Memorial Hospital and Medical Centers 40 Wright Street Palmer, Hampden, MA 01069 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,419,948 | This Group Appeal No | NA | 17H, attached |

BS199 148700-6-072678.0014

Group Name

Representative    Michael L. Blau.
McDermott Will & Emery
28 State Street
Boston, MA 02109

Case No. 05-0610G    Issue:    Secretary's determination of Massachusetts Rural Wage Index for FY 2006

Schedule of Providers in Group February 1, 2006    Page No. 3 of 8

Date Prepared    2/01/06

Group Name    Massachusetts Rural Wage Index Group Appeal

| | Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | Date of Hearing Request | C No of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 22-0163 | UMass Memorial Health Care System, UMass Memorial Hospital 55 Lake Avenue Worcester, Worcester, MA 01655 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $13,484,426 | This Group Appeal No. | NA | 18H, attached |
| 19 | 22-0058 | UMass Memorial Health Care System Clinton Hospital 201 Highland Street Clinton, Worcester, MA 01510 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $228,452 | This Group Appeal No. | NA | 19H, attached |
| 20 | 22-0070 | Hallmark Health Systems 100 Hospital Road Malden, Middlesex, MA 02148 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,885,129 | This Group Appeal No. | NA | 20H, attached |
| 21 | 22-0084 | Emerson Hospital 133 Old Road to Nine Acre Corner Concord, Middlesex, MA 01742 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,299,682 | This Group Appeal No. | NA | 21H, attached |
| 22 | 22-0010 | Lawrence General Hospital One General Street P.O. Box 189 Lawrence, Essex, MA 01842 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,611,945 | This Group Appeal No. | NA | 22H, attached |
| 23 | 22-0051 | Northern Berkshire Healthcare North Adams Regional Hospital 71 Hospital Avenue North Adams, Berkshire, MA 01247 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,731,332 | This Group Appeal No. | NA | 23H, attached |
| 24 | 22-0082 | Saints Memorial Medical Center One Hospital Drive Lowell, Middlesex, MA 01852 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,810,175 | This Group Appeal No. | NA | 24H, attached |

BS199 1487090-6.072078.0014

Schedule of Providers in Group February 1, 2006

Group Name: Massachusetts Rural Wage Index Group Appeal

Page No. 4 of 8

Representative: Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Date Prepared: 2/01/06

Case No. 05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 22-0011 | Cambridge Public Health Commission d/b/a Cambridge Health Alliance 1493 Cambridge Street Cambridge, Middlesex, MA 02139 | 06/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,360,200 | This Group Appeal No. | NA | 25H, attached |
| 26 22-0068 | Essent Healthcare of Massachusetts, Inc. d/b/a Nashoba Valley Medical Center 200 Groton Road Ayer, Middlesex, MA 01432 | 12/31/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $542,772 | This Group Appeal No. | NA | 26H, attached |
| 27 22-0015 | Cooley Dickinson Hospital 30 Locust Street Northampton, Hampshire, MA 01061 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,232,868 | This Group Appeal No. | NA | 27H, attached |
| 28 22-0036 | Caritas Christi Caritas St. Elizabeth's Medical Center 736 Cambridge Street Boston, Suffolk, MA 02135-2997 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,820,560 | This Group Appeal No. | NA | 28H, attached |
| 29 22-0017 | Caritas Christi Caritas Carney Hospital 2100 Dorchester Avenue Dorchester, Suffolk, MA 02124-5666 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,924,435 | This Group Appeal No. | NA | 29H, attached |
| 30 22-0126 | Caritas Christi Caritas Norwood Hospital 800 Washington Street Norwood, Norfolk, MA 02062-3487 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,286,638 | This Group Appeal No. | NA | 30H, attached |

24

H5199 14875904-6 072678.0014

Schedule of Providers in Group February 1, 2006

| Group Name | Massachusetts Rural Wage Index Group Appeal | Page No. 5 of 8 |
| Representative | Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston MA 02109 | Date Prepared    2/01/06 |

Case No. 05-0610G    Issue    Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 22-0111 | Caritas Christi Caritas Good Samaritan Medical Center Brockton, Plymouth, MA | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,990,031 | This Group Appeal No. | NA | 31H, attached |
| 32 | 22-0080 | Caritas Christi Caritas Holy Family Hospital 70 East Street Methuen, Essex, MA 01844-4597 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,861,153 | This Group Appeal No. | NA | 32H, attached |
| 33 | 22-0020 | Caritas Christi Caritas St. Anne's Hospital 795 Middle Street Fall River, Bristol, MA 02721-1798 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,562,603 | This Group Appeal No. | NA | 33H, attached |
| 34 | 22-0171 | Lahey Clinic Hospital, Inc 41 Mall Road Burlington, Middlesex, MA 01805 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $7,435,564 | This Group Appeal No. | NA | 34H, attached |
| 35 | 22-0075 | Massachusetts Eye and Ear Infirmary 243 Charles Street Boston, Suffolk, MA 02114 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $839,175 | This Group Appeal No. | NA | 35H, attached |
| 36 | 22-0067 | Quincy Medical Center 114 Whitwell Street Quincy, Norfolk, MA 02169 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,384,045 | This Group Appeal No. | NA | 36H, attached |
| 37 | 22-0116 | Tufts-New England Medical Center 750 Washington Street Boston, Suffolk, MA 02111 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $4,831,930 | This Group Appeal No. | NA | 37H, attached |
| 38 | 22-0110 | Brigham and Women's Hospital 75 Francis Street Boston, Suffolk, MA 02118 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $10,186,615 | This Group Appeal No. | NA | 38H, attached |

25

885199 1487069-6.072678.0014

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael L. Blau
McDermott Will & Emery
28 State Street
Boston, MA 02109

Page No. 6 of 8

Date Prepared: 2/01/06

Case No. qS40610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

## Schedule of Providers in Group February 1, 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 22-0119 | Tauton Hospital 1153 Centre Street Boston, Suffolk, MA 02135-3492 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,493,556 | This Group Appeal No. | NA | 39H, attached |
| 40 22-0071 | Massachusetts General Hospital 32 Fruit Street Boston, Suffolk, MA 02114-2620 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $14,870,835 | This Group Appeal No. | NA | 40H, attached |
| 41 22-0101 | Newton-Wellesley Hospital 2014 Washington Street Newton, Middlesex, MA 02462 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,118,721 | This Group Appeal No. | NA | 41H, attached |
| 42 22-0035 | Northshore Medical Center 81 Highland Avenue Salem, Essex, MA 01970-2714 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $6,629,203 | This Group Appeal No. | NA | 42H, attached |
| 43 22-0098 | Sturdy Memorial Hospital 211 Park Street P.O. Box 2963 Attleboro, Bristol, MA 02703-0963 | 9/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,586,364 | This Group Appeal No. | NA | 43H, attached |
| 44 22-0060 | Jordan Hospital 275 Sandwich Street Plymouth, Plymouth, MA 02360 | 9/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $208,374 | This Group Appeal No. | NA | 44H, attached |
| 45 22-0052 | Brockton Hospital 680 Centre Street Brockton, Plymouth, MA 02302 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,045,312 | This Group Appeal No. | NA | 45H, attached |
| 46 22-0174 | Essent Healthcare of Massachusetts, Inc. d/b/a Merrimack Valley Hospital 140 Lincoln Avenue Haverhill, Essex, MA 01830 | 9/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,113,218 | This Group Appeal No. | NA | 46H, attached |

BS199 1482089.6 072678 0014

## Schedule of Providers in Group February 1, 2006

Page No. 7 of 8

Date Prepared    2/01/06

Group Name: Massachusetts Rural Wage Index Group Appeal

Representative: Michael L. Blau, McDermott Will & Emery, 28 State Street, Boston, MA 02109

Case No.05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 47  22-0074 | Southeast Hospitals Group Charlton Memorial Hospital 363 Highland Avenue Fall River, Plymouth, MA 02720 / St. Luke's Hospital 101 Page Street New Bedford, Plymouth, MA 02720 / Tobey Hospital 43 High Street Wareham, Plymouth, MA 02571 | 09/30/2006 (Fully merged corporation with one Medicare cost report) | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $13,437,864 | This Group Appeal No. | NA | 47H, attached (three letters) |
| 48  22-0105 | Winchester Hospital 41 Highland Avenue Winchester, Middlesex, MA 01890 | 09/30/2006 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,597,862 | This Group Appeal No. | NA | 48H, attached |
| 49  22-0031 | Boston Medical Center 1 Boston Medical Center Place Boston, Suffolk, MA 02118 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $7,319,969 | This Group Appeal No. | NA | 49H, attached |
| 50  22-0175 | MetroWest Medical Center Framingham Union Hospital P.O. Box 9167 115 Lincoln Street Framingham, Middlesex, MA 01701-9167 / Leonard Morse Hospital 67 Union Street Natick, Middlesex, MA 01760-6999 | 01/31/2007 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,888,548 | This Group Appeal No. | NA | 50H, attached |

Page 8

27

BS199114870046.0/2678.0014

Schedule of Providers in Group February 1, 2006

Page No. 8 of 8

Date Prepared    2/01/06

Group Name    Massachusetts Rural Wage Index Group Appeal

Representative    Michael L. Blau,
McDermott Will & Emery
28 State Street
Boston, MA 02109

Case No. 05-0610G    Issue: Secretary's determination of Massachusetts Rural Wage Index for FY 2006

| Provider Number | Provider Name | FYE | Intermediary | A Date of Final Determination | B Date of Hearing Request | C No. of Days | D Audit Adjustment No. | E Approximate Amount | F Original Case No. | G Date of Add/Transfer | H Appeal Authorization Letter |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 22-0176 | Saint Vincent Hospital and Medical Center 20 Worcester Center Blvd Worcester, MA | 01/31/2007 | Mutual of Omaha | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $3,522,131 | This Group Appeal No. | NA | 51H, attached |
| 52 | 22-0066 | Mercy Hospital 271 Carew Street P.O. Box 9012 Springfield, Hampden, MA 01102 | 12/31/2006 | Mutual of Omaha | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $5,248,206 | This Group Appeal No. | NA | 52H, attached |
| 53 | 22-0025 | Hubbard Regional Hospital 340 Thompson Road Webster, Worcester, MA 01570 | 09/30/2006 | Associated Hospital Service | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $395,126 | This Group Appeal No. | NA | 53H, attached |
| 54 | 22-0046 | Berkshire Medical Center 725 North Street Pittsfield, Berkshire, MA | 09/30/2006 | Mutual of Omaha | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $2,778,117 | This Group Appeal No. | NA | 54H, attached |
| 55 | 22-0088 | New England Baptist Hospital 125 Parker Hill Avenue Boston, Suffolk, MA 02120 | 09/30/2006 | Associated Hospital Service | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $1,603,603 | This Group Appeal No. | NA | 55H, attached |
| 56 | 22-0086 | Beth Israel Deaconess Medical Center 330 Brookline Avenue Boston, Suffolk, MA 02215 | 09/30/2006 | Associated Hospital Service | 8/11/2005 Federal Register | 02/02/06 | 174 | N.A. | $10,006,903 | This Group Appeal No. | NA | 56H, attached |
| 57 | 22-0083 | Beth Israel Deaconess Needham 148 Chestnut Street Needham, Norfolk, MA 01760 | 09/30/2006 | Associated Hospital Service | 8/12/2005 Federal Register | 02/02/06 | 174 | N.A. | $534,805 | This Group Appeal No. | NA | 57H, attached |

28

US139.1487090 6.072678.0014

# McDermott
# Will & Emery

Boston Brussels Chicago Dusseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C

Michael L. Blau
Attorney at Law
mblau@mwe.com
617.535.4010


RECEIVED
FEB 0 3 2006
PROVIDER REIMBURSEMENT
REVIEW BOARD

PRRB Case No. 06-0609G (to be assigned)

February 2, 2006

Suzanne Cochran, Esq., Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:     **Request for Expedited Judicial Review -- Massachusetts Rural Wage Index Group
Appeal of the Secretary's Determination of the Massachusetts Rural Wage Index
for Fiscal Year 2006**

Dear Chairperson Cochran:

On behalf of the Hospitals (the "Hospitals") participating in the Massachusetts Rural Wage
Index Group Appeal for Fiscal Year 2006, filed herewith (the "Massachusetts Rural Wage Index
Group Appeal"), we respectfully request a decision of the Provider Reimbursement Review
Board (the "Board" or "PRRB") that the Hospitals are entitled to Expedited Judicial Review,
pursuant to 42 U.S.C. §1395oo(f)(1), and the implementing regulations at 42 C.F.R. §405.1842,
of the legal question of the validity of the Secretary's determination of the Massachusetts Rural
Wage Index for Fiscal Year 2006.

Pursuant to 42 C.F.R. §405.1842, the Hospitals in the Massachusetts Rural Wage Index Group
Appeal have filed this request ("Request") with the Board, together with supporting
documentation, to obtain a decision that the Board is without authority to decide this question of
law. See 42 U.S.C. §1395oo(f)(1); *Regions Hospital v. Shalala*, U.S. Supreme Court No. 96-
1375 (February 24, 1998), Medicare and Medicaid Guide (CCH), ¶46,074, page 4; 42 C.F.R.
§405.1842(b)(1). We call to the Board's attention that this Massachusetts Rural Wage Index
Group Appeal of the validity of the Secretary's determination of the Massachusetts Rural Wage
Index for Fiscal Year 2006 is filed on the same underlying legal basis as the Group Appeal of the
FY 2005 Regulation, the Massachusetts 2005 Rural Wage Index Group. In that Group Appeal,
on February 16, 2005, the Board found that the case fell within the provisions of 42 U.S.C. §
1395oo(f)(1) and granted the Providers' request for expedited judicial review. A copy of the
Board's decision in PRRB Case No. 05-0610GE, *Massachusetts 2005 Rural Wage Index Group*
(February 16, 2005), is attached hereto and incorporated herein by reference. The Hospitals'
case as to the FY 2005 Regulation is currently pending in United States District Court for the
District of Columbia, Civil Action No. 1:05cv00625 (GK).

9                                          20

U.S. practice conducted through McDermott Will & Emery LLP.
28 State Street  Boston, Massachusetts 02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com
BST99 1488466-1.072678 0014

Suzanne Cochran, Esq., Chairperson
February 2, 2006
Page 2

The regulations on expedited administrative review contemplate that the Board must first determine that the Hospitals, including each Hospital in this Group Appeal, is entitled to a Board hearing before deciding whether the Hospitals are entitled to expedited judicial review. We submit that the Hospitals have met the requirements for a hearing under the Board's hearing regulations, at 42 C.F.R. §405.1841. The Hospitals participating in this Group Appeal have each filed a timely PRRB appeal, and this Group Appeal meets the jurisdictional threshold of $50,000 for a group appeal. Accordingly, the Hospitals have met the preconditions for a Board decision on expedited judicial review.

1.    **Identification Of The Issue And Controlling Law For Which The Board Is Requested To Make A Decision On Expedited Judicial Review**

In the Massachusetts Rural Wage Index Group Appeal, the Hospitals are requesting a determination that: 1) the Secretary's action in excluding from the 2006 wage index calculation wages paid by subsection (d) hospitals that later chose to convert to Critical Access hospital ("CAH") status is unlawful because it violates the statutory requirement that the wage index be updated based on a survey of subsection (d) hospitals; 2) the Secretary's action violates the Administrative Procedure Act because it is arbitrary and capricious; and 3) as a result of the Secretary's action, the Secretary failed to apply the proper rural wage floor to the Hospitals.

More specifically, the Secretary acted unlawfully and contrary to law by excluding from the required survey the average hourly wage data for Nantucket Cottage Hospital ("NCH"), a subsection (d) hospital in Massachusetts for the majority of the applicable wage survey year (2002), and by failing to include and utilize these data in computing and applying the Massachusetts rural wage floor. *See* Section 1886(d)(3)(E); 42 C.F.R. §410.64(h). As a result of the unlawful manner in which the Secretary determined the Massachusetts rural wage rate and floor for FY 2006 applicable to the Hospitals, Medicare reimbursement to the Hospitals from the Intermediaries has been reduced by approximately $197,000,000 from the amount that they are legally entitled to receive.

The legal bases for this Group Appeal, and our contentions on behalf of the Hospitals as to how the Secretary violated Section 1886(d)(3)(E) of the Social Security Act are set forth in the "Legal Basis of Group Appeal" section of our Initial Hearing Request of February 2, 2006 (Tab B hereof), pages 2 - 6, and are not repeated here. Our legal arguments as to why the Secretary's Decision is invalid are also set forth in detail in our Initial Hearing Request.

As further required by the regulations pertaining to expedited judicial review, we allege on behalf of the Hospitals that there are no factual issues in dispute with respect to this Group Appeal.

Suzanne Cochran, Esq., Chairperson
February 2, 2006
Page 3

## 2.    The Hospitals' Explanation Of Why The Board Is Without Authority To Decide The Massachusetts Rural Wage Index Group Appeal

The implementing regulations for expedited review state that,

> In exercising its authority to conduct the hearings described herein,
> the Board must comply with all the provisions of title XVIII of the
> Act and regulations issued thereunder, as well as CMS Rulings issued
> under the authority of the Administrator of the Centers for Medicare
> & Medicaid Services . . . .

42 C.F.R. §405.1867. Since the Board is bound by law to comply with all of the provisions of Title XVIII of the Social Security Act, and the regulations issued thereunder, as well as CMS Rulings, the Board is not authorized by law to decide the question of law raised by the Hospitals this Group Appeal. That legal question is whether the Secretary, in establishing the rural wage rate for Massachusetts for FY 2006, violated Section 1886(d)(3)(E), and abused his discretion in an arbitrary and capricious manner, as more fully described in the Initial Hearing Request. See Tab B, Initial Hearing Request for Massachusetts Rural Wage Rate Appeal.

In light of the foregoing, we believe that the Board is without authority to decide the question of law raised by this Massachusetts Rural Wage Index Group Appeal for Fiscal Year 2006, and must grant the Hospital's Request for expedited judicial review in this matter. See *The Cambridge Hospital v. Shalala*, U.S. District Court for the District of Columbia No. 95-1310 (June 8, 1998), Medicare and Medicaid Guide (CCH) ¶300,002, page 2-3; *Hunterdon/Somerset 2001 Wage Index Group v. Riverbend Government Benefits Administrator, PRRB Hearing Dec. No. 2004-D-13* (April 14, 2004), Medicare and Medicaid Guide (CCH) ¶81,103; and the Board's Decision in PRRB Case No. 05-0610GE (February 16, 2005) in the *Massachusetts 2005 Rural Wage Index Group*.

## 3.    Intermediary Participation

As required by the expedited administrative review regulations, we hereby certify under penalties of perjury that we mailed a copy of this Request for Expedited Judicial Review to Wilson Leong, and to Bernard Talbert, at the BlueCross BlueShield Association, to Vincent Guarino, at Associated Hospital Service, the Intermediary for the majority of Hospitals in this Group Appeal, and to Terry Gouger, Supervisor of Cost Report Appeals, Mutual of Omaha Insurance Company, the Intermediary for the other Hospitals participating in this Group Appeal.

## 4.    Requested Board Decision on Expedited Judicial Review

The Hospitals participating in this Group Appeal respectfully request a decision of the Board that the Board lacks authority to determine the legal question of the validity of the Secretary's Decision establishing the FY 2006 rural wage rate for Massachusetts, as published in the *Federal*

31

Suzanne Cochran, Esq., Chairperson
February 2, 2006
Page 4

*Register* on August 12, 2005, so that the Hospitals can thereafter expeditiously file suit in United States District Court to obtain a court ruling on the validity of that Decision and regulation.

We thank the Board in advance for its anticipated attention to this Request.

Very truly yours,

Michael L. Blau

MLB/rm

A

PRRB Case No. _____ (to be assigned)
Massachusetts Rural Wage Index Group
Appeal for FY 2006

# Tab A – From Fed. Register

RECEIVED

FEB 03 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

33

whether physician practices should ever be considered for provider-based status Certainly, we agree that freestanding physician offices, or facilities that have been denied provider-based status by the CMS Regional Office, should not be included in the wage index. Rather, the purpose of the discussion in the proposed rule was to *clarify* our longstanding policy that as long as a hospital reports, and the CMS Regional Office approves, that a facility which might formerly have been a freestanding physician office is provider-based, the proper categorization of such a facility is *as an outpatient department* and the wages and hours attributable to that outpatient department are included in the IPPS wage index Thus, we believe the commenters' reference to the OIG Red Book is misplaced

Further, the commenters' provide no support for their assertion that workers in "hospital-owned provider-based physician practices" do not provide services to IPPS areas of the hospital. We have not seen any evidence suggesting that the employees working in provider-based clinics work exclusively there, or in other outpatient areas of the hospital. Furthermore, we believe it would be extremely complicated and unnecessary to attempt to distinguish between the salaries and hours of employees that work in the various outpatient areas of hospitals, for purposes of computing the IPPS wage index. Hospitals often maintain provider-based facilities since the Medicare payment for services provided in a hospital (provider-based) setting is typically more than the payment would be for the same service provided in a freestanding setting. Hospitals should not be permitted to treat these facilities as part of the hospital for one purpose, and separate from the hospital for purposes of the wage index. If hospitals wish to exclude certain facilities from the wage index, they have the option to do so by converting them to freestanding facilities. Therefore, as stated in the FY 2006 proposed rule, consistent with our longstanding policy, we continue to believe that it is appropriate to include the salaries and hours of employees working in the outpatient departments, including provider-based clinics, in the wage index calculation

*Comment:* Two commenters expressed concern that the data used in calculating the wage index are developed inconsistently across the Nation. One of the commenters stressed the need for consistent interpretation and application of all wage index policies by all fiscal intermediaries The commenters did not provide any

specific examples of cases where wage index data is developed inconsistently, or where intermediaries are interpreting wage index policies inconsistently

*Response:* We are equally concerned about consistent interpretation and application of wage index policies by both intermediaries and hospitals, as the wage index is a *relative* measure of area wage differences. Throughout the years, we have revised and refined our policy statements and cost reporting instructions in order to achieve more accurate reporting of wage and hours data among hospitals and intermediaries. In addition, we seek to close any loopholes in our policies that may result in varied applications among hospitals. Our work to ensure accuracy and consistency in the wage index is a continuous effort. We encourage hospitals and intermediaries to bring to our attention any instances of perceived inconsistencies Also, we remind hospitals that the wage data correction process is another mechanism that is available for hospitals that require CMS' intervention to settle disputes with intermediaries over wage index policy interpretations (see section III J of this preamble).

### E. Verification of Worksheet S–3 Wage Data

The wage data for the proposed FY 2006 wage index were obtained from Worksheet S–3, Parts II and III of the FY 2002 Medicare cost reports. Instructions for completing the Worksheet S–3, Parts II and III are in the Provider Reimbursement Manual, Part I, sections 3605 2 and 3605 3 The data file used to construct the wage index includes FY 2002 data as of June 30, 2005 In past years, we performed an intensive review of the wage data, mostly through the use of edits designed to identify aberrant data

We asked our fiscal intermediaries to revise or verify data elements that resulted in specific edit failures. While most of the edit failures were resolved, we did remove the wage data of some hospitals from the final FY 2006 wage index For the final FY 2006 wage index in this final rule, we removed the data for 235 hospitals from our database: 201 hospitals became CAHs between February 20, 2004, the cutoff date for exclusion of CAHs from the FY 2005 wage index, and February 18, 2005, this year's cutoff date for the exclusion of CAHs from the FY 2006 wage index, and 27 hospitals were low Medicare utilization hospitals or failed edits that could not be corrected because the hospitals terminated the program or changed ownership. In addition, we removed the wage data for 7 hospitals

with incomplete or inaccurate data resulting in zero or negative, or otherwise aberrant, average hourly wages. As a result, the final FY 2006 wage index is calculated based on FY 2002 wage data from 3,742 hospitals.

In constructing the FY 2006 wage index, we include the wage data for facilities that were IPPS hospitals in FY 2002, even for those facilities that have since terminated their participation in the program as hospitals, as long as those data do not fail any of our edits for reasonableness. We believe that including the wage data for these hospitals is, in general, appropriate to reflect the economic conditions in the various labor market areas during the relevant past period. However, we exclude the wage data for CAHs (as discussed in 68 FR 45397). The wage index in this final rule excludes hospitals that are designated as CAHs by February 1, 2005, the date of the latest available Medicare CAH listing at the time we released the proposed wage index public use file (PUF) on February 25, 2005.

*Comment:* Two commenters expressed concern that the wage data for two CAHs would not be removed from the final FY 2006 wage index. The commenters explained that the effective date for conversion to CAH status for both providers was in December 2004, but because of the timing of the notification of the CAH status, the providers' wage data was included in the February 25, 2005 PUF, and in Tables 2 and 4A that accompanied publication of the proposed rule. The commenters noted that, although CMS subsequently removed these providers' wage data from the May 6, 2005 PUF, their wage data continued to be included in the revised Table 2 that was posted June 1, 2005 on the CMS Web site. The commenters asked for assurance that the wage data for these two CAHs would not be included in the final FY 2006 wage index.

*Response:* As stated in the FY 2004 IPPS final rule (68 FR 45398), we exclude providers from the wage index that were designated as CAHs by 7 or more days prior to the posting of the preliminary PUF. This year, since the preliminary PUF was posted on February 25, 2005, we excluded providers that were designated as CAHs by February 18, 2005 These hospitals were both designated as CAHs prior to February 18, 2005, and should not be included in the FY 2006 wage index calculations. The commenters are correct that, initially, we did not receive notification of the providers' CAH status in time to remove their wage data from the February 25, 2005 PUF We did not

include their wage data in the May 6, 2005 PUF. However, these hospitals continued to be included in the updated Table 2 posted on the CMS Web site on June 1, 2005 because these revisions to the wage data were based on the February 25, 2005 PUF. However, the data for these two CAHs are not included in the FY 2006 final wage index calculations. We note that these two providers will continue to appear on Table 2 published along with the FY 2006 final rule because, although no average hourly wage will be listed next to these providers for FY 2006, they did have wage data that contributed to the wage index for their CBSA in FY 2004 and FY 2005.

### F. Computation of the FY 2006 Unadjusted Wage Index

The method used to compute the FY 2006 wage index without an occupational mix adjustment follows:

*Step 1*—As noted above, we based the FY 2006 wage index on wage data reported on the FY 2002 Medicare cost reports. We gathered data from each of the non-Federal, short-term, acute care hospitals for which data were reported on the Worksheet S–3, Parts II and III of the Medicare cost report for the hospital's cost reporting period beginning on or after October 1, 2001 and before October 1, 2002. In addition, we included data from some hospitals that had cost reporting periods beginning before October 2001 and reported a cost reporting period covering all of FY 2002. These data were included because no other data from these hospitals would be available for the cost reporting period described above, and because particular labor market areas might be affected due to the omission of these hospitals. However, we generally describe these wage data as FY 2002 data. We note that, if a hospital had more than one cost reporting period beginning during FY 2002 (for example, a hospital had two short cost reporting periods beginning on or after October 1, 2001 and before October 1, 2002), we included wage data from only one of the cost reporting periods, the longer, in the wage index calculation. If there was more than one cost reporting period and the periods were equal in length, we included the wage data from the later period in the wage index calculation.

*Step 2*—Salaries—The method used to compute a hospital's average hourly wage excludes certain costs that are not paid under the IPPS. In calculating a hospital's average salaries plus wage-related costs, we subtracted from Line 1 (total salaries) the GME and CRNA costs reported on Lines 2, 4.01, 6, and 6.01,

the Part B salaries reported on Lines 3, 5 and 5.01, home office salaries reported on Line 7, and excluded salaries reported on Lines 8 and 8.01 (that is, direct salaries attributable to SNF services, home health services, and other subprovider components not subject to the IPPS). We also subtracted from Line 1 the salaries for which no hours were reported. To determine total salaries plus wage-related costs, we added to the net hospital salaries the costs of contract labor for direct patient care, certain top management, pharmacy, laboratory, and nonteaching physician Part A services (Lines 9 and 10), home office salaries and wage-related costs reported by the hospital on Lines 11 and 12, and nonexcluded area wage-related costs (Lines 13, 14, and 18).

We note that contract labor and home office salaries for which no corresponding hours are reported were not included. In addition, wage-related costs for nonteaching physician Part A employees (Line 18) are excluded if no corresponding salaries are reported for those employees on Line 4.

*Step 3*—Hours—With the exception of wage-related costs, for which there are no associated hours, we computed total hours using the same methods as described for salaries in Step 2.

*Step 4*—For each hospital reporting both total overhead salaries and total overhead hours greater than zero, we then allocated overhead costs to areas of the hospital excluded from the wage index calculation. First, we determined the ratio of excluded area hours (sum of Lines 8 and 8.01 of Worksheet S–3, Part II) to revised total hours (Line 1 minus the sum of Part II, Lines 2, 3, 4.01, 5, 5.01, 6, 6.01, 7, and Part III, Line 13 of Worksheet S–3). We then computed the amounts of overhead salaries and hours to be allocated to excluded areas by multiplying the above ratio by the total overhead salaries and hours reported on Line 13 of Worksheet S–3, Part III. Next, we computed the amounts of overhead wage-related costs to be allocated to excluded areas using three steps: (1) we determined the ratio of overhead hours (Part III, Line 13) to revised hours (Line 1 minus the sum of Lines 2, 3, 4.01, 5, 6.01, 6, 6.01, 7, 8, and 8.01); (2) we computed overhead wage-related costs by multiplying the overhead hours ratio by wage-related costs reported on Part II, Lines 13, 14, and 18; and (3) we multiplied the computed overhead wage-related costs by the above excluded area hours ratio. Finally, we subtracted the computed overhead salaries, wage-related costs, and hours associated with excluded areas from the

total salaries (plus wage-related costs) and hours derived in Steps 2 and 3.

*Step 5*—For each hospital, we adjusted the total salaries plus wage-related costs to a common period to determine total adjusted salaries plus wage-related costs. To make the wage adjustment, we estimated the percentage change in the employment cost index (ECI) for compensation for each 30-day increment from October 14, 2001 through April 15, 2003 for private industry hospital workers from the Bureau of Labor Statistics' *Compensation and Working Conditions.* We use the ECI because it reflects the price increase associated with total compensation (salaries plus fringes) rather than just the increase in salaries. In addition, the ECI includes managers as well as other hospital workers. This methodology to compute the monthly update factors uses actual quarterly ECI data and assures that the update factors match the actual quarterly and annual percent changes. The factors used to adjust the hospital's data were based on the midpoint of the cost reporting period, as indicated below.

### MIDPOINT OF COST REPORTING PERIOD

| After | Before | Adjustment factor |
|---|---|---|
| 10/14/2001 | 11/15/2001 | 1.06469 |
| 11/14/2001 | 12/15/2001 | 1.06007 |
| 12/14/2001 | 01/15/2002 | 1.05566 |
| 01/14/2002 | 02/15/2002 | 1.05139 |
| 02/14/2002 | 03/15/2002 | 1.04725 |
| 03/14/2002 | 04/15/2002 | 1.04317 |
| 04/14/2002 | 05/15/2002 | 1.03907 |
| 05/14/2002 | 06/15/2002 | 1.03496 |
| 06/14/2002 | 07/15/2002 | 1.03083 |
| 07/14/2002 | 08/15/2002 | 1.02672 |
| 08/14/2002 | 09/15/2002 | 1.02261 |
| 09/14/2002 | 10/15/2002 | 1.01860 |
| 10/14/2002 | 11/15/2002 | 1.01478 |
| 11/14/2002 | 12/15/2002 | 1.01116 |
| 12/14/2002 | 01/15/2003 | 1.00757 |
| 01/14/2003 | 02/15/2003 | 1.00385 |
| 02/14/2003 | 03/15/2003 | 1.00000 |
| 03/14/2003 | 04/15/2003 | 0.99613 |

For example, the midpoint of a cost reporting period beginning January 1, 2002 and ending December 31, 2002 is June 30, 2002. An adjustment factor of 1.03083 would be applied to the wages of a hospital with such a cost reporting period. In addition, for the data for any cost reporting period that began in FY 2002 and covered a period of less than 360 days or more than 370 days, we annualized the data to reflect a 1-year cost report. Dividing the data by the number of days in the cost report and then multiplying the results by 365 accomplishes annualization.

*Step 6*—Each hospital was assigned to its appropriate urban or rural labor market area before any reclassifications under section 1886(d)(8)(B), section 1886(d)(8)(E), or section 1886(d)(10) of the Act. Within each urban or rural labor market area, we added the total adjusted salaries plus wage-related costs obtained in Step 5 for all hospitals in that area to determine the total adjusted salaries plus wage-related costs for the labor market area.

*Step 7*—We divided the total adjusted salaries plus wage-related costs obtained under both methods in Step 6 by the sum of the corresponding total hours (from Step 4) for all hospitals in each labor market area to determine an average hourly wage for the area.

*Step 8*—We added the total adjusted salaries plus wage-related costs obtained in Step 5 for all hospitals in the nation and then divided the sum by the national sum of total hours from Step 4 to arrive at a national average hourly wage. Using the data as described above, the national average hourly wage is $28.0011

*Step 9*—For each urban or rural labor market area, we calculated the hospital wage index value by dividing the area average hourly wage obtained in Step 7 by the national average hourly wage computed in Step 8

*Step 10*—Following the process set forth above, we developed a separate Puerto Rico-specific wage index for purposes of adjusting the Puerto Rico standardized amounts (The national Puerto Rico standardized amount is adjusted by a wage index calculated for all Puerto Rico labor market areas based on the national average hourly wage as described above) We added the total adjusted salaries plus wage-related costs (as calculated in Step 5) for all hospitals in Puerto Rico and divided the sum by the total hours for Puerto Rico (as calculated in Step 4) to arrive at an overall average hourly wage of $13.8063 for Puerto Rico. For each labor market area in Puerto Rico, we calculated the Puerto Rico-specific wage index value by dividing the area average hourly wage (as calculated in Step 7) by the overall Puerto Rico average hourly wage.

*Step 11*—Section 4410 of Pub. L. 105–33 provides that, for discharges on or after October 1, 1997, the area wage index applicable to any hospital that is located in an urban area of a State may not be less than the area wage index applicable to hospitals located in rural areas in that State. (For all urban States, we established an imputed floor (69 FR 49109) Furthermore, this wage index floor is to be implemented in such a manner as to ensure that aggregate IPPS

payments are not greater or less than those that would have been made in the year if this section did not apply For FY 2006, this change affects 174 hospitals in 63 urban areas The areas affected by this provision are identified by a footnote in Table 4A in the Addendum of this final rule.

*Comment:* Numerous commenters were concerned with the proposed change in step 4 of the wage index calculation in the FY 2006 IPPS proposed rule (70 FR 23373). In order to allocate overhead wage-related costs to areas of a hospital that are excluded from the IPPS, CMS uses three steps: (1) Determine the ratio of overhead hours to revised (that is, allowable) hours; (2) compute overhead wage-related costs by multiplying the overhead hours ratio from Step 1 by wage-related costs; and (3) multiply the overhead wage-related costs from Step 2 by the excluded hours ratio (see Step 4 for more detail) The commenters noted that, for FY 2006, the calculation of the overhead hours ratio in Step 1 will be modified to subtract hours attributable to excluded areas (from line 8 for SNFs and line 8.01 for excluded areas of Worksheet S–3, Part II of the Medicare cost report). The commenters observed that this change results in a higher overhead hours ratio, which, in turn, results in a greater amount of overhead cost being allocated to excluded areas. The commenters believed that, because more costs are being allocated to excluded areas, a hospital's average hourly wage would decrease as a result of the proposal One commenter added that the proposed methodology is flawed, but did not indicate why Other commenters stated that the excluded area overhead hours ratio computed with CMS' proposed methodology is "dramatically high" and does not accurately reflect the hospital's overhead costs attributable to its employee benefit amounts, but they did not offer an explanation or an alternative for accurately identifying excluded overhead costs

In general, the commenters, including the national hospital association, were concerned that the proposed rule did not discuss the impact of the change, and did not include a lengthy discussion of the changes. These commenters believed that CMS should postpone the change until a lengthy discussion of the proposal can be included in a future proposed rule The commenters further recommended that, because the change in the wage index calculation caused confusion among hospitals as to the correct average hourly wages, hospitals should be given an opportunity to withdraw or reinstate their requests for geographic

reclassification within 30 days of the publication of the final rule

*Response:* We have carefully considered the comments we received regarding the proposed change in the FY 2006 IPPS proposed rule to the methodology for removing overhead wage-related costs attributable to areas of the hospital excluded from the IPPS Overall, commenters seemed to be more concerned that the proposed rule did not contain a detailed discussion of the modification, rather than disagreeing in principle with our modification Therefore, we are adopting our proposal without modifications because we believe the proposal most accurately calculates the overhead wage-related costs that are attributable to excluded areas. Historically, the wage index used to adjust a hospital's payment under the IPPS has only reflected costs of services that are provided in areas of the hospital that are covered under the IPPS That is, because certain areas of a hospital are specifically excluded from the IPPS, such as hospital-based SNFs, or distinct part rehabilitation and psychiatric units, the proportion of the salaries paid to and the hours worked by employees in areas of the hospital excluded from the IPPS are identified and removed from the hospital's total salaries and hours The remaining allowable salaries and hours are used to compute the hospital's average hourly wage, which, in turn, is used to calculate the wage index for the labor market area in which the hospital is located.

In addition to removing salaries and hours that are directly attributable to employees working in excluded areas, for each hospital reporting both total overhead salaries and total overhead hours greater than zero, we also remove any overhead (administrative and general) costs and hours attributable to excluded areas by allocating overhead costs and hours between the IPPS areas of the hospital and the areas of the hospital excluded from the IPPS. We do this by determining the "excluded rate" for each hospital, which is the ratio of excluded area hours to total hours (see Step 4 of the wage index calculation) The "excluded rate" reflects the percentage of hours worked by hospital employees in areas of the hospital excluded from the IPPS. For example, an "excluded rate" of 0.15 means that approximately 15 percent of total employee hours was spent in excluded areas (and therefore, about 85 percent of the employees' time worked was spent in the IPPS areas of the hospital). We then determine the amount of overhead salaries and hours to be allocated to the excluded areas by taking the "excluded rate" and multiplying it by the

hospital's total salaries and hours attributable to overhead

Next, because wage-related costs are separate from salaries, we perform a similar calculation to determine the percentage of wage-related costs attributable to overhead that should be allocated to the excluded areas of the hospital. We do this by computing the "overhead rate," which is the percentage of allowable (that is, does not include excluded area) overhead hours to total hours. The "overhead rate" is multiplied by total wage-related costs to determine the amount of wage-related cost attributable to overhead. Finally, the amount of wage-related costs attributable to overhead is multiplied by the "excluded rate" to determine the amount of overhead wage-related costs that are associated with excluded areas, and, therefore, should be subtracted from the total allowable wages used in the wage index. Obviously, the larger the "overhead rate," the greater the amount of overhead wage-related costs to be allocated across the hospital, and the greater the amount of overhead wage-related cost that is identified as being associated with excluded areas and that should be subtracted from allowable wages.

Through FY 2005, in determining the "overhead rate," we divided the allowable overhead hours by the hospital's total hours, including hours attributable to excluded areas, even though the latter hours are excluded from the wage index. Last year, after publication of the FY 2005 IPPS final rule, we became aware of the mismatch between the numerator and the denominator in the "overhead rate" calculation. Specifically, because the numerator in the "overhead rate" calculation does not include excluded area overhead hours, and the denominator in the "overhead rate" calculation does include the hours attributable to excluded areas. This results in an understatement of the amount of wage-related costs attributable to overhead that should be allocated to the excluded areas. That is, because we had not completely removed the amount of wage-related cost attributable to excluded areas from the denominator, the "overhead rate" was lower than it should be. A lower "overhead rate" has the unintended effect of artificially raising a hospital's average hourly wage because a lower amount of overhead attributable to excluded areas is removed from the total allowable salaries. To the extent that a hospital has a higher "excluded rate" (that is, they provide a significant amount of services that are not covered

under the IPPS, and therefore, have a high percentage of employee hours related to the excluded areas), this issue is more significant. For example, in the case of one hospital with an "excluded rate" of 96 percent, under the FY 2005 calculation, we identified (and removed) only 40 percent of the overhead wage-related costs as being attributable to excluded areas, whereas under the FY 2006 calculation, 93 percent of the hospital's overhead wage-related costs has been identified as being attributable to excluded areas, and therefore, are being removed for the FY 2006 wage index. Clearly, in the case of this hospital which predominantly provides services that are excluded from the IPPS, it is logical that the vast majority of its overhead costs are attributable to excluded areas of the hospital as well, and, therefore, these overhead costs should be removed from the hospital's average hourly wage used to determine the IPPS wage index.

Accordingly, in order to reduce the discrepancy between the numerator and the denominator in the overhead rate calculation, and to correct the understatement of the excluded overhead wage-related costs, we believe that it is more appropriate to determine the amount of overhead wage-related costs associated with excluded areas that should be excluded from the wage index based on the ratio of allowable costs to allowable hours (that is, only hours related to IPPS areas of the hospital). Specifically, we are not including the hours associated with excluded areas in the denominator of the "overhead rate" calculation. While hospitals with small excluded areas relative to their IPPS areas should be minimally affected by the removal of the excluded area hours from the calculation, this change will serve to lower the average hourly wages of hospitals with relatively large excluded areas, more closely aligning them with costs allowed under the IPPS.

We believe that, despite the absence of a lengthy discussion of the policy in the proposed rule, the change in the overhead wage-related cost allocation noted in the FY 2006 IPPS proposed rule (70 FR 23373) provided hospitals with adequate notice of the change. Hospitals are sufficiently sophisticated to understand the implications of a proposal to exclude certain lines on the cost report from its calculations. In addition, the Average Hourly Wage Calculator, which included the revised overhead wage-related cost allocation, has been available on our Web site: http://www.cms.hhs.gov/providers/hipps/ippswage.asp since shortly after the proposed rule went on public

display on April 24, 2005. The tables included with the FY 2006 proposed rule also showed the average hourly wages and the wage indices resulting from the proposed modification. Finally, clearly the fact that a hospital association and other commenters provided comments on the proposal demonstrates that hospitals had actual notice of the change. Some commenters even computed the effect of the change on the calculation of their wage indices for FY 2006. In addition, even if some hospitals might object that they did not understand the change included in the FY 2006 proposed rule, we believe that the detailed steps used in calculating the wage index are interpretive rules that are not subject to the notice and comment rulemaking procedures of the Administrative Procedure Act. Clearly, we do not include each of the detailed steps and lines from the cost report in our regulations at § 412.64(h), the section of the regulations requiring CMS to adjust the "proportion of the Federal rate for inpatient operating costs that are attributable to wages and labor-related costs for area differences in hospital wage levels by a [wage index] factor." For these reasons, we believe that we have provided sufficient notice of the change in the "overhead rate" calculation.

Commenters are correct that some hospitals that wish to reclassify for FY 2007 could also be affected by decreased average hourly wages. However, we have analyzed our data, and have found that the impact of the change is limited. Specifically, approximately 42 hospitals in 11 labor market areas are receiving a decrease of 1.0 to 5.5 percent in their FY 2006 wage index as a result of this change in the calculation. These labor market areas are primarily in the New England and East North Central census regions. In addition, 10 rural hospitals and 18 urban hospitals are experiencing a decrease in their average hourly wages of between 10 percent and 45 percent. However, the "excluded rates" for these hospitals range between 74 percent up to and including 100 percent. While we note that CMS did provide a 30-day period after publication of the FY 2005 IPPS final rule (69 FR 49066) allowing hospitals to reconsider their geographic reclassification decisions, we provided this opportunity because of the number of changes between the proposed and final rules and the apparent confusion regarding application of the section 505 out-migration adjustment. We do not believe a similar extension is warranted in this case. Further, we do not agree that a 30-day window after publication of the final rule is necessary in order to

**47376    Federal Register / Vol 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations**

allow cancellations or reinstatements of reclassifications The FY 2006 proposed rule change was clearly reflected in the wage index tables accompanying the proposed rule Thus, hospitals were well aware of their proposed average hourly wages and proposed wage indices for FY 2006 Hospitals could review these wage tables, find the proposed average hourly wage and wage index listed for the hospital and wage area, and on the basis of such information, determine whether they wished to withdraw or retain a certain reclassification. Because of such notice, there is no need to provide a subsequent 30-day period for withdrawal or reinstatement Further, we note that hospitals could use the Average Hourly Wage Calculator on the CMS Web site to determine exactly how the revised methodology affected the wage index For the reasons stated above, we are finalizing our proposed decision to remove the excluded area hours on lines 8 and 8 01 from the overhead wage-related cost allocation

*G. Computation of the FY 2006 Blended Wage Index*

For the final FY 2005 wage index, we used a blend of the occupational mix adjusted wage index and the unadjusted wage index. Specifically, we adjusted 10 percent of the FY 2005 wage index adjustment factor by a factor reflecting occupational mix Given that 2003–2004 was the first time for the administration of the occupational mix survey, hospitals had a short timeframe for collecting their occupational mix survey data and documentation, the wage data were not in all cases from a 1-year period, and there was no baseline data for purposes of developing a desk review program, we found it prudent not to adjust the entire wage index factor by the occupational mix However, we did find the data sufficiently reliable for applying an adjustment to 10 percent of the wage index We found the data reliable because hospitals were given an opportunity to review their survey data and submit changes in the Spring of 2004, hospitals were already familiar with the BLS OES survey categories, hospitals were required to be able to provide documentation that could be used by fiscal intermediaries to verify survey data, and the results of our survey were consistent with the findings of the 2001 BLS survey, especially for nursing and physical therapy categories. In addition, we noted that we were moving cautiously with implementing the occupational mix adjustment in recognition of changing trends in hiring nurses, the largest group

in the survey We noted that some States had recently established floors on the minimum level of registered nurse staffing in hospitals in order to maintain licensure In addition, in some rural areas, we believed that hospitals might be accounting for shortages of physicians by hiring more registered nurses (A complete discussion of the FY 2005 wage index adjustment factor can be found in section III.G of the FY 2005 IPPS final rule (69 FR 49052) )

In the FY 2005 final rule, we noted that while the statute required us to collect occupational mix data every 3 years, the statute does not specify how the occupational mix adjustment is to be constructed or applied. We are clarifying in this final rule that the October 1, 2004 deadline for implementing an occupational mix adjustment is not codified in the wage statute 1886(d)(3)(E) of the Act, which requires only a collection and measurement of occupational mix data, but rather stems from the effective date provisions in section 304(c) of the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, Pub. L 106–554 (BIPA) Although we believe that applying the occupational mix to 10 percent of the wage index factor fully implements the occupational mix adjustment, we also interpret BIPA as requiring only that we begin applying an adjustment by October 1, 2004 BIPA required the Secretary to complete, "by not later than September 30, 2003, for application beginning October 1, 2004," both the collection of occupational mix data and the measurement of such data (BIPA, section 304(c)(3) ) Thus, even if adjusting 10 percent of the wage index for occupational mix were not (as we believe it to be) considered to be full implementation of the BIPA effective date, we certainly began our application of the adjustment as of October 1, 2004

In addition, section 1886(d)(3)(E) of the Act provides broad authority for us to establish the factor we use to adjust hospital costs to take into account area differences in wage levels. The statute is clear that the wage index factor is to be "established by the Secretary" The occupational mix is only one part of this wage index factor, which, for the most part, is calculated on the basis of average hourly wage data submitted by all hospitals in the United States In exercising the Secretary's broad discretion to establish the factor that adjusts for geographic wage differences, in FY 2005 we adjusted 10 percent of such factor to account for occupational mix

Indeed, we have often used percentage figures or blended amounts

in exercising the Secretary's authority to establish the factor that adjusts for wage differences For example, in the FY 2005 final rule, we implemented new mapping boundaries for assigning hospitals to the geographic labor market areas used for calculating the wage index For hospitals that were harmed by the new geographic boundaries, we used a blended rate based on 50 percent of the wage index that would apply using the new geographic boundaries effective for FY 2005 and 50 percent of the wage index that would apply using the old geographic boundaries that were effective during FY 2004 (69 FR 49033) Similarly, beginning with FY 2000, we began phasing out costs related to GME and CRNAs from the wage index (64 FR 41505) Thus, for example, the FY 2001 wage index was based on a blend of 60 percent of an average hourly wage including these costs, and 40 percent of an average hourly wage excluding these costs (65 FR 47071)

As we proposed in the FY 2006 IPPS proposed rule, for FY 2006, we are again adjusting 10 percent of the wage index factor for the occupational mix In computing the occupational mix adjustment for the final FY 2006 wage index, we used the occupational mix survey data that we collected for the FY 2005 wage index, replacing the survey data for 20 hospitals that submitted revised data, and excluding the survey data for hospitals with no corresponding Worksheet S–3 wage data for FY 2006 wage index. While we considered adjusting 100 percent of the wage index by the occupational mix, we did not believe it was appropriate to use first-year survey data to make such a large adjustment As hospitals gain additional experience with the occupational mix survey, and as we develop more information upon which to audit the data we receive, we expect to increase the portion of the wage index that is adjusted

As we did in the proposed rule, we also acknowledge the finding of the District Court opinion in *Bellevue Hospital Center v Leavitt,* No 04–8639 (S D N Y, March 2005) Given that the Government has appealed the occupational mix portion of that decision, we believe it is appropriate to continue with our policy of adopting the policy we believe to be most prudent for occupational mix.

With 10 percent of the FY 2006 wage index adjusted for occupational mix, the national average hourly wage is $28 0037 and the Puerto Rico specific average hourly wage is $12 8055 The wage index values for 13 rural areas (27 7 percent) and 201 urban areas (52 1 percent) would decrease as a result of

Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations    47377

the adjustment. These decreases would be minimal; the largest negative impact for a rural area would be 0.18 percent and for an urban area, 0.43 percent. Conversely, 31 rural areas (66.0 percent) and 176 urban areas (45.6 percent) would benefit from this adjustment, with 1 urban area increasing 2.2 percent and 1 rural area increasing 0.37 percent. As there are no significant differences between the FY 2005 and the FY 2006 occupational mix survey data and results, we believe it is appropriate to again apply the occupational mix to 10 percent of the final FY 2006 wage index (See Appendix A to this final rule for further analysis of the impact of the occupational mix adjustment on the final FY 2006 wage index.)

*Comment:* Most commenters supported our proposal to adjust only 10 percent of the FY 2006 wage index for occupational mix. However, one commenter requested CMS to implement the occupational mix adjustment in a way that ensures that the adjustment does not negatively impact his hospital and other similar hospitals, providing no further elaboration for his suggestion, while two other commenters opposed applying any occupational mix adjustment at all until CMS performs a new survey. In contrast, a few commenters representing hospitals that would benefit from a 100 percent occupational mix adjustment to the wage index recommended the policy that would most behoove them (that is, a full implementation of the adjustment for the FY 2006 wage index). These commenters supported their proposal by noting that: (1) For FY 2006, hospitals were given an opportunity to revise or correct data originally submitted; (2) occupational mix data from FY 2005 were consistent with registered nurse and licensed practical nurse data from a AHA annual survey of hospitals; and (3) Congress intended for 100 percent of the wage index to be adjusted for occupational mix beginning October 1, 2004.

*Response:* We do not agree with the commenters recommending elimination of the occupational mix adjustment. As we stated in the proposed rule, given the FY 2005 and FY 2006 wage indices were based on the first year of survey data, as well as other stated considerations (see 70 FR 23375), we found survey results sufficiently robust to support an adjustment to 10 percent of the wage index, but did not believe it prudent to adjust the entire wage index by occupational mix. We refer readers to the proposed rule for a full discussion of our rationale. We continue to believe that the data are sufficient to support applying the occupational mix

to 10 percent of the wage index. Moreover, we believe that by implementing the wage index in this manner, we are carrying out the Congressional requirement to begin applying an occupational mix to the wage index by October 1, 2004.

We do not agree with commenters that stated that the correction of data permitted for FY 2006 is sufficient to allow for a 100 percent adjustment in FY 2006. While hospitals were permitted to correct their data for FY 2006, only 20 out of the 3,541 hospitals did so. Further, the fact that hospitals were permitted to submit corrected data does not alleviate concerns that (a) the data continued to be derived from the first year of an occupational mix survey; or (b) that CMS had no historical baseline data for developing a robust audit program for such data. Given such concerns, we also believe it would be neither equitable nor appropriate to adjust 100 percent of the wage index when the occupational mix benefits hospitals, but 10 percent of the wage index when it does not. Instead, we continue to believe that the proposed, more moderate occupational mix adjustment is the most equitable and appropriate approach. As such, the FY 2006 wage index in this final rule is a blend of 10 percent of a wage index adjusted for occupational mix and 90 percent of an unadjusted wage index.

*Comment:* One commenter expressed concern regarding CMS' statement in the proposed rule that "hospitals might be accounting for shortages of physicians by hiring more registered nurses" (70 FR 23375). The commenter suggested that the statement is unsupported and implies a "practice of downgrading care, especially since it uses 'registered nurses', not even nurse practitioners." The commenter requested that we delete the statement from the final rule.

*Response:* We did not intend to imply that hospitals that have increased their reliance on registered nurses provide downgraded care. Nursing schools and nursing associations acknowledge a significant increase in the number of registered nurses who are pursuing or have achieved advanced practice degrees as nurse practitioners, clinical nurse specialists, nurse midwives, and certified registered nurse anesthetists. Our statement merely acknowledged that hiring advanced practice registered nurses helps to mitigate problems with physician shortages by increasing the number of staff who are available to provide primary care, and that such hiring practices may have contributed to the higher than expected occupational mix reported by many rural hospitals

The wage index values for FY 2006 (except those for hospitals receiving wage index adjustments under section 505 of Pub. L. 108–173) are shown in Tables 4A, 4B, 4C, and 4F in the Addendum to this final rule.

Tables 3A and 3B in the Addendum to this final rule list the 3-year average hourly wage for each labor market area before the redesignation of hospitals, based on FYs 2004, 2005, 2006 cost reporting periods. Table 3A lists these data for urban areas and Table 3B lists these data for rural areas. In addition, Table 2 in the Addendum to this final rule includes the adjusted average hourly wage for each hospital from the FY 2000 and FY 2001 cost reporting periods, as well as the FY 2002 period used to calculate the FY 2006 wage index. The 3-year averages are calculated by dividing the sum of the dollars (adjusted to a common reporting period using the method described previously) across all 3 years, by the sum of the hours. If a hospital is missing data for any of the previous years, its average hourly wage for the 3-year period is calculated based on the data available during that period.

The wage index values in Tables 4A, 4B, 4C, and 4F and the average hourly wages in Tables 2, 3A, and 3B in the Addendum to this final rule include the occupational mix adjustment.

**Other Public Comments**

*Comment:* One commenter stated that an ongoing concern is that the hospital wage index is applied to many provider types for which wage data are excluded from the wage index calculation. The commenter recommended that CMS separate wage indices for SNFs, IRFs, and IPFs by modifying the way the wage index data are reported on the Medicare cost report.

*Response:* We appreciate the comment, but note that the subject-matter of this final rule is the IPPS system and not the PPSs governing non-IPPS entities such as SNFs, IRFs, and IPFs. Therefore, we are not responding to this comment at this time. We suggest that the commenter raise his or her concerns as part of the rulemaking process for updating the respective facility's PPS

*H. Revisions to the Wage Index Based on Hospital Redesignation*

1. General

Under section 1886(d)(10) of the Act, the Medicare Geographic Classification Review Board (MGCRB) considers applications by hospitals for geographic reclassification for purposes of payment under the IPPS. Hospitals must apply to

TAB A – From Fed.
Register

47378    Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations

the MGCRB to reclassify by September 1 of the year preceding the year during which reclassification is sought Generally, hospitals must be proximate to the labor market area to which they are seeking reclassification and must demonstrate characteristics similar to hospitals located in that area. The MGCRB issues its decisions by the end of February for reclassifications that become effective for the following fiscal year (beginning October 1). The regulations applicable to reclassifications by the MGCRB are located in §§ 412.230 through 412.280.

Section 1886(d)(10)(D)(iv) of the Act provides that, beginning with FY 2001, a MGCRB decision on a hospital reclassification for purposes of the wage index is effective for 3 fiscal years, unless the hospital elects to terminate the reclassification. Section 1886(d)(10)(D)(vi) of the Act provides that the MGCRB must use the 3 most recent years' average hourly wage data in evaluating a hospital's reclassification application for FY 2003 and any succeeding fiscal year.

Section 304(b) of Pub L. 106–554 provides that the Secretary must establish a mechanism under which a statewide entity may apply to have all of the geographic areas in the State treated as a single geographic area for purposes of computing and applying a single wage index, for reclassifications beginning in FY 2003. The implementing regulations for this provision are located at § 412.235.

Section 1886(d)(8)(B) of the Act requires the Secretary to treat a hospital located in a rural county adjacent to one or more urban areas as being located in the MSA to which the greatest number of workers in the county commute, if the rural county would otherwise be considered part of an urban area under the standards for designating MSAs and if the commuting rates used in determining outlying counties were determined on the basis of the aggregate number of resident workers who commute to (and, if applicable under the standards, from) the central county or counties of all contiguous MSAs. In light of the new CBSA definitions and the Census 2000 data that we implemented for FY 2005 (69 FR 49027), we undertook to identify those counties meeting these criteria. The eligible counties are identified under section III H 5 of this preamble.

2. Effects of Reclassification

Section 1886(d)(8)(C) of the Act provides that the application of the wage index to redesignated hospitals is dependent on the hypothetical impact that the wage data from these hospitals

would have on the wage index value for the area to which they have been redesignated. These requirements for determining the wage index values for redesignated hospitals is applicable both to the hospitals located in rural counties deemed urban under section 1886(d)(8)(B) of the Act and hospitals that were reclassified as a result of the MGCRB decisions under section 1886(d)(10) of the Act. Therefore, as provided in section 1886(d)(8)(C) of the Act,[9] the wage index values were determined by considering the following:

• If including the wage data for the redesignated hospitals would reduce the wage index value for the area to which the hospitals are redesignated by 1 percentage point or less, the area wage index value determined exclusive of the wage data for the redesignated hospitals applies to the redesignated hospitals.

• If including the wage data for the redesignated hospitals reduces the wage index value for the area to which the hospitals are redesignated by more than 1 percentage point, the area wage index value determined inclusive of the wage data for the redesignated hospitals (the combined wage index value) applies to the redesignated hospitals.

• If including the wage data for the redesignated hospitals increases the wage index value for the urban area to which the hospitals are redesignated, both the area and the redesignated hospitals receive the combined index value. Otherwise, the hospitals located in the urban area receive a wage index excluding the wage data of hospitals redesignated into the area.

• The wage data for a reclassified urban hospital is included in both the wage index calculation of the area to which the hospital is reclassified (subject to the rules described above) and the wage index calculation of the urban area where the hospital is physically located.

• Rural areas whose wage index values would be reduced by excluding the wage data for hospitals that have

been redesignated to another area continue to have their wage index values calculated as if no redesignation had occurred (otherwise, redesignated rural hospitals are excluded from the calculation of the rural wage index).

• The wage index value for a redesignated rural hospital cannot be reduced below the wage index value for the rural areas of the State in which the hospital is located

3. Application of Hold Harmless Protection for Certain Urban Hospitals Redesignated as Rural

Section 401(a) of Pub L. 106–113 (the Balanced Budget Refinement Act of 1999) amended section 1886(d)(8) of the Act by adding paragraph (E). Section 401(a) created a mechanism that permits an urban hospital to apply to the Secretary to be treated, for purposes of subsection (d), as being located in the rural area of the State in which the hospital is located A hospital that is granted redesignation under section 1886(d)(8)(E) of the Act, as added by section 401 of Pub L. 106–113, is therefore treated as a rural hospital for all purposes of payment under the Medicare IPPS, including the standardized amount, wage index, and disproportionate share calculations as of the effective date of the redesignation Under current policy, as a result of an approved redesignation of an urban hospital as a rural hospital, the wage index data are excluded from the wage index calculation for the area where the urban hospital is geographically located and included in the rural hospital wage index calculation

Last year, we became aware of an instance where the approved redesignation of an urban hospital as rural under section 1886(d)(8)(E) of the Act resulted in the hospital's data having an adverse impact on the rural wage index. We received a public comment noting that specific "hold harmless" provisions apply to reclassifications that occur under section 1886(d)(8)(B) and section 1886(d)(10) of the Act. That is, if a hospital is granted geographic reclassification under section 1886(d)(8)(B) or section 1886(d)(10) of the Act, there are certain rules that apply when the inclusion of the hospital's data results in a reduction of the reclassification area's wage index, and these rules are slightly different for urban areas versus rural areas These rules are more fully described in the FY 2005 IPPS final rule (69 FR 49053) Generally stated, these rules prevent a rural area from being adversely affected as a result of reclassification That is, if excluding the reclassifying hospitals'

⁹ Although section 1886(d)(8)(C)(viii) of the Act also provides that the wage index for an urban area may not decrease as a result of redesignated hospitals if the urban area wage index is already below the wage index for rural areas in the State in which the urban area is located, the provision was effectively made moot by section 4410 of Pub L 105–33, which provides that the area wage index applicable to any hospital that is located in an urban area of a State may not be less than the area wage index applicable to hospitals located in rural areas in that State. For all-urban States, CMS established an imputed floor (69 FR 49169) Also, section 1886(d)(8)(C)(viii) of the Act provides that an urban area's wage index may not decrease as a result of redesignated hospitals if the urban area is located in a State that is composed of a single urban area.

Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations     47379

wage data would decrease the wage index of the rural area, the reclassifying hospitals are included in the rural area's wage index. Otherwise, the reclassifying hospitals are excluded. For hospitals reclassifying out of urban areas, the rules provide that the wage data for the reclassified urban hospital are included in the wage index calculation of the urban area where the hospital is physically located.

The commenter recommended that we revise our regulations and apply similar hold harmless provisions and treat hospitals redesignated under section 1886(d)(8)(E) of the Act in the same manner as reclassifications under section 1886(d)(8)(B) and section 1886(d)(10) of the Act. In our continued effort to promote consistency, equity and to simplify our rules with respect to how we construct the wage indexes of rural and urban areas, we are persuaded that there is a need to modify our policy when hospital redesignations occur under section 1886(d)(8)(E) of the Act. Therefore, for the FY 2006 wage index, in the FY 2006 IPPS proposed rule, we proposed to apply the hold harmless rule that currently applies when rural hospitals are reclassifying out of the rural area (from rural to urban) to situations where hospitals are reclassifying into the rural area (from urban to rural under section 1886(d)(8)(E) of the Act). Thus, the rule would be that the wage data of the urban hospital reclassifying into the rural area are included in the rural area's wage index, if including the urban hospital's data increase the wage index of the rural area. Otherwise, the wage data are excluded. Similarly, we proposed to apply to these cases the rule that currently applies when urban hospitals reclassify under the MGCRB process. Thus, the wage data for an urban hospital reclassifying under section 1886(d)(8)(E) of the Act are always included in the wage index of the urban area where the hospital is located, and can also be included in the wage index of the rural area to which it is reclassifying (if doing so increases the rural area's wage index). In the FY 2006 IPPS proposed rule, we stated that we believe this proposal provides uniformity in the way geographic areas are treated under all types of reclassifications. In addition, we further stated that our proposal promotes predictability by alleviating fluctuations in the wage indexes due to a section 401 redesignation.

No commenters objected to extending hold harmless protection to urban hospitals that are redesignated as rural under section 401. Therefore, in this final rule, we are finalizing the policy to

extend hold harmless protection to urban hospitals that are redesignated as rural under section 401.

We are including in the Addendum to this final rule Table 9C, which shows hospitals redesignated under section 1886(d)(8)(E) of the Act.

4  FY 2006 MGCRB Reclassifications

The MGCRB's review of FY 2006 reclassification requests resulted in 299 hospitals approved for wage index reclassification for FY 2006. Because MGCRB wage index reclassifications are effective for 3 years, hospitals reclassified during FY 2004 or FY 2005 are eligible to continue to be reclassified based on prior reclassifications to current MSAs during FY 2006. There were 395 hospitals reclassified for wage index for FY 2005, and 94 hospitals reclassified for wage index in FY 2004. Some of the hospitals that reclassified in FY 2004 and FY 2005 have elected not to continue their reclassifications in FY 2006 because, under the new labor market area definitions, they are now physically located in the areas to which they previously reclassified. Of all of the hospitals approved for reclassification for FY 2004, FY 2005, and FY 2006, 631 hospitals are in a reclassification status for FY 2006.

Prior to FY 2004, hospitals had been able to apply to be reclassified for purposes of either the wage index or the standardized amount. Section 401 of Pub. L. 108–173 established that all hospitals will be paid on the basis of the large urban standardized amount, beginning with FY 2004. Consequently, all hospitals are paid on the basis of the same standardized amount, which made such reclassifications moot. Although there could still be some benefit in terms of payments for some hospitals under the DSH payment adjustment for operating IPPS, section 402 of Pub. L. 108–173 equalized DSH payment adjustments for rural and urban hospitals, with the exception that the rural DSH adjustment is capped at 12 percent (except that RRCs have no cap). (A detailed discussion of this application appears in section IV.L. of the preamble of the FY 2005 IPPS final rule (69 FR 49055).

Under § 412.273, hospitals that have been reclassified by the MGCRB are permitted to withdraw their applications within 45 days of the publication of a proposed rule. The request for withdrawal of an application or termination of an existing 3-year reclassification that would be effective in FY 2005 must be received by the MGCRB within 45 days of the publication of the proposed rule. If a hospital elects to withdraw its wage

index application after the MGCRB has issued its decision, but prior to the above date, it may later cancel its withdrawal in a subsequent year and request the MGCRB to reinstate its wage index reclassification for the remaining fiscal year(s) of the 3-year period (§ 412.273(b)(2)(i)). The request to cancel a prior withdrawal must be in writing to the MGCRB no later than the deadline for submitting reclassification applications for the following fiscal year (§ 412.273(d)). For further information about withdrawing, terminating, or canceling a previous withdrawal or termination of a 3-year reclassification for wage index purposes, we refer the reader to § 412.273, as well as the August 1, 2002, IPPS final rule (67 FR 50065) and the August 1, 2001 IPPS final rule (66 FR 39887).

Changes to the wage index that result from withdrawals of requests for reclassification, wage index corrections, appeals, and the Administrator's review process have been incorporated into the wage index values published in this final rule. These changes may affect not only the wage index value for specific geographic areas, but also the wage index value redesignated hospitals receive; that is, whether they receive the wage index that includes the data for both the hospitals already in the area and the redesignated hospitals. Further, the wage index value for the area from which the hospitals are redesignated may be affected.

Applications for FY 2007 reclassifications are due to the MGCRB by September 1, 2005. We note that this is also the deadline for canceling a previous wage index reclassification withdrawal or termination under § 412.273(d). Applications and other information about MGCRB reclassifications may be obtained, beginning in Mid-July 2005, via the CMS Internet Web site at: *http:// cms.hhs.gov/providers/pufb/ mgcinfo.asp*, or by calling the MGCRB at (410) 786–1174. The mailing address of the MGCRB is: 2520 Lord Baltimore Drive, Suite L, Baltimore, MD 21244–2670.

5  FY 2006 Redesignations Under Section 1886(d)(8)(B) of the Act

Beginning October 1, 1988, section 1886(d)(8)(B) of the Act required us to treat a hospital located in a rural county adjacent to one or more urban areas as being located in the MSA if certain criteria were met. Prior to FY 2005, the rule was that a rural county adjacent to one or more urban areas would be treated as being located in the MSA to which the greatest number of workers in the county commute, if the rural county

would otherwise be considered part of an urban area under the standards published in the Federal Register on January 3, 1980 (45 FR 956) for designating MSAs (and NECMAs), and if the commuting rates used in determining outlying counties (or, for New England, similar recognized areas) were determined on the basis of the aggregate number of resident workers who commute to (and, if applicable under the standards, from) the central county or counties of *all* contiguous MSAs (or NECMAs) Hospitals that met the criteria using the January 3, 1980 version of these OMB standards were deemed urban for purposes of the standardized amounts and for purposes of assigning the wage data index

On June 6, 2003, OMB announced the new CBSAs based on Census 2000 data For FY 2005, we used OMB's 2000 CBSA standards and the Census 2000 data to identify counties qualifying for redesignation under section 1886(d)(8)(B) for the purpose of assigning the wage index to the urban area. We presented this listing, effective for discharges occurring on or after October 1, 2004 (FY 2005), in Chart 6 of the FY 2005 final rule (69 FR 49057) However, Chart 6 in the FY 2005 final rule contained a printing error in which we misidentified the redesignation areas for two counties that qualified for redesignation under section 1886(d)(8)(B) of the Act. The list of rural counties qualifying to be urban in that

Chart 6 incorrectly listed the redesignation CBSAs for Monroe, PA and Walworth, WI. This error was made only in the chart and not in the application of the rules; that is, we correctly applied the rules to the correct rural counties qualifying to be urban for FY 2005

In addition, we discovered that, in the FY 2005 IPPS final rule, we had erroneously printed the names of the entire Metropolitan Statistical Areas rather than the Metropolitan Division names. Because we recognized Metropolitan Divisions as MSAs in the FY 2005 IPPS final rule (69 FR 49029), we should have printed the division names for the following counties: Henry, FL; Starke, IN; Henderson, TX; Fannin, TX; and Island, WA.

The chart below contains the corrected listing of the rural counties designated as urban under section 1886(d)(8)(B) of the Act that we are using for FY 2006 For discharges occurring on or after October 1, 2005, hospitals located in the first column of this chart will be redesignated for purposes of using the wage index of the urban area listed in the second column.

*Comment:* Several commenters urged CMS to permit hospitals located in counties redesignated under section 1886(d)(8)(B) of the Act to waive or reject the redesignation if the redesignation proves to be detrimental or otherwise undesirable to the qualifying hospital They cited

examples in which hospitals with special designations, such as rural referral centers, SCHs, MDHs, and CAHs, where their status is dependent on being located in a rural area, lost their special designation when they were reclassified to an urban area under section 1886(d)(8)(B) of the Act.

*Response:* We considered this comment and are responding to it only insofar as it relates to section 1886(d) hospitals, such as rural referral centers, SCHs, and MDHs, located in Lugar counties We refer readers to the section on CAHs in this final rule for information on how CMS treats CAHs in Lugar counties The statute specifically states that "(f)or purposes of this subsection, the Secretary shall treat a hospital located in a rural county adjacent to one or more urban areas as being located in (a) urban metropolitan statistical area * * * ." Therefore, all section 1886(d) hospitals located in Lugar counties are deemed urban and such classification cannot be waived, except if a hospital is eligible for an out-migration adjustment In order for a section 1886(d) hospital to retain its special designation when the area in which it is located is redesignated from rural to urban, a hospital must apply for reclassification under § 412 103(a). We encourage a hospital seeking reclassification under this section to submit a complete application in writing to its CMS Regional Office

### RURAL COUNTIES REDESIGNATED AS URBAN UNDER SECTION 1886(d)(8)(B) OF THE ACT
[Based on CBSAs and Census 2000 Data]

| Rural county | CBSA |
|---|---|
| Cherokee, AL | Rome, GA |
| Macon, AL | Auburn-Opelika, AL |
| Talladega, AL | Anniston-Oxford, AL |
| Hot Springs, AR | Hot Springs, AR |
| Windham, CT | Hartford-West Hartford-East Hartford, CT |
| Bradford, FL | Gainesville, FL |
| Flagler, FL | Deltona-Daytona Beach-Ormond Beach, FL |
| Hendry, FL | West Palm Beach-Boca Raton-Boynton, FL |
| Levy, FL | Gainesville, FL |
| Walton, FL | Fort Walton Beach-Crestview-Destin, FL |
| Banks, GA | Gainesville, GA |
| Chattooga, GA | Chattanooga, TN-GA |
| Jackson, GA | Atlanta-Sandy Springs-Marietta, GA |
| Lumpkin, GA | Atlanta-Sandy Springs-Marietta, GA |
| Morgan, GA | Atlanta-Sandy Springs-Marietta, GA |
| Peach, GA | Macon, GA |
| Polk, GA | Atlanta-Sandy Springs-Marietta, GA |
| Talbot, GA | Columbus, GA-AL |
| Bingham, ID | Idaho Falls, ID |
| Christian, IL | Springfield, IL |
| DeWitt, IL | Bloomington-Normal, IL |
| Iroquois, IL | Kankakee-Bradley, IL |
| Logan, IL | Springfield, IL |
| Mason, IL | Peoria, IL |
| Ogle, IL | Rockford, IL |
| Clinton, IN | Lafayette, IN |
| Henry, IN | Indianapolis, IN |
| Spencer, IN | Evansville, IN-KY |

Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations    47381

RURAL COUNTIES REDESIGNATED AS URBAN UNDER SECTION 1886(d)(8)(B) OF THE ACT—Continued
[Based on CBSAs and Census 2000 Data]

| Rural county | CBSA |
|---|---|
| Starke, IN | Gary, IN |
| Warren, IN | Lafayette, IN |
| Boone, IA | Ames, IA |
| Buchanan, IA | Waterloo-Cedar Falls, IA |
| Cedar, IA | Iowa City, IA |
| Allen, KY | Bowling Green, KY |
| Assumption Parish, LA | Baton Rouge, LA |
| St. James Parish, LA | Baton Rouge, LA |
| Allegan, MI | Holland-Grand Haven, MI |
| Montcalm, MI | Grand Rapids-Wyoming, MI |
| Oceana, MI | Muskegon-Norton Shores, MI |
| Shiawassee, MI | Lansing-East Lansing, MI |
| Tuscola, MI | Saginaw-Saginaw Township North, MI |
| Fillmore, MN | Rochester, MN |
| Dade, MO | Springfield, MO |
| Pearl River, MS | Gulfport-Biloxi, MS |
| Caswell, NC | Burlington, NC |
| Granville, NC | Durham, NC |
| Harnett, NC | Raleigh-Cary, NC |
| Lincoln, NC | Charlotte-Gastonia-Concord, NC-SC |
| Polk, NC | Spartanburg, NC |
| Los Alamos, NM | Santa Fe, NM |
| Lyon, NV | Carson City, NV |
| Cayuga, NY | Syracuse, NY |
| Columbia, NY | Albany-Schenectady-Troy, NY |
| Genesee, NY | Rochester, NY |
| Greene, NY | Albany-Schenectady-Troy, NY |
| Schuyler, NY | Ithaca, NY |
| Sullivan, NY | Poughkeepsie-Newburgh-Middletown, NY |
| Wyoming, NY | Buffalo-Niagara Falls, NY |
| Ashtabula, OH | Cleveland-Elyria-Mentor, OH |
| Champaign, OH | Springfield, OH |
| Columbiana, OH | Youngstown-Warren-Boardman, OH-PA |
| Cotton, OK | Lawton, OK |
| Linn, OR | Corvallis, OR |
| Adams, PA | York-Hanover, PA |
| Clinton, PA | Williamsport, PA |
| Greene, PA | Pittsburgh, PA |
| Monroe, PA | Allentown-Bethlehem-Easton, PA-NJ |
| Schuylkill, PA | Reading, PA |
| Susquehanna, PA | Binghamton, NY |
| Clarendon, SC | Sumter, SC |
| Lee, SC | Sumter, SC |
| Oconee, SC | Greenville, SC |
| Union, SC | Spartanburg, SC |
| Meigs, TN | Cleveland, TN |
| Bosque, TX | Waco, TX |
| Falls, TX | Waco, TX |
| Ellis, TX | Dallas-Plano-Irving, TX |
| Grimes, TX | College Station-Bryan, TX |
| Harrison, TX | Longview, TX |
| Henderson, TX | Dallas-Plano-Irving, TX |
| Milam, TX | Austin-Round Rock, TX |
| Van Zandt, TX | Dallas-Plano-Irving, TX |
| Willacy, TX | Brownsville-Harlingen, TX |
| Buckingham, VA | Charlottesville, VA |
| Floyd, VA | Blacksburg-Christiansburg-Radford, VA |
| Middlesex, VA | Virginia Beach-Norfolk-Newport News, VA |
| Page, VA | Harrisonburg, VA |
| Shenandoah, VA | Winchester, VA-WV |
| Island, WA | Seattle-Bellevue-Everett, WA |
| Mason, WA | Olympia, WA |
| Wahkiakum, WA | Longview, WA |
| Jackson, WV | Charleston, WV |
| Roane, WV | Charleston, WV |
| Green, WI | Madison, WI |
| Green Lake, WI | Fond du Lac, WI |
| Jefferson, WI | Milwaukee-Waukesha-West Allis, WI |
| Walworth, WI | Milwaukee-Waukesha-West Allis, WI |

As in the past, hospitals redesignated under section 1886(d)(8)(B) of the Act are also eligible to be reclassified to a different area by the MGCRB. Affected hospitals were permitted to compare the reclassified wage index for the labor market area in Table 4C in the Addendum of the May 4, 2005 proposed rule into which they have been reclassified by the MGCRB to the wage index for the area to which they are redesignated under section 1886(d)(8)(B) of the Act. Hospitals were provided the opportunity to withdraw from an MGCRB reclassification within 45 days of the publication of the FY 2006 IPPS proposed rule (May 4, 2005)

**6. Reclassifications Under Section 508 of Pub. L. 108–173**

Under section 508 of Pub. L. 108–173, a qualifying hospital could appeal the wage index classification otherwise applicable to the hospital and apply for reclassification to another area of the State in which the hospital is located (or, at the discretion of the Secretary, to an area within a contiguous State) We implemented this process through notices published in the Federal Register on January 6, 2004 (69 FR 661) and February 13, 2004 (69 FR 7340) Such reclassifications are applicable to discharges occurring during the 3-year period beginning April 1, 2004 and ending March 31, 2007. Under section 508(b), reclassifications under this process do not affect the wage index computation for any area or for any other hospital and cannot be effected in a budget neutral manner.

*Comment:* Some commenters indicated that hospitals currently receiving a section 508 reclassification are eligible to reclassify to that same area under the standard reclassification process as a result of the new labor market definitions that we adopted for FY 2005. The commenters pointed out that the governing regulations indicate that "if a hospital is already reclassified to a given geographic area for wage index purposes for a 3-year period, and submits an application to the same area for either the second or third year of the 3-year period, that application will not be approved." These commenters expressed concern that the MGCRB will deny these hospitals reclassification for FY 2007 if there is no change in the regulations to address this issue.

*Response:* We appreciate the commenters' interest in this matter. Hospitals that indicate in their MGCRB applications that they agree to waive their section 508 reclassification for the first 6 months of FY 2007 if they are granted a 3-year reclassification under the traditional MGCRB process will not

be subject to the regulation cited above Thus, in applying for a 3-year MGCRB reclassification beginning in FY 2007, hospitals that are already reclassified to the same area under section 508 should indicate in their MGCRB reclassification requests that if they receive the MGCRB reclassification, they will forfeit the section 508 reclassification for the first 6 months of FY 2007

*Comment:* Many commenters expressed concern regarding the timing overlaps between section 508 of Pub L 108–173 and the FY 2007 reclassifications The commenters pointed out that section 508 of Pub L 108–173 required the Secretary to develop a one-time special reclassification procedure that allowed hospitals meeting specified criteria to be reclassified from April 1, 2004, through March 31, 2007. They further stated that some hospitals that qualified for reclassification under section 508 may qualify for geographic reclassification under one of the opportunities available under the regulations in 42 CFR part 412, subpart L. Because pending reclassifications will expire in the middle of a Federal fiscal year, the commenters requested that CMS clarify when the hospitals should apply for reclassification under an opportunity under subpart L. Commenters stated that, unless CMS establishes an accommodation for section 508 hospitals, hospitals will be confronted with a difficult dilemma: Forfeiting 6 months of section 508 reclassification to be able to reclassify for FY 2007; or postponing reclassification until FY 2008 and being without reclassification for the 6 months between April 1 and September 30, 2007. The commenters believed that both of these options would carry significant financial consequences for hospitals The commenters urged CMS to implement a solution that does not require hospitals to make such a difficult choice, and would provide them with the full benefits of the section 508 reclassification

*Response:* We appreciate the commenters' suggestions and their interest in this matter. Under 1886(d)(10)(D)(v) of the Act, CMS has the authority to "establish procedures" under which a hospital may elect to terminate a reclassification before the end of a 3-year period. Based on comments and on a careful review of the statute, we have decided to exercise this authority to establish a procedural rule for section 508 hospitals to retain their section 508 reclassification through its expiration on March 31, 2007 and reclassify under a subpart L opportunity for the second half of FY 2007 The

following procedural rules will apply for section 508 hospitals that wish to reclassify for the second half of FY 2007:

For section 508 hospitals applying for individual reclassification under 42 CFR 412.230—

(1) Hospitals must apply for reclassification through the MGCRB by the September 1, 2005 deadline

(2) Section 508 hospitals that are approved for reclassification will have 45 days from the date the FY 2007 IPPS proposed rule is published to cancel their section 1886(d)(10) reclassification for either the first 6 months of FY 2007 or for the entire fiscal year. Hospitals should note that if they fail to cancel their section 1886(d)(10) reclassification by the deadline, they will not receive their section 508 wage adjustment in FY 2007. To further clarify—

• Hospitals that cancel their section 1886(d)(10) reclassification for the first 6 months receive their section 508 reclassifications for October 2006 through March 2007 and their section 1886(d)(10) reclassifications for April through September 2007.

• Hospitals that cancel their section 1886(d)(10) reclassification for the entire year will receive their section 508 reclassification for October 2006 through March 2007 and their home area wage index for April through September 2007

• Hospitals that do not cancel their section 1886(d)(10) reclassifications will receive their section 1886(d)(10) reclassification, not their section 508 reclassification, for the entire fiscal year

Hospital groups that include a section 508 hospital would also be permitted to submit section 1886(d)(10) reclassification applications by the September 1, 2005 deadline. However, in order for a group reclassification to be approved, either of the following conditions would need to be met:

(1) The section 508 hospital that is part of the group must waive its section 508 reclassification for the first half of FY 2007. This is necessary because the regulations at §§ 412.232 and 412 234 state that all hospitals in a county must apply for reclassification as a group. The hospitals either agree to receive the same reclassification or they fail to qualify as a group. The Administrator upheld this policy in the MGCRB appeal for FY 2006

(2) Each member of the group agrees in writing, at the time the application is submitted September 1, 2005, that they cancel the group reclassification if granted the group reclassification for the first 6 months of FY 2007. The section 1886(d)(10) reclassification will be effective only

April through September 2007. Under this scenario, the section 508 hospital receives its section 508 reclassification from October 2006 through March 2007 and the remainder of the group receives the home wage index for that time period. For April through September 2007, the section 508 hospital and the remainder of the group receive the group reclassification. The group will have the opportunity to cancel the April through September 2007 group reclassification within 45 days of publication of the proposed rule.

We would apply a similar rule for purposes of the out-migration adjustment. The statute states that a hospital cannot receive an out-migration adjustment if it is simultaneously reclassified under section 1886(d)(10) of the Act. Therefore, hospitals that are not reclassified during any part of FY 2007 will, by default, receive an out-migration adjustment during that time period.

We show the reclassifications effective under the one-time appeal process in Table 9B in the Addendum to this final rule.

*I. FY 2006 Wage Index Adjustment Based on Commuting Patterns of Hospital Employees*

In accordance with the broad discretion under section 1886(d)(13) of the Act, as added by section 505 of Pub. L. 108–173, beginning with FY 2005, we established a process to make adjustments to the hospital wage index based on commuting patterns of hospital employees. The process, outlined in the FY 2005 IPPS final rule (69 FR 49061), provides for an increase in the wage index for hospitals located in certain counties that have a relatively high percentage of hospital employees who reside in the county but work in a different county (or counties) with a higher wage index. Such adjustments are effective for 3 years, unless a hospital requests to waive the application of the adjustment. A county will not lose its status as a qualifying county due to wage index changes during the 3-year period, and counties will receive the same wage index increase for those 3 years. However, a county that qualifies in any given year may no longer qualify after the 3-year period, or it may qualify but receive a different adjustment to the wage index level. Hospitals that receive this adjustment to their wage index are not eligible for reclassification under section 1886(d)(8) or section 1886(d)(10) of the Act. Adjustments under this provision are not subject to the IPPS budget neutrality requirements under

section 1886(d)(3)(E) or section 1886(d)(8)(D) of the Act.

*Comment:* One commenter proposed that CMS allow hospitals that reclassify and receive a diluted wage index to receive the out-migration adjustment provided it does not exceed the actual wage index for the area to which they are reclassified.

*Response:* The statute specifically states that hospitals that receive an out-migration adjustment are ineligible for reclassification under section 1886(d)(8) or section 1886(d)(10) of the Act.

Hospitals located in counties that qualify for the wage index adjustment will receive an increase in the wage index that is equal to the average of the differences between the wage indices of the labor market area(s) with higher wage indices and the wage index of the resident county, weighted by the overall percentage of hospital workers residing in the qualifying county who are employed in any labor market area with a higher wage index. We have employed the prereclassified wage indices in making these calculations.

Hospitals located in the qualifying counties identified in Table 4J in the Addendum to this final rule that have not already reclassified through section 1886(d)(10) of the Act, redesignated through section 1886(d)(8) of the Act, received a section 508 reclassification, or requested to waive the application of the out-migration adjustment will receive the wage index adjustment listed in the table for FY 2006. We used the same formula described in the FY 2005 final rule (69 FR 49064) to calculate the out-migration adjustment. This adjustment was calculated as follows:

*Step 1* Subtract the wage index for the qualifying county from the wage index for the higher wage area.

*Step 2* Divide the number of hospital employees residing in the qualifying county who are employed in such higher wage index area by the total number of hospital employees residing in the qualifying county who are employed in any higher wage index area. Multiply this result by the result obtaining in Step 1.

*Step 3* Sum the products resulting from Step 2 (if the qualifying county has workers commuting to more than one higher wage area).

*Step 4* Multiply the result from Step 3 by the percentage of hospital employees who are residing in the qualifying county and who are employed in any higher wage index area.

The adjustments calculated for qualifying hospitals are listed in Table 4J in the Addendum to this final rule.

These adjustments are effective for each county for a period of 3 fiscal years. Hospitals that received the adjustment in FY 2005 will be eligible to retain that same adjustment for FY 2006 and FY 2007. For hospitals in newly qualified counties, adjustments to the wage index are effective for 3 years, beginning with discharges occurring on or after October 1, 2005.

As previously noted, hospitals receiving the wage index adjustment under section 1886(d)(13)(F) of the Act are not eligible for reclassification under sections 1886(d)(8) or (d)(10) of the Act, or under section 508 of Pub. L. 108–173, unless they waive such out-migration adjustment. As announced in the FY 2005 final rule as well as the proposed rule for FY 2006, hospitals redesignated under section 1886(d)(8) of the Act or reclassified under section 1886(d)(10) of the Act or under section 508 of Pub. L. 108–173 were deemed to have chosen to retain their redesignation or reclassification, unless they explicitly notified CMS that they elected to receive the out-migration adjustment instead within 45 days from the publication of the FY 2006 IPPS proposed rule (May 4, 2005). Under § 412.273, hospitals that have been reclassified by the MGCRB were permitted to terminate existing 3-year reclassifications within 45 days of the May 4, 2005 proposed rule. Hospitals that are eligible to receive the out-migration wage index adjustment and that withdraw their application for reclassification automatically receive the wage index adjustment listed in Table 4J in the Addendum to this final rule. Requests for withdrawal of an application for reclassification or termination of an existing 3-year reclassification will be effective in FY 2006 and had to have been received by the MGCRB within 45 days of the publication of the FY 2006 IPPS proposed rule. Requests to waive section 1886(d)(8) redesignations for FY 2006 had to have been received by CMS within 45 days of the publication of the FY 2006 IPPS proposed rule. In addition, hospitals that wished to retain their redesignation/reclassification under section 1886(d)(8), section 1886(d)(10), or section 508 (instead of receiving the out-migration adjustment) for FY 2006 did not need to submit a formal request to CMS; they automatically retain their redesignation/reclassification status for FY 2006.

*Comment:* Commenters expressed opposition to and support of CMS' interpretation of the law that hospitals will receive the same out-migration adjustment in each of the 3 years of eligibility for the adjustment. One

45

commenter recommended that CMS maintain its policy to keep the out-migration adjustment unchanged to minimize uncertainties and instability in Medicare reimbursement to hospitals Other commenters recommended that CMS revise its policy so that the out-migration adjustment will be recalculated each year based on updated wage data and the new wage indices

*Response:* We appreciate the comments we received regarding this issue The governing statute specifically states that the wage index increase "shall be effective for a period of 3 fiscal years " We have interpreted this to mean that the adjustment shall be identical for 3 years If we were to recalculate the out-migration adjustment each year based on updated wage data as suggested, counties could potentially be deemed ineligible for the wage index adjustment if the average hourly wage for all hospitals in the labor market area exceeded the average hourly wages for all hospitals in the county. Therefore, we have elected to maintain our policy to keep the out-migration adjustment associated with a particular county unchanged

*Comment:* One commenter requested that we clarify the removal of several providers from Table 4J between the May 4, 2005 Federal Register publication and the revised table posted on the CMS Web site on June 1, 2005.

*Response:* There were some errors for CBSAs and imputed rural floors and these errors had an effect on the out-migration calculations shown in Table 4J of the proposed rule. We posted the corrected adjustments on the CMS Web site on June 1, 2005. Hospitals were also notified of the corrected out-migration adjustments via the Listserv and a Hospital Open Door Forum on June 2, 2005

*Comment:* Commenters requested that CMS make available the hospital commuting data used to compute the out-migration adjustment

*Response:* We plan to make the data used for determining the qualifying counties and the out-migration adjustment available after the publication of this final rule on the CMS Web site at: http://www.cms.gov

*Comment:* Commenters requested that CMS implement a policy similar to the policy established for FY 2005 that allows hospitals to withdraw or reinstate their geographic applications within 30 days of the date that the final rule is published Several commenters believed there is still a likelihood that revisions made between the proposed and final rules may affect a hospital's choice of whether to accept the out-migration or a reclassification

*Response:* First, we note that cancellation and reinstatement rules for geographic reclassifications are procedural rules that are not subject to notice and comment rulemaking Second, we note that it has been our longstanding policy that our procedural rules on withdrawals or terminations of reclassifications require such terminations and withdrawals be made within 45 days of the proposed rule (§ 412.273). However, FY 2005 was an exceptional circumstance due to the extensive changes to the wage index as a result of our adoption of the new labor market areas We noted that this was a limited circumstance, and we did not expect to extend the withdrawal date beyond 45 days after the proposed rule in future years We do not believe the exceptional circumstance that existed for FY 2005 exists for FY 2006, given the changes to the labor market areas have been adopted. Therefore, we are continuing with our longstanding policy that terminations of reclassifications are required to be made within 45 days of the proposed rule. As we have explained in previous preamble discussions (see, for example, 56 FR 43241, August 30, 1991), the 45-day deadline provides a reasonable time to take withdrawals or terminations into account in developing the final wage index and prospective payment rates.

*J. Requests for Wage Index Data Corrections*

In the FY 2005 IPPS final rule (66 FR 27194), we revised the process and timetable for application for development of the wage index, beginning with the FY 2005 wage index The preliminary and unaudited Worksheet S–3 wage data and occupational mix survey files were made available on October 6, 2004 through the Internet on the CMS Web site at: http://cms.hhs.gov/providers/hipps/ippswage.asp In a memorandum dated October 6, 2004, we instructed all Medicare fiscal intermediaries to inform the IPPS hospitals they service of the availability of the wage index data files and the process and timeframe for requesting revisions (including the specific deadlines listed below) We also instructed the fiscal intermediaries to advise hospitals that these data are also made available directly through their representative hospital organizations

If a hospital wished to request a change to its data as shown in the October 6, 2004 wage and occupational mix data files, the hospital was to submit corrections along with complete, detailed supporting documentation to its fiscal intermediary by November 29, 2004 Hospitals were notified of this

deadline and of all other possible deadlines and requirements, including the requirement to review and verify their data as posted on the preliminary wage index data file on the Internet, through the October 6, 2004 memorandum referenced above

In the October 6, 2004 memorandum, we also specified that a hospital could only request revisions to the occupational mix data for the reporting period that the hospital used in its original FY 2005 wage index occupational mix survey. That is, a hospital that submitted occupational mix data for the 12-month reporting period could not switch to submitting data for the 4-week reporting period and vice versa. Further, a hospital could not submit an occupational mix survey for the periods beginning before January 1, 2003, or after January 11, 2004 In addition, a hospital that did not submit an occupational mix survey for the FY 2005 wage index was not permitted to submit a survey for the FY 2006 wage index

The fiscal intermediaries notified the hospitals by mid-February 2005 of any changes to the wage index data as a result of the desk reviews and the resolution of the hospitals' late November 2004 change requests. The fiscal intermediaries also submitted the revised data to CMS by mid-February 2005. CMS published the proposed wage index public use files that included hospitals' revised wage data on February 25, 2005. In a memorandum also dated February 25, 2005, we instructed fiscal intermediaries to notify all hospitals regarding the availability of the proposed wage index public use files and the criteria and process for requesting corrections and revisions to the wage index data. Hospitals had until March 14, 2005 to submit requests to the fiscal intermediaries for reconsideration of adjustments made by the fiscal intermediaries as a result of the desk review, and to correct errors due to CMS's or the fiscal intermediary's mishandling of the wage index data Hospitals were also required to submit sufficient documentation to support their requests.

After reviewing requested changes submitted by hospitals, fiscal intermediaries transmitted any additional revisions resulting from the hospitals' reconsideration requests by April 15, 2005. The deadline for a hospital to request CMS intervention in cases where the hospital disagreed with the fiscal intermediary's policy interpretations was April 22, 2005

Hospitals were also instructed to examine Table 2 in the Addendum to

the proposed rule Table 2 of the proposed rule contained each hospital's adjusted average hourly wage used to construct the wage index values for the past 3 years, including the FY 2002 data used to construct the FY 2006 wage index. We noted that the hospital average hourly wages shown in Table 2 only reflected changes made to a hospital's data and transmitted to CMS by February 23, 2005.

The final wage data public use file was released in early May 2005 to hospital associations and the public on the Internet at *http://www cms hhs gov/ providers/hipps/ippswage asp* The May 2005 public use file was made available solely for the limited purpose of identifying any potential errors made by CMS or the fiscal intermediary in the entry of the final wage data that result from the correction process described above (revisions submitted to CMS by the fiscal intermediaries by April 15, 2005). If, after reviewing the May 2005 final file, a hospital believed that its wage data were incorrect due to a fiscal intermediary or CMS error in the entry or tabulation of the final wage data, it was provided the opportunity to send a letter to both its fiscal intermediary and CMS that outlined why the hospital believed an error exists and to provide all supporting information, including relevant dates (for example, when it first became aware of the error). These requests had to be received by CMS and the fiscal intermediaries by no later than June 10, 2005. The fiscal intermediary reviewed requests upon receipt and contacted CMS immediately to discuss its findings.

After the release of the May 2005 wage index data file, changes to the hospital wage data were only made in those very limited situations involving an error by the fiscal intermediary or CMS that the hospital could not have known about before its review of the final wage index data file. Specifically, neither the intermediary nor CMS accepted the following types of requests:

• Requests for wage data corrections that were submitted too late to be included in the data transmitted to CMS by fiscal intermediaries on or before April 15, 2005.

• Requests for correction of errors that were not, but could have been, identified during the hospital's review of the February 23, 2005 wage index data file

• Requests to revisit factual determinations or policy interpretations made by the fiscal intermediary or CMS during the wage index data correction process

• Verified corrections to the wage index received timely by CMS and the fiscal

intermediaries (that is, by June 10, 2005) have been incorporated into the final wage index of this final rule and are effective October 1, 2005

We created the processes described above to resolve all substantive wage index data correction disputes before we finalize the wage and occupational mix data for the FY 2006 payment rates Accordingly, hospitals that did not meet the procedural deadlines set forth above will not be afforded a later opportunity to submit wage index data corrections or to dispute the fiscal intermediary's decision with respect to requested changes Specifically, our policy is that hospitals that do not meet the procedural deadlines set forth above will not be permitted to challenge later, before the Provider Reimbursement Review Board, the failure of CMS to make a requested data revision (See *W A. Foote Memorial Hospital v. Shalala,* No 99–CV–75202–DT (E D Mich. 2001) and *Palisades General Hospital v Thompson,* No 99–1230 (D D C. 2003 ) We refer the reader also to the FY 2000 final rule (64 FR 41513) for a discussion of the parameters for appealing to the PRRB for wage index data corrections.

Again, we believe the wage index data correction process described above provides hospitals with sufficient opportunity to bring errors in their wage index data to the fiscal intermediaries' attention Moreover, because hospitals had access to the final wage index data by early May 2005, they had the opportunity to detect any data entry or tabulation errors made by the fiscal intermediary or CMS before the development and publication of the final FY 2006 wage index in this final rule, and the implementation of the FY 2006 wage index on October 1, 2005 If hospitals availed themselves of the opportunities afforded to review and make corrections to the wage data, the wage index implemented on October 1 should be accurate Nevertheless, in the event that errors are identified by hospitals and brought to our attention after June 10, 2005, we retain the right to make midyear changes to the wage index under very limited circumstances Specifically, in accordance with § 412 64(k)(1) of our existing regulations, we make midyear corrections to the wage index for an area only if a hospital can show that: (1) the fiscal intermediary or CMS made an error in tabulating its data; and (2) the requesting hospital could not have known about the error or did not have an opportunity to correct the error. For purposes of this provision, "before the beginning of the fiscal year" means

by the June deadline for making corrections to the wage data for the following fiscal year's wage index This provision is not available to a hospital seeking to revise another hospital's data that may be affecting the requesting hospital's wage index for the labor market area As indicated earlier, since CMS makes the wage data available to a hospital on the CMS Web site prior to publishing both the proposed and final IPPS rules, and the fiscal intermediaries notify hospitals directly of any wage data changes after completing their desk reviews, we do not expect that midyear corrections would be necessary. However, under our current policy, if the correction of a data error changes the wage index value for an area, the revised wage index value will be effective prospectively from the date the correction is made

In the FY 2006 IPPS proposed rule, we proposed to revise § 412 64(k)(2) to specify that a change to the wage index can be made retroactive to the beginning of the Federal fiscal year only when: (1) The fiscal intermediary or CMS made an error in tabulating data used for the wage index calculation; (2) the hospital knew about the error and requested that the fiscal intermediary and CMS correct the error using the established process and within the established schedule for requesting corrections to the wage data, before the beginning of the fiscal year for the applicable IPPS update (that is, by the June 10, 2005 deadline for the FY 2006 wage index); and (3) CMS agreed that the fiscal intermediary or CMS made an error in tabulating the hospital's wage data and the wage index should be corrected We proposed this change because there may be instances in which a hospital identifies an error in its wage data and submits a correction request using all appropriate procedures and by the June deadline, CMS agrees that the fiscal intermediary or CMS caused the error in the hospital's wage data and that the wage index must be corrected, but CMS fails to publish or implement the corrected wage index value by the beginning of the Federal fiscal year. We made this proposed revision to § 412.64(k)(2) because we believe that it is appropriate and fair We also believe that, unlike a generalized retroactive policy, the situations where this will occur will be minimal, thus minimizing the administrative burden associated with such retroactive corrections In those circumstances where a hospital requests a correction to its wage data before CMS calculates the final wage index (that is, by the June deadline), and CMS acknowledges that the error in the

hospital's wage data caused by CMS's or the fiscal intermediary's mishandling of the data, we believe that the hospital should not be penalized by our delay in publishing or implementing the correction. As with our current policy, we indicated that the proposed provision would not be available to a hospital seeking to revise another hospital's data. In addition, the provision could not be used to correct prior years' wage data; it could only be used for the current Federal fiscal year. In other situations, we continue to believe that it is appropriate to make prospective corrections to the wage index in those circumstances where a hospital could not have known about or did not have the opportunity to correct the fiscal intermediary's or CMS's error before the beginning of the fiscal year (that is, by the June deadline).

We are making this change to §412.64(k)(2) effective on October 1, 2005, that is, beginning with the FY 2006 wage index. We note that, as with prospective changes to the wage index, the final retroactive correction will be made irrespective of whether the change increases or decreases a hospital's payment rate. In addition, we note that the policy of retroactive adjustment will still apply in those instances where a judicial decision reverses a CMS denial of a hospital's wage data revision request.

In addition, in the FY 2006 IPPS proposed rule, we proposed to correct the FY 2005 wage index retroactively (that is, from October 1, 2004) on a one-time only basis for a limited circumstance using the authority provided under section 903(a)(1) of Pub. L. 108–173. This provision authorizes the Secretary to make retroactive changes to items and services if failure to apply such changes would be contrary to the public interest. However, as indicated, our current regulations at §412.64(k)(1) allow only for a prospective correction to the hospitals' area wage index values. We proposed to correct the FY 2005 wage index retroactively in the limited circumstances where a hospital meets all of the following criteria: (1) The fiscal intermediary or CMS made an error in tabulating a hospital's FY 2005 wage index data; (2) the hospital informed the fiscal intermediary or CMS, or both, about the error, following the established schedule and process for requesting corrections to its FY 2005 wage index data; and (3) CMS agreed before October 1 that the fiscal intermediary or CMS made an error in tabulating the hospital's wage data and the wage index should be corrected by the beginning of the Federal fiscal year

(that is, by October 1, 2004), but CMS was unable to publish the correction by the beginning of the fiscal year.

On December 30, 2004, we published in the Federal Register a correction notice to the FY 2005 IPPS final rule that included the corrected wage data for four hospitals that meet all of the three above stated criteria (69 FR 78526). These corrections were effective January 1, 2005. As noted, our current regulations allow only for a prospective correction to the hospitals' area wage index values. However, we believe that, in the limited circumstance mentioned above, a retroactive correction to the FY 2005 wage index is appropriate and meets the condition of section 903(a)(1) of Pub. L. 108–173 that "failure to apply the change retroactively would be contrary to the public interest."

*Comment:* Several commenters supported CMS' proposal to correct the FY 2005 wage index retroactive to October 1, 2004, using the authority provided under section 903(a)(1) of Pub. L. 108–173 on a one-time only basis for the limited circumstance where a hospital meets the first two criteria specified in the proposal. However, the commenters requested that CMS amend the proposed policy to delete the third criterion that CMS must have agreed before October 1 that the fiscal intermediary or CMS made an error in tabulating the hospital's wage data. The commenters were concerned that if CMS could not notify hospitals before October 1 that the wage data would be corrected, the hospital would not be eligible for the retroactive correction to the FY 2005 wage index.

*Response:* We believe it is important to retain the requirement that CMS must have notified the hospital before October 1 that an error was made in calculating the wage index for an area for the correction to be made retroactively to October 1. The October 1 date is relevant because it is the first day of the new fiscal year. Once the fiscal year begins, we believe it is important to only make changes to the wage index prospectively, as has been CMS' longstanding policy as stated in the FY 1984 IPPS final rule (49 FR 256, January 3, 1984), unless it is clear that CMS determined that either it or the fiscal intermediary made an error prior to the beginning of the fiscal year and intended to pay hospitals using a different wage index. With respect to the specific requirements for making FY 2005 wage index corrections retroactive to October 1, 2004, we will accept letters, e-mails, and other written evidence from hospitals demonstrating that, prior to October 1, 2004, CMS agreed that an error was made to the

wage index and intended to pay the hospital at the corrected wage index effective October 1, 2004

*Comment:* Two commenters urged CMS to retroactively apply the policy that we are finalizing in this final rule to extend hold harmless protections to urban hospitals that are redesignated as rural under section 401 to the FY 2005 IPPS wage index

*Response:* Retroactive wage corrections are intended to correct errors made in a previous year. In this case, we made a change to the regulation prospectively. Because the regulation change is unrelated to errors that were not corrected, we do not believe a retroactive wage index correction is warranted.

*Comment:* One commenter, a group of hospitals within a single CBSA, believed that the proposed retroactive wage index corrections should be expanded to include geographic classification errors. The commenter indicated that CMS made an error in tabulating the FY 2005 wage index data for the CBSA when it incorrectly categorized one provider as belonging to another CBSA. The commenter added that the geographic classification error had the effect of lowering the wage index of the CBSA and inflating the wage index for the other CBSA. The commenter indicated that CMS was given notice of the error prior to October 1, 2004, but the correction was changed prospectively effective January 1, 2005, rather than retrospectively

*Response:* We agree that both geographic classification and reclassification technical errors should be corrected retroactive to the beginning of the fiscal year and that the special rule for FY 2005 should apply if the circumstances are the same as those that we are applying to the wage index. This would apply in cases where the wage index of an area has been miscalculated because of the improper assignment of a particular hospital to a labor market area.

Beginning with FY 2006, a hospital could receive a retroactive adjustment to its wage index for a geographic classification or reclassification error if the circumstances included in §412.64(k)(2) exist. Generally stated, the following circumstances must be present.

For classification/reclassification errors made during the proposed rule:

(1) CMS made a technical error in assigning the hospital to a geographic labor market area. (The error made must be truly technical in nature and could not include any disputes about policy or cases where a hospital disagrees with

43

Federal Register / Vol 70, No 155 / Friday, August 12, 2005 / Rules and Regulations    47387

the MGCRB or CMS' reclassification decisions )

(2) The hospital notifies CMS of the technical error using the formal comment process and during the comment period on the proposed rule (This period is different from the period for requesting wage index corrections, as wage index data are posted on the CMS Web site and must follow a certain schedule set by CMS—for example, for FY 2006, tabulation errors were required to have been identified by June 10, 2005 )

(3) The error was not corrected in the final rule

(4) The hospital again notifies CMS of the geographic assignment error, via written correspondence or e-mail following the publication of the final rule, and CMS agrees prior to October 1 that an error was made

For classification/reclassification errors made for the first time during the final rule:

(1) CMS made a technical error in the final rule in assigning the hospital to a geographic labor market area; and

(2) The hospital notifies CMS of the error via written correspondence or e-mail, following the publication of the final rule, and CMS agrees prior to October 1 that an error was made

In addition, we also agree that geographic classification or reclassification errors that resulted in an incorrect wage index for FY 2005 should also be corrected retroactively (that is, from October 1, 2004) on a one-time only basis for a limited circumstance using the authority provided under section 903(a)(1) of Pub L 108–173 This provision authorizes the Secretary to make retroactive changes to items and services if failure to apply such changes would be contrary to the public interest Again, we believe it would not be in the public interest for us to pay hospitals using an incorrect wage index when the geographic classification/reclassification error was brought to our attention and we agreed prior to the beginning of FY 2005 that the error should be corrected For FY 2005, we will make corrections to the wage index for geographic classification errors retroactive to October 1, 2004 in the following circumstances:

For classification/reclassification errors made during the FY 2005 IPPS proposed rule:

(1) CMS made a technical error in the tables of the FY 2005 proposed rule (69 FR 28752, May 18, 2004) in assigning a hospital to a geographic labor market area;

(2) The hospital notified CMS of the error, via written correspondence or e-mail during the comment period on the proposed rule and using the procedures for submitting formal comments;

(3) The error was not corrected in the tables accompanying the FY 2005 final rule (69 FR 49600); and

(4) The hospital notified CMS of the error via written correspondence or e-mail following the publication of the final rule, CMS agreed prior to October 1, 2004, that an error was made, CMS agreed that the error should be corrected by the beginning of the Federal fiscal year (that is, by October 1, 2004), but CMS was unable to publish the correction by the beginning of such fiscal year.

For geographic assignment errors made for the first time during the FY 2005 final rule:

(1) CMS made a technical error in the tables of the FY 2005 final rule (69 FR 49600) in assigning a hospital to a geographic labor market area; and

(2) The hospital notified CMS of the error via written correspondence or e-mail following the publication of the final rule, CMS agreed prior to October 1, 2004, that an error was made, CMS agreed that the error should be corrected by the beginning of the Federal fiscal year (that is, by October 1, 2004), but CMS was unable to publish the correction by the beginning of such fiscal year

IV. Rebasing and Revision of the Hospital Market Baskets

A Background

Effective for cost reporting periods beginning on or after July 1, 1979, we developed and adopted a hospital input price index (that is, the hospital market basket for operating costs). Although "market basket" technically describes the mix of goods and services used to produce hospital care, this term is also commonly used to denote the input price index (that is, cost category weights and price proxies combined) derived from that market basket. Accordingly, the term "market basket" as used in this document refers to the hospital input price index

The terms "rebasing" and "revising," while often used interchangeably, actually denote different activities. "Rebasing" means moving the base year for the structure of costs of an input price index (for example, in this final rule, we are shifting the base year cost structure for the IPPS hospital index from FY 1997 to FY 2002) "Revising" means changing data sources, or price proxies, used in the input price index

The percentage change in the market basket reflects the average change in the price of goods and services hospitals purchase in order to furnish inpatient care. We first used the market basket to adjust hospital cost limits by an amount that reflected the average increase in the prices of the goods and services used to provide hospital inpatient care This approach linked the increase in the cost limits to the efficient utilization of resources

Since the inception of the IPPS, the projected change in the hospital market basket has been the integral component of the update factor by which the prospective payment rates are updated every year An explanation of the hospital market basket used to develop the prospective payment rates was published in the Federal Register on September 1, 1983 (48 FR 39764). We also refer the reader to the August 1, 2002 Federal Register (67 FR 50032) in which we discussed the previous rebasing of the hospital input price index

The hospital market basket is a fixed weight, Laspeyres-type price index that is constructed in three steps. First, a base period is selected (in this final rule, FY 2002) and total base period expenditures are estimated for a set of mutually exclusive and exhaustive spending categories based upon type of expenditure. Then the proportion of total operating costs that each category represents is determined These proportions are called cost or expenditure weights Second, each expenditure category is matched to an appropriate price or wage variable, referred to as a price proxy In nearly every instance, these price proxies are price levels derived from publicly available statistical series that are published on a consistent schedule, preferably at least on a quarterly basis

Finally, the expenditure weight for each cost category is multiplied by the level of its respective price proxy. The sum of these products (that is, the expenditure weights multiplied by their price levels) for all cost categories yields the composite index level of the market basket in a given period Repeating this step for other periods produces a series of market basket levels over time Dividing an index level for a given period by an index level for an earlier period produces a rate of growth in the input price index over that time period

The market basket is described as a fixed-weight index because it describes the change in price over time of the same mix of goods and services purchased in a base period The effects on total expenditures resulting from changes in the quantity or mix of goods and services (intensity) purchased subsequent to the base period are not

49

Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations   47603

TABLE 4A.—WAGE INDEX AND CAPITAL GEOGRAPHIC ADJUSTMENT FACTOR (GAF) FOR URBAN AREAS BY CBSA—Continued

| CBSA code | Urban area (constituent counties) | Wage index | GAF |
|---|---|---|---|
| 49500 ........ | Yauco, PR .......................................................................................................... | 0.4408 | 0.5707 |
| | Guánica Municipio, PR. | | |
| | Guayanilla Municipio, PR. | | |
| | Peñuelas Municipio, PR. | | |
| | Yauco Municipio, PR. | | |
| 49620 ........ | York-Hanover, PA ............................................................................................. | 0.9349 | 0.9549 |
| | York County, PA. | | |
| 49660 ........ | [2] Youngstown-Warren-Boardman, OH-PA (OH Hospitals) .................................. | 0.8826 | 0.9180 |
| | Mahoning County, OH. | | |
| | Trumbull County, OH. | | |
| | Mercer County, PA. | | |
| 49660 ........ | Youngstown-Warren-Boardman, OH-PA (PA Hospitals) .................................. | 0.8600 | 0.9019 |
| | Mahoning County, OH. | | |
| | Trumbull County, OH. | | |
| | Mercer County, PA. | | |
| 49700 ........ | [2] Yuba City, CA .............................................................................................. | 1.1042 | 1.0702 |
| | Sutter County, CA. | | |
| | Yuba County, CA. | | |
| 49740 ........ | Yuma, AZ ........................................................................................................... | 0.9179 | 0.9430 |
| | Yuma County, AZ. | | |

[1] Large urban area.
[2] Hospitals geographically located in the area are assigned the statewide rural wage index for FY 2006.

TABLE 4B.—WAGE INDEX AND CAPITAL GEOGRAPHIC ADJUSTMENT (GAF) FOR RURAL AREAS BY CBSA

| CBSA code | Nonurban area | Wage index | GAF |
|---|---|---|---|
| 1 ............. | Alabama .................................................. | 0.7463 | 0.8184 |
| 2 ............. | Alaska ..................................................... | 1.1965 | 1.1307 |
| 3 ............. | Arizona .................................................... | 0.9007 | 0.9309 |
| 4 ............. | Arkansas ................................................. | 0.7493 | 0.8207 |
| 5 ............. | California ................................................. | 1.1042 | 1.0702 |
| 6 ............. | Colorado .................................................. | 0.9369 | 0.9563 |
| 7 ............. | Connecticut ............................................. | 1.1726 | 1.1152 |
| 8 ............. | Delaware .................................................. | 0.9579 | 0.9710 |
| 9 ............. | Florida ..................................................... | 0.8584 | 0.9007 |
| 1 ............. | Georgia .................................................... | 0.7679 | 0.8346 |
| 2 ............. | Hawaii ...................................................... | 1.0587 | 1.0398 |
| 3 ............. | Idaho ....................................................... | 0.8689 | 0.9083 |
| 4 ............. | Illinois ...................................................... | 0.8279 | 0.8787 |
| 5 ............. | Indiana ..................................................... | 0.8626 | 0.9037 |
| 6 ............. | Iowa ......................................................... | 0.8553 | 0.8985 |
| | Kansas ..................................................... | 0.8076 | 0.8639 |
| | Kentucky .................................................. | 0.7780 | 0.8421 |
| | Louisiana ................................................. | 0.7433 | 0.8165 |
| | Maine ....................................................... | 0.8831 | 0.9184 |
| | Maryland .................................................. | 0.8357 | 0.8855 |
| | Massachusetts [1] ..................................... | 1.0715 | 1.0484 |
| | Michigan .................................................. | 0.8966 | 0.9280 |
| | Minnesota ................................................ | 0.9132 | 0.9397 |
| | Mississippi ............................................... | 0.7688 | 0.8352 |
| | Missouri ................................................... | 0.7919 | 0.8523 |
| | Montana ................................................... | 0.8752 | 0.9128 |
| | Nebraska ................................................. | 0.8658 | 0.9060 |
| | Nevada .................................................... | 0.9070 | 0.9353 |
| | New Hampshire ....................................... | 1.1561 | 1.1044 |
| | New Jersey[1] ........................................... | 1.1227 | 1.0825 |
| | New Mexico ............................................. | 0.8640 | 0.9047 |
| | New York ................................................. | 0.8217 | 0.8742 |
| | North Carolina ......................................... | 0.8544 | 0.8978 |
| | North Dakota ........................................... | 0.7271 | 0.8039 |
| | Ohio ......................................................... | 0.8826 | 0.9180 |
| | Oklahoma ................................................ | 0.7697 | 0.8292 |
| | Oregon ..................................................... | 1.0301 | 1.0205 |
| | Pennsylvania ........................................... | 0.8289 | 0.8794 |
| | Puerto Rico[1] ........................................... | | |
| | Rhode Island[1] ......................................... | 1.0954 | 1.0644 |
| | South Carolina ......................................... | 0.8660 | 0.9062 |

47604    Federal Register / Vol. 70, No. 155 / Friday, August 12, 2005 / Rules and Regulations

TABLE 4B.—WAGE INDEX AND CAPITAL GEOGRAPHIC ADJUSTMENT (GAF) FOR RURAL AREAS BY CBSA—Continued

| CBSA code | Nonurban area | Wage index | GAF |
|---|---|---|---|
| | | 0.8551 | 0.8983 |
| 43 ............ | South Dakota ............................................................... | 0.8003 | 0.8585 |
| 44 ............ | Tennessee ................................................................... | 0.8053 | 0.8622 |
| 45 ............ | Texas .......................................................................... | 0.8126 | 0.8675 |
| 46 ............ | Utah ............................................................................ | 1.0189 | 1.0129 |
| 47 ............ | Vermont ....................................................................... | 0.8025 | 0.8601 |
| 49 ............ | Virginia ........................................................................ | 1.0480 | 1.0326 |
| 50 ............ | Washington .................................................................. | 0.7734 | 0.8386 |
| 51 ............ | West Virginia ............................................................... | 0.9507 | 0.9660 |
| 52 ............ | Wisconsin .................................................................... | 0.9249 | 0.9479 |
| 53 ............ | Wyoming | | |

[1] All counties in the State or Territory are classified as urban, with the exception of Massachusetts. Massachusetts has area(s) designated as rural. However, no short-term, acute care hospitals are located in the area(s) for FY 2006. Massachusetts, New Jersey, and Rhode Island rural floors are imputed as discussed in the FY 2005 final rule, 69 FR 49109.

TABLE 4C.—WAGE INDEX AND CAPITAL GEOGRAPHIC ADJUSTMENT FACTOR (GAF) FOR HOSPITALS THAT ARE RECLASSIFIED BY CBSA

| CBSA code | Area | Wage index | GAF |
|---|---|---|---|
| | | 0.8053 | 0.8622 |
| 10180 ......... | Abilene, TX ................................................................. | 0.8970 | 0.9283 |
| 10420 ......... | Akron, OH ................................................................... | 0.8607 | 0.9024 |
| 10580 ......... | Albany-Schenectady-Troy, NY .................................... | 0.9548 | 0.9688 |
| 10740 ......... | Albuquerque, NM ........................................................ | 0.8040 | 0.8612 |
| 10780 ......... | Alexandria, LA ............................................................ | 0.9834 | 0.9886 |
| 10900 ......... | Allentown-Bethlehem-Easton, PA-NJ .......................... | 0.8933 | 0.9256 |
| 11020 ......... | Altoona, PA ................................................................. | 0.9156 | 0.9414 |
| 11100 ......... | Amarillo, TX ................................................................ | 0.9272 | 0.9496 |
| 11180 ......... | Ames, IA ..................................................................... | 1.0570 | 1.0387 |
| 11460 ......... | Ann Arbor, MI ............................................................. | 0.7717 | 0.8374 |
| 11500 ......... | Anniston-Oxford, AL ................................................... | 0.9303 | 0.9517 |
| 11700 ......... | Asheville, NC .............................................................. | 0.9694 | 0.9789 |
| 12020 ......... | Athens-Clarke County, GA ......................................... | 0.9782 | 0.9850 |
| 12060 ......... | Atlanta-Sandy Springs-Marietta, GA .......................... | 0.9439 | 0.9612 |
| 12420 ......... | Austin-Round Rock, TX ............................................... | 0.9975 | 0.9983 |
| 12620 ......... | Bangor, ME ................................................................. | 1.2303 | 1.1525 |
| 12700 ......... | Barnstable Town, MA .................................................. | 0.8461 | 0.8919 |
| 12940 ......... | Baton Rouge, LA ........................................................ | 0.9525 | 0.9672 |
| 13020 ......... | Bay City, MI ................................................................ | 0.8462 | 0.8919 |
| 13780 ......... | Binghamton, NY .......................................................... | 0.8959 | 0.9275 |
| 13820 ......... | Birmingham-Hoover, AL .............................................. | 0.9039 | 0.9331 |
| 14260 ......... | Boise City-Nampa, ID ................................................. | 1.1274 | 1.0856 |
| 14484 ......... | Boston-Quincy, MA ..................................................... | 0.8214 | 0.8740 |
| 14540 ......... | Bowling Green, KY ...................................................... | 0.9503 | 0.9657 |
| 15380 ......... | Buffalo-Niagara Falls, NY ........................................... | 0.9278 | 0.9500 |
| 15540 ......... | Burlington-South Burlington, VT .................................. | 1.1561 | 1.1044 |
| 15764 ......... | Cambridge-Newton-Framingham, MA (NH Hospitals) .. | 1.0982 | 1.0662 |
| 15764 ......... | Cambridge-Newton-Framingham, MA (VT Hospitals) ... | 0.9776 | 0.9846 |
| 16180 ......... | Carson City, NV .......................................................... | 0.9249 | 0.9479 |
| 16220 ......... | Casper, WY ................................................................. | 0.9262 | 0.9489 |
| 16580 ......... | Champaign-Urbana, IL ................................................ | 0.9293 | 0.9797 |
| 16620 ......... | Charleston, WV (WV Hospitals) .................................. | 0.8826 | 0.9180 |
| 16620 ......... | Charleston, WV (OH Hospitals) .................................. | 0.9240 | 0.9473 |
| 16700 ......... | Charleston-North Charleston, SC ............................... | 0.9577 | 0.9706 |
| 16740 ......... | Charlotte-Gastonia-Concord, NC-SC ......................... | 0.9771 | 0.9843 |
| 16820 ......... | Charlottesville, VA ...................................................... | 0.9089 | 0.9367 |
| 16860 ......... | Chattanooga, TN-GA .................................................. | 1.0646 | 1.0438 |
| 16974 ......... | Chicago-Naperville-Joliet, IL ...................................... | 0.9595 | 0.9721 |
| 17140 ......... | Cincinnati-Middletown, OH-KY-IN ............................... | 0.8084 | 0.8645 |
| 17300 ......... | Clarksville, TN-KY ...................................................... | 0.9207 | 0.9450 |
| 17460 ......... | Cleveland-Elyria-Mentor, OH ...................................... | 0.8902 | 0.9234 |
| 17780 ......... | College Station-Bryan, TX .......................................... | 0.8357 | 0.8843 |
| 17860 ......... | Columbia, MO ............................................................. | 0.9067 | 0.9351 |
| 17900 ......... | Columbia, SC .............................................................. | 0.8394 | 0.8870 |
| 17980 ......... | Columbus, GA-AL ....................................................... | 0.9957 | 0.9970 |
| 18140 ......... | Columbus, OH ............................................................ | 1.0301 | 1.0205 |
| 18700 ......... | Corvallis, OR .............................................................. | 0.9938 | 0.9958 |
| 19124 ......... | Dallas-Plano-Irving, TX .............................................. | 0.9060 | 0.9346 |
| 19380 ......... | Dayton, OH ................................................................. | 0.8509 | 0.8953 |
| 19460 ......... | Decatur, AL | | |

B

RECEIVED

FEB 0 3 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

PRRB Case No. _____ (to be assigned)
Massachusetts Rural Wage Index Group
Appeal for FY 2006

Tab B – Date of Hearing Request

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Dusseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

## TAB B

February 2, 2006

**PRRB Case No. _____ (to be assigned)**

Suzanne Cochran, Esq., Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

Re:    <u>Initial Hearing Request for Massachusetts Rural Wage Rate Appeal For Each
Hospital Listed On Schedule of Providers in Group, Individually, and as a Group
Appeal Hearing Request, For Hospital Fiscal Years Ending in 2006</u>

Dear Chairperson Cochran:

Pursuant to Section 1878 of the Social Security Act (42 U.S.C.§1395oo) and Regulation Section 405.1835 (42 C.F.R. §405.1835), each of the individual Hospitals listed on the attached Schedule of Providers in Group (the "Hospital", individually, or "Hospitals" collectively), incorporated herein by reference, appeal to the Provider Reimbursement Review Board (the "Board" or "PRRB") for the sole purpose of obtaining a determination that the Board lacks the authority to determine the legal question of the validity of the decision of the Secretary of the U.S. Department of Health and Human Services (the "Secretary") establishing the Massachusetts rural wage rate, published as a regulation in the *Federal Register* on August 12, 2005, Volume 70, Number 155, pages 47278 et seq., applicable to discharges occurring on or after October 1, 2005 (the "FY 2006 Regulation"). The determination by the Secretary as to the FY 2006 Regulation adversely affects the reimbursement of each Hospital by its intermediary ("Intermediary") for the Hospital's Fiscal Year Ending ("FYE") in 2006. We also call to the Board's attention that, as we did in the FYE 2005 Group Appeal of the Secretary's determination in establishing the rural wage rate for Massachusetts for FY 2005, we have filed a Request for Expedited Judicial Review in connection with this FYE 2006 Group Appeal.

This Group Appeal of the FY 2006 Regulation is filed on the same underlying legal basis as the Group Appeal of the FY 2005 Regulation. In the Hospitals' FY 2005 Group Appeal, on

53

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston, Massachusetts 02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com
BST99 2489650-2 072678 0014

Suzanne Cochran, Chairperson
February 2, 2006
Page 2

February 16, 2005, the Board found that the case properly fell within the provisions of 42 U.S.C. § 1395oo(f)(1) and granted the Providers' request for expedited judicial review. A copy of the Board's decision in PRRB Case No. 05-0610GE (February 16, 2005), *Massachusetts 2005 Rural Wage Index Group*, is attached hereto and incorporated herein by reference. The Hospitals' case as to the FY 2005 Regulation is currently pending in United States District Court for the District of Columbia, Civil Action No. 1:05cv00625 (GK), and the arguments advanced by the plaintiffs in that case are incorporated herein by reference.

This Group Appeal is filed in a timely manner by and on behalf of the fifty-seven (57) Hospitals listed in the <u>Schedule of Providers in Group</u>. This Group Appeal has been filed within 180 days of the publication in the August 12, 2005 Federal Register of the Secretary's final determination of the FY 2006 Massachusetts rural wage rate. (See <u>Schedule of Providers in Group</u>, Column C.) In accordance with the Administrator's Decision in *District of Columbia Hospital Association Wage Index Group Appeal*, an appeal may be filed with the Board within 180 days of publication of the federal wage index in the *Federal Register* as an appeal from a final determination of the Secretary within the meaning of Section 1878(a)(1)(A) of the Social Security Act. See *District of Columbia Hospital Association Wage Index Group Appeal*, HCFA Administrator Decision, Medicare and Medicaid Guide (CCH) ¶ 41,025 (January 15, 2003). Since this appeal is filed within 180 days of publication in the August 12, 2005 *Federal Register* of the final Massachusetts rural wage rate for FY 2006, this Group Appeal is timely.

Each Hospital is aggrieved by the Secretary's determination of the FY 2006 Rural Wage Rate for Massachusetts. The amount in controversy, in the aggregate, exceeds $197,000,000, which exceeds the $50,000 jurisdictional amount for a Board hearing of a Group Appeal. (See <u>Schedule of Providers in Group</u>, Column E.)

Since this appeal involves a common question of law and the amount in controversy exceeds the $50,000 jurisdictional amount, this appeal qualifies as a Group Appeal, and is therefore filed with the Board as a Group Appeal hearing request.

<u>Legal Basis of Group Appeal</u>

As detailed below, the legal bases for this Group Appeal are that: 1) the Secretary's action in excluding from the 2006 wage index calculation wages paid by subsection (d) hospitals that later chose to convert to Critical Access hospital ("CAH") status is unlawful because it violates the statutory requirement that the wage index be updated based on a survey of subsection (d) hospitals; 2) the Secretary's action violates the Administrative Procedure Act because it is arbitrary and capricious; and 3) as a result of the Secretary's action, the Secretary failed to apply the proper rural wage floor to the Hospitals.

More specifically, the Secretary acted unlawfully and contrary to law by excluding from the required survey the average hourly wage data for Nantucket Cottage Hospital ("NCH"), a subsection (d) hospital in Massachusetts for the majority of the applicable wage survey year

54

Suzanne Cochran, Chairperson
February 2, 2006
Page 3

(2002), and by failing to include and utilize these data in computing and applying the
Massachusetts rural wage floor. *See* Section 1886(d)(3)(E); 42 C.F.R. §410.64(h). As a result of
the unlawful manner in which the Secretary determined the Massachusetts rural wage rate and
floor for FY 2006 applicable to the Hospitals, Medicare reimbursement to the Hospitals from the
Intermediaries has been reduced by approximately $197,000,000 from the amount that they are
legally entitled to receive.

Section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. § 1395ww(d)(3)(E)) requires the
Secretary to adjust the wage component of Medicare Inpatient Prospective Payment System
("IPPS") rates annually "on the basis of a survey conducted by the Secretary (and updated as
appropriate) of the wages and wage related costs of *subsection (d) hospitals* in the United
States." (emphasis added) "Subsection (d) hospitals" are defined at Social Security Act §
1886(d)(1)(B) (42 U.S.C. 1395ww(d)(1)(B)).[1]

Pursuant to Section 1886(d)(3), the Secretary annually updates the wage data used to calculate
the wage index and rural wage rates for IPPS purposes. The FY 2006 wage index values,
effective for hospital discharges occurring on or after October 1, 2005 and before October 1,
2006, included in the FY 2006 Regulation, are based on data collected from Medicare cost
reports submitted by subsection (d) hospitals for cost reporting periods beginning in FY 2002.
Accordingly, the final rural wage index for FY 2006 is based on data submitted by subsection (d)
hospitals for cost reporting periods beginning on or after October 1, 2001 and before October 1,
2002. That data is hereinafter referred to as the "survey year data".

Although NCH was a rural subsection (d) hospital during the majority of the 2002 survey year,
the Secretary excluded its wage data in determining the FY 2002 rural wage rate for
Massachusetts. NCH converted to become a Critical Access Hospital ("CAH") (which is not a
subsection (d) hospital) effective May 14, 2002, but was a subsection (d) hospital for seven (7)
months of the survey year.

As noted above, Section 1886(d)(3)(E) of the Social Security Act requires the Secretary to adjust
the wage component of IPPS rates annually on the basis of the survey of subsection (d) hospitals.
Because the 2002 survey included the wage data of Nantucket Cottage Hospital, which was a
rural subsection (d) hospital during the majority of the fiscal year in which the 2002 survey was
conducted, the Secretary was required to include NCH's data in determining the FY 2006 rural
wage index for Massachusetts under the applicable statute and regulations. Congress did not
grant the Secretary discretion to selectively exclude data from the survey, and the Secretary had
no statutory authority to exclude otherwise valid data of entities that were rural IPPS hospitals
during the 2002 survey year, but that changed status more than halfway through that fiscal year.
Congress set out in the text of the statute the specific mechanism by which the Secretary must
determine the wage index annually. The mechanism Congress selected was "*a survey . . . of the*

---

[1] Section 1886(d)(1)(B) provides: "As used in this section, the term 'subsection (d) hospital' means a hospital
located in one of the fifty states or the District of Columbia other than [certain enumerated hospitals]."

DST99 1439650-2.072678.0014

Suzanne Cochran, Chairperson
February 2, 2006
Page 4

wages and wage-related costs *of subsection (d) hospitals in the United States.*"  Thus, Congress
not only required that the Secretary perform a survey, but also specified the population to be
surveyed—"subsection (d) hospitals in the United States."  That is the universe of hospitals
"whose characteristics . . . the survey is intended to represent."  In the face of this explicit
command, the Secretary instead removed an entire subset of subsection (d) hospitals, and based
the 2006 wage index on wages paid by another subset of "subsection (d) hospitals in the United
States."  This alteration of the target population deviates from Congress' command and violates
the plain text of the statute.

The Secretary's exclusion of the NCH rural wage data from the 2002 survey year data because of
NCH's subsequent change to CAH status not only violates the plain language of the statute, but
is also inconsistent with long-standing policy, custom and practice of the Secretary. Every year
many hospitals change from being subsection (d) hospitals to other status (e.g., due to merger,
sale, consolidation, bankruptcy, liquidation, dissolution, loss of license, exclusion from the
Medicare program, or conversion to a category of non-IPPS facility, such as a CAH ).  The
Hospitals are informed and believe that, before the Secretary's errant new policy to exclude data
from hospitals that convert to CAH status, no wage data of any hospital that was a subsection (d)
hospital in a survey year have ever been excluded due to the hospital's subsequent change in
status, regardless of the cause or type of hospital. There is no rational basis for distinguishing
between the wage data of hospitals that changed their status for reasons other than CAH
conversions, and hospitals that changed their status as the result of their conversion to CAH
status. In either case, the change in status has no effect on the appropriateness and integrity of
the survey year wage data for the purpose of updating the wage index for the remaining
subsection (d) hospitals.

The Secretary's exclusion of wage data from hospitals that were subsection (d) hospitals in the
2002 survey year, but that subsequently converted to CAH status, is also inconsistent with public
policy. It contravenes the public policy that the Medicare wage indices should be objectively
updated based on all reasonably available survey data. It also protects the updates from possibly
prejudicial manipulation, and from discriminatory or selective inclusion or exclusion of data.

In addition, the Secretary's exclusion of wage data from hospitals that were subsection (d)
hospitals in the 2002 survey year is arbitrary and capricious. The essence of the arbitrary and
capricious test is whether the agency's explanation reveals that it engaged in reasoned decision-
making or provided "rational justification" for its actions, consistent with the purposes of the
statute. *Shays*, 414 F.3d at 97.

The agency bears a heavier burden when explaining a change in its policies.  *See Mich. Pub.
Power Agency v. FERC*, 405 F.3d 8, 12 (D.C. Cir. 2005).  Here, the Secretary discarded his long-
standing policy of basing the wage index on the wages paid by all subsection (d) hospitals.  That
long-standing policy assured that the wage index accurately reflected actual wages paid and,
therefore, the actual labor market conditions in the relevant geographic regions in the survey

DC1/99 1489650 2 072078 0014

Suzanne Cochran, Chairperson
February 2, 2006
Page 5

period. The Secretary switched course without addressing or even acknowledging the rationale for his earlier policy.

Instead, the Secretary simply offered the irrelevant and inaccurate assertion that "the wage data for CAHs" were "significantly different." However, CMS failed to provide a reasoned and meaningful analysis to establish that wages paid by subsection (d) hospitals that later chose to convert to CAH status were in fact "significantly different." Moreover, CMS said it would continue to include data "for other terminating or converting hospitals . . . because we continue to believe that the wage data for these hospitals, unlike CAHs, are not necessarily unique." FY2004 Rule, 68 Fed. Reg. at 45,398, App. at A7. However, the Secretary appears to have performed no analysis in support of that assertion. The Secretary coupled his failure to explain the departure from his prior policy with the consideration of an impermissible factor: the redistributive effects that manipulating the wage index would have. Finally, the Secretary irrationally refused to use all or most wage data from some areas in determining the wage indices.

The explanation the Secretary sets forth fails to provide a reasoned analysis for departing from the Secretary's prior policy, and provides no "rational justification" for his actions. *Shays*, 414 F.3d at 96. Therefore, the Secretary's decision to exclude such data was arbitrary and capricious.

The perverse effects of the selective exclusion of such data are well-illustrated in the present case. Here, the exclusion of the NCH wage data from the 2002 survey year data has had precisely the opposite of the effect intended by the Secretary. The Secretary excluded the data of hospitals that subsequently converted to CAH status for the express purpose of *increasing* rural wage rates of the affected states. The Secretary assumed that CAHs are generally located in rural areas with disproportionately lower wage rates than other rural areas of the state. The Secretary therefore assumed that the exclusion of such lower, rural CAH wage data would generally *increase* the rural wage rate for rural IPPS hospitals.

In Massachusetts, the exclusion of this data has had precisely the opposite effect. When the Secretary first implemented his unprecedented data exclusion policy in FY 2004 there was a drastic 7.9% decrease in the Massachusetts rural wage index—by far the largest drop in the country. This was because the labor market that exists on the island of Nantucket is more reflective of the actual hospital labor costs in the rural areas of Massachusetts than the rural wage index improperly manufactured by the Secretary. This data exclusion impacted the Hospitals' FY 2005 wage rates, which is the subject of the Hospitals lawsuit pending in United States District Court for the District of Columbia, Civil Action No. 1:05cv00625 (GK). We make the same contentions in this appeal concerning the Secretary's exclusion of the rural wage data in the FY 2006 Regulation. Since the impact in Massachusetts of the Secretary's data exclusion policy, as applied in this case, is contrary to the express purpose of that policy, in so applying that policy the Secretary has acted arbitrarily, capriciously, and in violation of Section 10(e) of the Administrative Procedure Act.

57

Suzanne Cochran, Chairperson
February 2, 2006
Page 6

In determining the Massachusetts rural wage rate for FY2006, the Secretary ignored the actual wage data from Nantucket Cottage Hospital, even though NCH was a subsection (d) hospital during a majority of the survey year. The Secretary also improperly determined that Massachusetts is an "all urban" state for which a rural wage rate must be imputed.[2]   The Secretary should have included NCH's survey year data in calculating the FY2006 rural wage index for Massachusetts. Had he done so, the Secretary would have been able to calculate an *actual* FY 2006 rural wage rate for Massachusetts—rather than *imputing* one, as the Secretary unlawfully did.

The rural wage rate imputed by the Secretary is 1.0715 for FY 2006. The correct rural wage rate for Massachusetts for FY 2006, based on the average hourly wage rate of Nantucket Cottage Hospital in the 2002 survey year, is 1.2406.

This properly calculated FY 2006 rural wage rate for Massachusetts impacts all of the Hospitals participating in this Group Appeal as a result of Section 4410 of Public Law 105-33. That section is commonly referred to as the "rural floor". It provides that, for discharges occurring after October 1, 1997, the wage index applicable to any IPPS hospital that is located in any urban area of a state may not be less than the area wage index applicable to IPPS hospitals located in rural areas of the state. Each of the Hospitals in this Group Appeal is located in an urban area of Massachusetts and has a wage index that is less than 1.2406, the properly calculated rural wage rate. That recalculated rural wage rate, therefore, becomes the rural floor for all of the Hospitals participating in this Group Appeal.

The aggregate adverse dollar impact on the Hospitals resulting from the Secretary applying the improperly determined rural wage rate of 1.0715, rather than the properly calculated rural wage rate and rural floor of 1.2406, is estimated to be more than the $197,000,000 claimed by the Hospitals in this Group Appeal.

### Relief Requested

For the foregoing reasons, the Hospitals respectfully request the following rulings from the Board:

---

[2] An "all-urban" state is a state with no rural areas or in which there are no hospitals classified as rural. 42 C.F.R. § 412.64(h)(5). For FY 2006, Massachusetts was not an all-urban state because it still had Nantucket Cottage Hospital's wage data, as rural subsection (d) hospital data, in the 2002 survey year. Rather than calculating the FY 2006 Massachusetts rural wage floor on the basis of that data, however, the Secretary instead treated Massachusetts as an "all-urban" state and imputed a rural wage floor for Massachusetts pursuant to the methodology set forth at 42 C.F.R. § 412.64(h)(4). That rural wage floor for FY2006 should have been determined based on the actual 2002 survey year data of NCH, and should not have been determined on an imputed basis.

BST99 1489680-2.072878.0014

Suzanne Cochran, Chairperson
February 2, 2006
Page 7

1.      Each of the Hospitals participating in this Group Appeal have filed a timely appeal of the
Secretary's Decision establishing the Massachusetts rural wage rate for FY 2006, as published in
the *Federal Register* on August 12, 2005.

2.      This appeal qualifies by as a Group Appeal since there is a common issue of law relating
to the validity of the Secretary's Decision establishing the Massachusetts rural wage rate for FY
2006, since more than two hospitals are participating in this appeal, and since this appeal exceeds
the $50,000 jurisdictional amount in dispute for a Group Appeal.

3.      The Board lacks authority to determine the legal question raised in this Group Appeal of
the validity of the Secretary's Decision establishing the Massachusetts rural wage rate for FY
2006, as published in the *Federal Register* on August 12, 2005.

4.      The Board also lacks the authority to order the Secretary to include the Nantucket
Cottage Hospital wage data in the 2002 survey year data, or to order the Secretary to recalculate
the FY2006 rural wage rate and rural floor for Massachusetts on the basis of that data.

5.      The Hospitals are entitled to approval of their Request for Expedited Judicial Review,
within thirty (30) days of docketing of this Group Appeal, so that the Hospitals can thereafter
expeditiously file suit in United States District Court to obtain a court ruling on the legal
question of the validity of the Secretary's Decision establishing the FY 2006 rural wage rate and
floor for Massachusetts, as published in the *Federal Register* on August 12, 2005.

If the Board requires any further information in connection with this Group Appeal, please let us
know.


Respectfully submitted,


Michael L. Blau


Peter R. Leone

PRL/jd

53

RECEIVED

FEB # 3 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

E

PRRB Case No. _____ (to be assigned)
Massachusetts Rural Wage Index Group
Appeal for FY 2006

# Tab E – Approx. Amount

1

| HOSPITAL NAME | SOUTH SHORE HOSPITAL |
|---|---|
| PROVIDER NUMBER | 220100 |
| Total Impact | $ 2,655,854 |

| Details of Impact and Fees Calculation | |
|---|---|
| County | Norfolk |
| 2006 Area Wage Index | 1.1551 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | 1.2406 |
| % Change in AWI | 7.4% |
| Latest available cost report yr | 2002 |
| Medicare IP Rev from cost report | $ 37,705,342 |
| IP Rev updated to 2006 using MB Updates* | $ 43,037,661 |
| Labor portion (69.7%) of IP Revenue | 29,997,250 |
| Inpatient Impact in 2005 if successful | $ 2,220,383 |
| Medicare OP Rev from cost report | $ 8,561,340 |
| OP Rev updated to 2006 using MB Updates** | $ 9,805,305 |
| Labor portion (60%) of OP Revenue | $ 5,883,183 |
| Outpatient Impact in 2005 if successful | $ 435,471 |
| Total Impact | $ 2,655,854 |
| State Total Impact | $ 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

2

| HOSPITAL NAME | HARRINGTON MEMORIAL HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220019 |
| Total Impact | $ | 768,311 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Worcester |
| 2006 Area Wage Index | | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 10.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 7,305,390 |
| IP Rev updated to 2006 using MB Updates* | $ | 8,338,524 |
| Labor portion (69.7%) of IP Revenue | | 5,811,951 |
| Inpatient Impact in 2005 if successful | $ | 583,567 |
| Medicare OP Rev from cost report | $ | 2,677,522 |
| OP Rev updated to 2006 using MB Updates** | $ | 3,066,567 |
| Labor portion (60%) of OP Revenue | $ | 1,839,940 |
| Outpatient Impact in 2005 if successful | $ | 184,745 |
| Total Impact | $ | 768,311 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

64

| HOSPITAL NAME | NORTHEAST HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220033 |
| Total Impact | $ | 2,870,360 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Essex |
| 2006 Area Wage Index | | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 10.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 27,928,964 |
| IP Rev updated to 2006 using MB Updates* | $ | 31,878,700 |
| Labor portion (69.7%) of IP Revenue | | 22,219,454 |
| Inpatient Impact in 2005 if successful | $ | 2,231,011 |
| Medicare OP Rev from cost report | $ | 9,266,135 |
| OP Rev updated to 2006 using MB Updates** | $ | 10,612,506 |
| Labor portion (60%) of OP Revenue | $ | 6,367,504 |
| Outpatient Impact in 2005 if successful | $ | 639,348 |
| Total Impact | $ | 2,870,360 |
| State Total Impact | $ | 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1726 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

4

| HOSPITAL NAME | MOUNT AUBURN HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220002 |
| Total Impact | $ | 2,585,655 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Middlesex |
| 2006 Area Wage Index | | 1.1415 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 8.7% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 37,417,349 |
| IP Rev updated to 2006 using MB Updates* | $ | 42,708,940 |
| Labor portion (69.7%) of IP Revenue | | 29,768,131 |
| Inpatient Impact in 2005 if successful | $ | 2,584,338 |
| Medicare OP Rev from cost report | $ | 22,079 |
| OP Rev updated to 2006 using MB Updates** | $ | 25,287 |
| Labor portion (60%) of OP Revenue | $ | 15,172 |
| Outpatient Impact in 2005 if successful | $ | 1,317 |
| Total Impact | $ | 2,585,655 |
| State Total Impact | $ | 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

5

69

| HOSPITAL NAME | MARLBOROUGH HOSPITAL |
|---|---|
| PROVIDER NUMBER | 220049 |
| Total Impact | $ 718,789 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Middlesex |
| 2006 Area Wage Index | | 1.1415 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 8.7% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 7,960,638 |
| IP Rev updated to 2006 using MB Updates* | $ | 9,086,438 |
| Labor portion (69.7%) of IP Revenue | | 6,333,247 |
| Inpatient Impact in 2005 if successful | $ | 549,825 |
| Medicare OP Rev from cost report | $ | 2,832,215 |
| OP Rev updated to 2006 using MB Updates** | $ | 3,243,736 |
| Labor portion (60%) of OP Revenue | $ | 1,946,242 |
| Outpatient Impact in 2005 if successful | $ | 168,964 |
| Total Impact | $ | 718,789 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

70

6

| HOSPITAL NAME | MILTON MEDICAL CENTER | |
|---|---|---|
| PROVIDER NUMBER | | 220108 |
| Total Impact | $ | 1,023,664 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Norfolk |
| 2006 Area Wage Index | | 1.1551 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 7.4% |
| Latest available cost report yr | | 2001 |
| Medicare IP Rev from cost report | $ | 14,509,289 |
| IP Rev updated to 2006 using MB Updates* | $ | 17,016,637 |
| Labor portion (69.7%) of IP Revenue | | 11,860,596 |
| Inpatient Impact in 2005 if successful | $ | 877,916 |
| Medicare OP Rev from cost report | $ | 2,800,978 |
| OP Rev updated to 2006 using MB Updates** | $ | 3,281,744 |
| Labor portion (60%) of OP Revenue | $ | 1,969,046 |
| Outpatient Impact in 2005 if successful | $ | 145,748 |
| Total Impact | $ | 1,023,664 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2005 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

72

7

73

| HOSPITAL NAME | MILFORD WHITINSVILLE REG HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 22009 |
| Total Impact | $ | 2,147,080 |
| | | |
| Details of Impact and Fees Calculation | | |
| County | | Worcester |
| 2006 Area Wage Index | | 1.127 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.240 |
| % Change in AWI | | 10.09 |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 22,773,299 |
| IP Rev updated to 2006 using MB Updates* | $ | 25,993,917 |
| Labor portion (69.7%) of IP Revenue | | 18,117,760 |
| Inpatient impact in 2005 if successful | $ | 1,819,168 |
| Medicare OP Rev from cost report | $ | 4,752,463 |
| OP Rev updated to 2006 using MB Updates** | $ | 5,442,985 |
| Labor portion (60%) of OP Revenue | $ | 3,265,791 |
| Outpatient Impact in 2005 if successful | $ | 327,912 |
| Total Impact | $ | 2,147,080 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for
each subsequent year as shown below. This assumes constant utilization statistics. Projected
2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more
accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |
| | |
| OUTPATIENT UPDATE** | |
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

74

8

| HOSPITAL NAME | NOBLE HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220065 |
| Total Impact | $ | 1,556,348 |
| | | |
| Details of Impact and Fees Calculation | | |
| County | | Hampden |
| 2006 Area Wage Index | | 1.0715 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 15.8% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 9,484,871 |
| IP Rev updated to 2006 using MB Updates* | $ | 10,826,229 |
| Labor portion (69.7%) of IP Revenue | | 7,545,882 |
| Inpatient Impact in 2005 if successful | $ | 1,190,862 |
| Medicare OP Rev from cost report | $ | 3,370,142 |
| OP Rev updated to 2006 using MB Updates** | $ | 3,859,824 |
| Labor portion (60%) of OP Revenue | $ | 2,315,895 |
| Outpatient Impact in 2005 if successful | $ | 365,486 |
| Total Impact | $ | 1,556,348 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |
| | |
| OUTPATIENT UPDATE** | |
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

9

| HOSPITAL NAME | LOWELL GENERAL HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220063 |
| Total Impact | $ | 1,403,972 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Middlesex |
| 2006 Area Wage Index | | 1.1415 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 8.7% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 15,902,183 |
| IP Rev updated to 2006 using MB Updates* | $ | 18,151,082 |
| Labor portion (69.7%) of IP Revenue | | 12,651,304 |
| Inpatient Impact in 2005 if successful | $ | 1,098,330 |
| Medicare OP Rev from cost report | $ | 5,123,236 |
| OP Rev updated to 2006 using MB Updates** | $ | 5,867,643 |
| Labor portion (60%) of OP Revenue | $ | 3,520,586 |
| Outpatient Impact in 2005 if successful | $ | 305,642 |
| Total Impact | $ | 1,403,972 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

INPATIENT UPDATE*

| 2001 data to 2006 | 1.1726 |
|---|---|
| 2002 to 2006 | 1.1414 |

OUTPATIENT UPDATE**

| 2001 data to 2006 | 1.1716 |
|---|---|
| 2002 to 2006 | 1.1453 |

73

10

79

| HOSPITAL NAME | | HEYWOOD HOSPITAL |
|---|---|---|
| PROVIDER NUMBER | | 220095 |
| Total Impact | $ | 864,305 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Worcester |
| 2006 Area Wage Index | | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 10.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 8,038,106 |
| IP Rev updated to 2006 using MB Updates* | $ | 9,174,861 |
| Labor portion (69.7%) of IP Revenue | | 6,394,878 |
| Inpatient Impact in 2005 if successful | $ | 642,097 |
| Medicare OP Rev from cost report | $ | 3,220,474 |
| OP Rev updated to 2006 using MB Updates** | $ | 3,688,410 |
| Labor portion (60%) of OP Revenue | $ | 2,213,046 |
| Outpatient Impact in 2005 if successful | $ | 222,208 |
| Total Impact | $ | 864,305 |
| State Total Impact | $ | 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1720 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

80

11

81

| HOSPITAL NAME | MORTON HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220073 |
| Total Impact | $ | 2,697,415 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Bristol |
| 2006 Area Wage Index | | 1.0954 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 13.3% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 21,420,825 |
| IP Rev updated to 2006 using MB Updates* | $ | 24,450,175 |
| Labor portion (69.7%) of IP Revenue | | 17,041,772 |
| Inpatient Impact in 2005 if successful | $ | 2,258,960 |
| Medicare OP Rev from cost report | $ | 4,813,493 |
| OP Rev updated to 2006 using MB Updates** | $ | 5,512,895 |
| Labor portion (60%) of OP Revenue | $ | 3,307,737 |
| Outpatient Impact in 2005 if successful | $ | 438,455 |
| Total Impact | $ | 2,697,415 |
| State Total Impact | $ | 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1726 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

82

83

| HOSPITAL NAME | HOLYOKE HOSPITAL INC | |
|---|---|---|
| PROVIDER NUMBER | | 220024 |
| Total Impact | $ | 3,515,953 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Hampden |
| 2006 Area Wage Index | | 1.0715 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change In AWI | | 15.8% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 21,782,267 |
| IP Rev updated to 2006 using MB Updates* | $ | 24,862,732 |
| Labor portion (69.7%) of IP Revenue | | 17,329,324 |
| Inpatient Impact in 2005 if successful | $ | 2,734,847 |
| Medicare OP Rev from cost report | $ | 7,292,572 |
| OP Rev updated to 2006 using MB Updates** | $ | 8,249,107 |
| Labor portion (60%) of OP Revenue | $ | 4,949,464 |
| Outpatient Impact in 2005 if successful | $ | 781,105 |
| Total Impact | $ | 3,515,953 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

84

13

| HOSPITAL NAME | | ANNA JAQUES HOSPITAL |
|---|---|---|
| PROVIDER NUMBER | | 220029 |
| Total Impact | $ | 1,652,843 |
| Details of Impact and Fees Calculation | | |
| County | | Essex |
| 2006 Area Wage Index | | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 10.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 16,799,143 |
| IP Rev updated to 2006 using MB Updates* | $ | 19,174,691 |
| Labor portion (69.7%) of IP Revenue | | 13,364,899 |
| Inpatient Impact in 2005 if successful | $ | 1,341,943 |
| Medicare OP Rev from cost report | $ | 4,505,903 |
| OP Rev updated to 2006 using MB Updates** | $ | 5,160,812 |
| Labor portion (60%) of OP Revenue | $ | 3,096,367 |
| Outpatient Impact in 2005 if successful | $ | 310,900 |
| Total Impact | $ | 1,652,843 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for
each subsequent year as shown below. This assumes constant utilization statistics. Projected
2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more
accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

14

| HOSPITAL NAME | BAYSTATE MEDICAL CENTER | |
|---|---|---|
| PROVIDER NUMBER | | 220077 |
| Total Impact | $ | 15,221,324 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Hampden |
| 2006 Area Wage Index | | 1.1075 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 12.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 139,158,004 |
| IP Rev updated to 2006 using MB Updates* | $ | 158,837,839 |
| Labor portion (69.7%) of IP Revenue | | 110,709,974 |
| Inpatient Impact in 2005 if successful | $ | 13,305,190 |
| Medicare OP Rev from cost report | $ | 23,201,763 |
| OP Rev updated to 2006 using MB Updates** | $ | 26,572,984 |
| Labor portion (60%) of OP Revenue | $ | 15,943,790 |
| Outpatient Impact in 2005 if successful | $ | 1,916,134 |
| Total Impact | $ | 15,221,324 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

INPATIENT UPDATE*
| 2001 data to 2006 | 1.1728 |
|---|---|
| 2002 to 2006 | 1.1414 |

OUTPATIENT UPDATE**
| 2001 data to 2006 | 1.1716 |
|---|---|
| 2002 to 2006 | 1.1453 |

88

15

| HOSPITAL NAME | FRANKLIN MEDICAL CENTER | |
|---|---|---|
| PROVIDER NUMBER | | 220016 |
| Total Impact | $ | 1,664,295 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Franklin |
| 2006 Area Wage Index | | 1.0715 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 15.8% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 9,494,307 |
| IP Rev updated to 2006 using MB Updates* | $ | 10,836,999 |
| Labor portion (69.7%) of IP Revenue | | 7,553,389 |
| Inpatient Impact in 2005 if successful | $ | 1,192,047 |
| Medicare OP Rev from cost report | $ | 4,354,801 |
| OP Rev updated to 2006 using MB Updates** | $ | 4,987,325 |
| Labor portion (60%) of OP Revenue | $ | 2,992,395 |
| Outpatient Impact in 2005 if successful | $ | 472,248 |
| Total Impact | $ | 1,664,295 |
| State Total Impact | $ | 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

16

| HOSPITAL NAME | MARY LANE HOSPITAL |
| --- | --- |
| PROVIDER NUMBER | 220050 |
| Total Impact | $ 568,454 |

| Details of Impact and Fees Calculation | |
| --- | --- |
| County | Hampshire |
| 2006 Area Wage Index | 1.0715 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | 1.2406 |
| % Change in AWI | 15.8% |
| Latest available cost report yr | 2002 |
| Medicare IP Rev from cost report | $ 3,466,327 |
| IP Rev updated to 2006 using MB Updates* | $ 3,956,538 |
| Labor portion (69.7%) of IP Revenue | 2,757,707 |
| Inpatient Impact in 2005 if successful | $ 435,211 |
| Medicare OP Rev from cost report | $ 1,228,634 |
| OP Rev updated to 2006 using MB Updates** | $ 1,407,155 |
| Labor portion (60%) of OP Revenue | 844,293 |
| Outpatient Impact in 2005 if successful | $ 133,243 |
| Total Impact | $ 568,454 |
| State Total Impact | $ 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections

| INPATIENT UPDATE* | |
| --- | --- |
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
| --- | --- |
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

17

| HOSPITAL NAME | WING MEMORIAL HOSPITAL | |
|---|---|---|
| PROVIDER NUMBER | | 220030 |
| Total Impact | $ | 1,419,948 |
| | | |
| **Details of Impact and Fees Calculation** | | |
| County | | Hampden |
| 2006 Area Wage Index | | 1.0715 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 15.8% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 7,270,321 |
| IP Rev updated to 2006 using MB Updates* | $ | 8,298,496 |
| Labor portion (69.7%) of IP Revenue | | 5,784,051 |
| Inpatient Impact in 2005 if successful | $ | 912,817 |
| Medicare OP Rev from cost report | $ | 4,676,257 |
| OP Rev updated to 2006 using MB Updates** | $ | 5,355,718 |
| Labor portion (60%) of OP Revenue | $ | 3,213,431 |
| Outpatient Impact in 2005 if successful | $ | 507,131 |
| Total Impact | $ | 1,419,948 |
| State Total Impact | $ 197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for
each subsequent year as shown below. This assumes constant utilization statistics. Projected
2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more
accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |
| | |
| OUTPATIENT UPDATE** | |
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.14533 |

18

95

| HOSPITAL NAME | UNIVERSITY OF MASSACHUSETTS | |
|---|---|---|
| PROVIDER NUMBER | | 220163 |
| Total Impact | $ | 13,484,426 |

| Details of Impact and Fees Calculation | | |
|---|---|---|
| County | | Worcester |
| 2006 Area Wage Index | | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | | 1.2406 |
| % Change in AWI | | 10.0% |
| Latest available cost report yr | | 2002 |
| Medicare IP Rev from cost report | $ | 148,329,751 |
| IP Rev updated to 2006 using MB Updates* | $ | 169,306,661 |
| Labor portion (69.7%) of IP Revenue | | 118,006,743 |
| Inpatient Impact in 2005 if successful | $ | 11,848,823 |
| Medicare OP Rev from cost report | $ | 23,704,935 |
| OP Rev updated to 2006 using MB Updates** | $ | 27,149,267 |
| Labor portion (60%) of OP Revenue | $ | 16,289,560 |
| Outpatient Impact in 2005 if successful | $ | 1,635,602 |
| Total Impact | $ | 13,484,426 |
| State Total Impact | $  197,039,020 | |

Latest available medicare cost report revenue is updated using the market basket updates for
each subsequent year as shown below. This assumes constant utilization statistics. Projected
2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more
accurate projections

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |
| | |
| OUTPATIENT UPDATE*: | |
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

19

97

| HOSPITAL NAME | UMMHC~CLINTON HOSPITAL |
|---|---|
| PROVIDER NUMBER | 220058 |
| Total Impact | $ 228,452 |

| Details of Impact and Fees Calculation | |
|---|---|
| County | Worcester |
| 2006 Area Wage Index | 1.1274 |
| Est 2006 AWI (rural floor) if successful WITH CORRECTIONS, MOMA adjusted | 1.2406 |
| % Change in AWI | 10.0% |
| Latest available cost report yr | 2002 |
| Medicare IP Rev from cost report | $ 2,253,049 |
| IP Rev updated to 2006 using MB Updates* | $ 2,571,677 |
| Labor portion (69.7%) of IP Revenue | 1,792,459 |
| Inpatient Impact in 2005 if successful | $ 179,977 |
| Medicare OP Rev from cost report | $ 702,552 |
| OP Rev updated to 2006 using MB Updates** | $ 804,633 |
| Labor portion (60%) of OP Revenue | $ 482,780 |
| Outpatient Impact in 2005 if successful | $ 48,475 |
| Total Impact | $ 228,452 |
| State Total Impact | $ 197,039,020 |

Latest available medicare cost report revenue is updated using the market basket updates for each subsequent year as shown below. This assumes constant utilization statistics. Projected 2006 Medicare IP and OP revenue can be changed in cells C13 and C17 to reflect more accurate projections.

| INPATIENT UPDATE* | |
|---|---|
| 2001 data to 2006 | 1.1728 |
| 2002 to 2006 | 1.1414 |

| OUTPATIENT UPDATE** | |
|---|---|
| 2001 data to 2006 | 1.1716 |
| 2002 to 2006 | 1.1453 |

20